# EXHIBIT A

## COMMITMENT ORDER INSTANT OFFENSE
## AND
## COURT MINUTES FOR (3RD) OFFENSE

STATE OF LOUISIANA                    22ND JUDICIAL DISTRICT COURT

VERSUS  12-CR8-115995                 PARISH OF WASHINGTON

GERALD DAHLEM                         STATE OF LOUISIANA

# COMMITMENT

To: Randy Seal, Sheriff of the Parish of Washington, to the keeper
Of the Louisiana State Penitentiary————————Greetings:

Whereas, by a decree of the Honorable Twenty-Second Judicial

District Court of the State of Louisiana, in and for the Parish of Washington,

**Gerald Dahlem** has been adjudged guilty of **Driving While Intoxicated-4th Offense** was sentenced by said Court to imprisonment at Hard Labor for the term of:

**Twenty-Five (25) at Hard Labor in the custody of the Louisiana Department Of Public Safety and Corrections with Three (3) years to be served without benefit of probation, parole or suspension of sentence. Sentence to run Consecutive with any other sentence now serving. Complete Blue Walters prior to discharge.  Credit for time serve since date of arrest**

You are therefore hereby commanded to convey the said **Gerald Dahlem** to the State Penitentiary at Angola, Louisiana and there deliver **Gerald Dahlem** with this warrant, to the keeper of said Penitentiary, who is here by authorized and commanded to receive and keep **Gerald Dahlem** in safe custody for and during said term of:

**Twenty-Five (25) at Hard Labor in the custody of the Louisiana Department Of Public Safety and Corrections with Three (3) years to be served without benefit of probation, parole or suspension of sentence. Sentence to run Consecutive with any other sentence now serving. Complete Blue Walters prior to discharge.  Credit for time serve since date of arrest**

And this shall be yours and his warrant for so doing.

Witness the Honorable William
Crain Judge Of Our Said Court
My Official Signature And Seal Of
Office At Franklinton, La This The
24th Day Of September 2012

_T. Spears_
Tammy Spears, Dpy Clerk of Court

,35

JULY 9, 2010

THE TWENTY-SECOND JUDICIAL DISTRICT COURT CONVENED ON THE ABOVE DATE
PURSUANT TO PREVIOUS ASSIGNMENT. PRESENT HONORABLE, WILLIAM J. BURRIS,
DISTRICT JUDGE PRESIDING, H. GREGORY BRIESE, DISTRICT ATTORNEY, LORRIE PRICE,
DEPUTY CLERK OF COURT, DEBBIE MURRAY, OFFICIAL COURT REPORTER AND SANDRA
CONERLY, DEPUTY SHERIFF. WHEREUPON, THE FOLLOWING MATTERS WERE TAKEN UP AND
DISPOSED OF AS FOLLOWS, TO-WIT:

STATE OF LOUISIANA
VS                                        **CASE #: 10-CR1-108537**
GERALD W DAHLEM                           CHARGE:
                                          THIRD OFFENSE DRIVING WHILE
                                          INTOXICATED
                                          IMPROPER LANE USAGE
                                          SWITCHED LICENSE PLATES
                                          OPEN CONTAINER

July 9, 2010                                      WILLIAM J. BURRIS

Present, H. Gregory Briese, assistant district attorney, Pamela Hershey, attorney for the
defendant and the defendant, Gerald Dahlem.
At this time, the state nolle prossed count 2 and 3 of this bill of information.
The defendant present with counsel was arraigned and pled guilty to the following charges.
LSA R.S. 14:98 - DRIVING WHILE INTOXICATED 3RD OFFENSE
The defendant was sworn and advised by the court that this guilty plea may lead to
enhancement of a future charge, to a more serious charge and of his rights including but not
limited to his right to hire a lawyer of his choice and if he cannot afford one, one will be
appointed to represent the defendant free of charge, right to trial in open court, with or
without a jury, right to confront his accusers, right to subpoena witnesses on the defendant's
behalf, right to invoke the privileges against self incrimination and the right to remain silent.
If convicted, the defendant has the right to appeal the conviction to the First Circuit Court of
Appeal and the Louisiana Supreme Court.  The defendant having waived these and other
rights and the court finding there is a factual basis to support the charges lodged against the
defendant and further finding the defendant's guilty plea(s) is freely and voluntarily given,
the court hereby accepts this plea.  The defendant, Gerald Dahlem, present in open court
with counsel, having state he is 39 years of age, having entered a plea of guilty to the
following:
LSA R.S. 14:98 - DRIVING WHILE INTOXICATED 3RD OFFENSE
And having waived all sentencing delays, the court hereby sentences the defendant as
follows:
The defendant is sentences to serve a period of three (3) years hard labor in the custody of
the Louisiana Department of Public Safety and Corrections.  The court hereby suspends all
but eighty (80) days of this sentence which is to be without the benefit of probation, parole
or suspension of sentence.  Defendant is given credit for time served.
Upon release, the defendant is placed on three (3) years supervised probation under the
general terms and conditions of probation (which were read in open court) made a part of
the minutes of this court and under the direction and supervision of the Louisiana
Department of Public Safety and Corrections Probation and Parole division and subject to the
following special conditions.
1.  Defendant is to pay a fine of $2000 plus court cost over the first (30) months of
probation.
2.  Defendant is to be evaluated by Louisiana Health and Hospitals.
3.  Defendant is to follow any treatment program deemed necessary through Addicitve
Disorders, including at least four (4) weeks of inpatient treatment.
4.  Defendant is under home incarceration with electronic monitoring. (Exceptions: work,
chruch, AA meetings, or court approved programs)
5.  Monthly visitation by probation officer for the first (6) months.
6.  Driver's Improvement Program
7.  Ignition Control on any vehicle driven by defendant.
The court deems the thirty (30) days community service satisfied.
Any and all outstanding motions are withdrawn.
The court further advised the defendant he has two (2) years from the date the judgment of
conviction becomes final to file any and all petitions for post conviction relief.

A True Copy of Original
This _____
_____
Dy. Clerk of Court

# EXHIBIT B

## JOINT STIPULATION

STATE OF LOUISIANA                           22nd JUDICIAL DISTRICT COURT

VERSUS # 12-CR8-115995                       PARISH OF WASHINGTON

GERALD DAHLEM                                STATE OF LOUISIANA

## JOINT STIPULATION

NOW INTO COURT, through the undersigned counsel comes the State of Louisiana, and

defendant herein, who,  with respect, represents:

1.

Defendant herein through counsel, reserving the right to file timely additional motions

provided by law, together with counsel for the State of Louisiana, stipulate that the undersigned

Assistant District Attorney has provided a copy of the entire file in this matter to the defendant.

The State agrees to provide to the defense any additional file material subsequently obtained.

The defendant stipulates that receipt of this file serves as notice of the State's intention to

introduce all evidence (including defendant's statements) included therein.  The production of

this file constitutes full satisfaction of the Motion for Discovery and Inspection, Motion for Bill

of Particulars, Motion of Preliminary Exam and any request for Public Records pursuant to La.

R.S. 44.1, et seq.  The defendant and the State further stipulate that receipt of this file obligates

the defense to timely disclose to the state all materials discoverable by the State pursuant to La.

C.Cr.P. arts 724-728, including, but not limited to notice of defense based on mental condition

and notice of alibi.  The State agrees to produce all exhibits and evidence for inspection to the

defendant upon reasonable notice and request.

WHEREFORE, defendant herein and the State of Louisiana request that this Honorable

Court order these motions satisfied pursuant to this stipulation.

_____            _____
Attorney for the Defense                     Assistant District Attorney

_____
District Judge

Filed this _____ day of _____, 20_____, in Open Court by:

_____
Deputy Clerk of Court

13

## EXHIBIT C

## LETTER FROM SOUTHERN UNIVERSITY
## LAW CENTER

SOUTHERN UNIVERSITY LAW CENTER
POST OFFICE BOX 9294
BATON ROUGE, LOUISIANA 70813-9294

CLINICAL EDUCATION

TEL (225) 771-3333
FAX (225) 771-6296
(225) 771-3383

March 24, 2016

**GERALD W. DAHLEM, DOC# 384259**
**A.V.C. CAJUN 3 D-2**
**1630 PRISON ROAD**
**COTTONPORT La. 71327**

Re: **Rehearing**

Dear Mr. Dahlem,

We regret to inform you that on March 15, 2016, the Louisiana Supreme Court affirmed the 1st Circuit Court of Appeal and decided in the State's favor. We have attached to this letter a copy of the opinion for your review, but we will briefly explain the essence of what the Supreme Court held for your benefit, as well as explain your options moving forward.

In its ruling, the Supreme Court made two determinations. First, the Supreme Court held that it was unclear whether you were sentenced under Louisiana Revised Statutes 14:98(E)(1)(a), which does not require a sentence at hard labor, or La. R.S. 14:98(E)(4)(a), which mandates a sentence at hard labor. The Court's examination turned on the fact that the trial judge did not specifically outline how he considered the evidence, particularly State's Exhibit 11, which established that you were sentenced to home incarceration and a treatment program pursuant to your third DWI. Also, the Court looked at the fact that the jury did not make a finding related to that exhibit. Even so, the Supreme Court stated that they "cannot rule out the possibility that the defendant's original sentence was improper." (*See* Slip Opinion at page 13).

After making this first determination, the Court made its second determination that "even if the trial court's original sentence was improper, it was rendered moot by the defendant's subsequent habitual offender status and related sentence as such." The Court explained that because you were subjected to a habitual offender proceeding after your initial sentencing, that the second sentence mooted the improper jury composition issue. The Court summarized by stating that they "find this to be an issue of an improper sentence which has been rendered moot by the defendant's multiple offender status."

We strongly disagree with the Court's ruling. We believe that by deciding that the jury composition issue in your case as moot because of your "multiple offender status" and the habitual offender proceeding, the Court's decision raises, at least, serious due process concerns.

However, it is your decision on how we are to proceed, if at all. As we discussed in our phone conference in May 2015, we were appointed by the Supreme Court as your counsel for the purpose of arguing your case before them. It is your choice whether you want us to continue on your behalf, or if you wish to continue on your own, or with new counsel.

There are two options available to you. The first is that we can file an application for rehearing, asking the Louisiana Supreme Court to reconsider your case, and render a verdict in your favor. We believe that there is a strong argument in your favor; even so, it is unlikely that the Supreme Court will grant a rehearing because rehearings are rarely granted.

Louisiana Supreme Court Rule IX Section 1 gives a short time period in which an application for rehearing can be filed. The application must be filed "on or before the fourteenth calendar day after the mailing of the notice of judgment." While the Supreme Court rendered its opinion on the 15th of March, the notice of judgment was mailed on March 16 2016. That means that an application for rehearing must be filed on March 30, 2016.

The second option is filing for a writ of certiorari with the United States Supreme Court. The United States Supreme Court Rule 13 give the time period for applying for a writ of certiorari. That time period is "90 days after entry of the judgment." Thus, this option can take place either 90 days after the date of the Louisiana Supreme Court's judgment, meaning 90 days after March 15, 2016, which is Monday, June 13, 2016. However, if you choose to file for rehearing, the 90 day time period begins on the day that rehearing is either denied, or a rehearing judgment is entered.

If you choose for us to continue your representation, the only option that we will be able to represent you on is the first, filing for rehearing. We will not be able to represent you if you choose to file for a writ of certiorari with the United States Supreme Court. However, if you desire, we are willing to reach out to other practitioners and organizations on your behalf to assist you in finding suitable counsel to represent you. Unfortunately, we cannot guarantee that another practitioner will be willing to represent you.

Nonetheless, we strongly agree with Justice Weimer's dissent that you "must be retried." (*See* Dissenting Opinion at pg. 1). He importantly noted that this case was not about "declar[ing] [Mr. Dahlem] innocent," rather, in his opinion, "it is beyond debate that [Mr. Dahlem] was tried by half the number of factfinders the Louisiana Constitution requires." (Dissenting Opinion at pg. 6). That is what we believe the Court should have decided instead of looking beyond your trial at the habitual offender proceeding, and are more than willing to urge this on your behalf.

Finally, we understand that the rehearing deadline is looming, but we want to assure you that we are fully committed and prepared to proceed with the application for rehearing on your behalf. Because of the short window for filing an application for rehearing, in the event that we are unable to get in contact with you or hear from you before the deadline, we feel it is our professional and ethical obligation to continue to represent you and request a rehearing. To that

effect, we are currently preparing the application for rehearing to file with the Supreme Court because we want to ensure that a request is made on your behalf. We firmly believe that Justice Weimer's dissent is the correct result – you "must be retried" by a jury of twelve persons.

Sincerely,

Virginia B. Listach
Supervising Attorney

John Blanchard
Christine Wells
Student Attorneys

VBL:JB:CW/jlw

EXHIBIT D

LOUISIANA SUPREME COURT RULING
AND
DENIAL OF REHEARING

SUPREME COURT OF LOUISIANA

NO. 2014-KO-1555

STATE OF LOUISIANA

MAR 15 2016

VERSUS

GERALD W. DAHLEM

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF WASHINGTON

CRICHTON, J.

We granted the writ application in this case to determine whether trial by a jury composed of fewer jurors than required by law is a non-waivable structural defect which requires that a defendant's conviction be reversed and his sentence vacated. Specifically, the narrow question before us is whether defendant was denied a fair trial and due process of law because he was, without contemporaneous objection at trial, tried by a six-person jury, instead of a twelve-person jury, on a fourth offense Driving While Intoxicated ("DWI") charge. Following deliberations, the six-person jury found defendant guilty, and the trial court sentenced defendant as a habitual offender to 25 years without benefit of parole, probation, or suspension of sentence. The court of appeal affirmed both defendant's conviction and his sentence. For reasons that follow, we find that due to defendant's multiple offender status and subsequent sentence as such, his trial by a six-person jury was not an error requiring his conviction be reversed or his sentence vacated. We therefore affirm the lower courts' rulings and decline to reach the broader jury composition issue in this case.

Weimer, J. dissents & assigns reasons.
Hughes, J.) concurs in the result
Knoll, J.) additionally concurs and assigns reasons.

1

## FACTS AND PROCEDURAL HISTORY

Defendant was arrested in Bogalusa, Louisiana, on November 10, 2011, for DWI, fourth offense, after a Louisiana state trooper witnessed a pickup truck driven by the defendant cross the centerline to the left, veer back to the right, and then run off of the road.  When the trooper initiated a traffic stop, he observed that defendant swayed as he stood, had an odor of alcohol on his breath, his speech was slurred, and his eyes were glassy and bloodshot.  Defendant's blood alcohol level registered 0.180.

On January 17, 2012, the state filed a bill of information, charging defendant with one count of driving while intoxicated, fourth offense, a violation of La. R.S. 14:98 (Count I).  He was also charged with improper lane usage (a violation of La. R.S. 32:79), a license plate light violation (a violation of La. R.S. 32:304(C)), and driving under a suspended license (a violation of La. R.S. 32:415) (Counts II, III, and IV, respectively).[1]  The defendant pleaded not guilty on all counts.

---

[1] The Bill of Information, dated January 17, 2012, specifically provides as follows:

COUNT I
R.S. 14:98 DRIVING WHILE INTOXICATED, by operating a motor vehicle while under the influence of alcohol or any scheduled controlled dangerous substance or while under the influence of alcohol and one or more drugs which is not a scheduled controlled dangerous substance.

And now the District Attorney informs this Honorable Court that this is a FOURTH offense, the defendant having previously been convicted of operating a motor vehicle while under the influence of alcoholic beverages on May 15, 2002, in docket number F1360-18 in the Parish of Jefferson, State of Louisiana.

And further having been convicted of operating a motor vehicle while under the influence of alcoholic beverages on February 19, 2004, in docket number 03-CR-89114, in the Parish of Washington, State of Louisiana.

And further having been convicted of operating a motor vehicle while under the influence of alcoholic beverages on July 9, 2010, in docket number 10-CR1-108537, in the Parish of Washington, State of Louisiana.

COUNT 2
R.S. 32:79 IMPROPER LANE USAGE, by operating a motor vehicle on a public highway and improperly using the lanes for traffic.

COUNT 3
R.S. 32:304C LICENSE PLATE REQUIRED, either tail lamp or separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear.

A jury trial began on April 30, 2012, at which time the state severed counts two through four, and proceeded to trial only on Count I, which carried a penalty range with or without hard labor for "not less than ten years no more than thirty years."   La. R.S. 14:98(E)(1)(a).   Considering the bill of information and the related penalty range, the prosecution and defense chose a jury of six people, without any contemporaneous objection from either side at any time.   More specifically, neither the defendant nor the prosecution requested a twelve-person jury at any time before or during trial.  On May 1, 2012, the jury found defendant guilty as charged, and the trial court denied a Motion for New Trial and a Motion for Post Verdict Judgment of Acquittal.  Defendant was ultimately sentenced to 25 years at hard labor, with three years to be served without benefit of probation, parole, or suspension of sentence. [2]   The defendant moved for reconsideration of his sentence, which the trial court also denied.

Shortly thereafter, the State filed a Multiple Offender Bill of Information, alleging the defendant was a third felony offender.[3]  After a hearing on October 29,

---

COUNT 4
R.S. 32:415 DRIVING UNDER SUSPENSION, by operating a motor vehicle on a public highway while his driver's license was under suspension.

[2] The transcript from the defendant's original sentencing hearing on September 24, 2012, reveals the following statements by the trial court:

***

Basically, I feel that Mr. Dahlem has shown a disregard for the normal rules and an unwillingness to abide by the normal rules.  And I believe that without a significant jail sentence that Mr. Dahlem would be likely to perform or commit additional acts, criminal acts.  And I think it's his good fortune and our good fortune that no one has been significantly injured or killed at this point based on your driving while intoxicated.  And I have seen those in front of me, Mr. Dahlem, who are much less fortunate.

I have reviewed the sentencing guidelines under article 894.1.  And having considered both the aggravating and mitigating factors, I'm going to sentence you in this case to 25 years at hard labor in the custody of the Department of Corrections.  Three of those years will be served without the benefit of parole, probation, or suspension of sentence.

***

[3] The Multiple Offender Bill of Information states that on May 22, 2007, the defendant was convicted of theft between $300 and $500, a violation of La. R.S. 14:67 and was sentenced to

3

2012, the defendant admitted the allegations in the Multiple Offender Bill. The trial court, after considering the factors set forth in La. C.Cr.Pr. art. 894.1 (the sentencing guidelines) and all other evidence in the case,[4] vacated its original sentence and re-sentenced the defendant under La. R.S. 15:529.1 to serve 25 years imprisonment at hard labor, without the benefit of probation or suspension of sentence.

The defendant timely appealed to the Court of Appeal, First Circuit, asserting five assignments of error, both counseled and pro se.[5] In one of his pro se assignments of error, asserted for the first time on appeal,[6] defendant avers he was denied a fair trial and due process of law by being tried by a six-person jury for a felony requiring hard labor, as under La. Const. art. I, §17(A), a case in which the punishment is necessarily hard labor requires a jury of twelve persons. The appellate court disagreed, finding that because the defendant was sentenced to substance abuse treatment and home incarceration as a result of his predicate third

---

two (2) years with the Department of Corrections and three (3) years of probation. The defendant was also convicted of distribution of marijuana, a violation of La. R.S. 40:966, on June 26, 1997, and was sentenced to five (5) years with the Department of Corrections (suspended) and three (3) years of probation.

[4] The pre-sentencing investigation report in this matter, relied upon heavily by the trial judge at sentencing, shows that, beginning in 1990, defendant has been arrested twenty-seven (27) times prior to the instant offense, for various crimes including theft, criminal trespass, disturbing the peace, simple battery, and simple burglary (among others).

[5] The defendant asserted on appeal that: 1) the trial court imposed an unconstitutionally excessive sentence; 2) he was tried before an improper number of jurors; 3) he was denied a fair trial and due process of law because the predicate DWI evidence was insufficient as a result of an invalid first-offense DWI predicate; 4) he was denied a fair trial and due process of law because of prosecutorial misconduct; and 5) he was denied a fair trial and due process of law because an invalid predicate, based on a juvenile adjudication for theft, was used to obtain the habitual offender adjudication.

In affirming the defendant's conviction and sentence, the court of appeal found the trial court adequately considered the criteria of La. C.Cr.Pr. art. 894.1, and did not manifestly abuse its discretion in imposing defendant's sentence. Moreover, the appellate court found the sentence imposed was not grossly disproportionate to the severity of the offense, and therefore, was not unconstitutionally excessive. The court of appeal also found no abuse of discretion in the trial court's finding that the State sufficiently established that the defendant was the same person convicted in predicate number one (1), and the court also declined to find prosecutorial misconduct in this case. The appellate court also found the defendant's assignment of error number five (5), concerning his habitual offender predicate, was not properly preserved for review, as defendant did not file a written response to the habitual offender bill.

[6] Defendant did not object during the selection of the jury, participated in the selection of the six-person jury, and failed to file a motion in arrest of judgment at the trial court level.

4

offense DWI, under La. R.S. 14:98(E)(4)(a), the defendant "shall be imprisoned at hard labor for not less than ten nor more than thirty years." In this instance, the appellate court noted the defendant was erroneously tried by a six-person jury; however, he acquiesced in the error because he raised no objection at voir dire when the trial court announced it would be selecting a six person jury, nor did the defendant file a motion in arrest of judgment. Therefore, the court of appeal found, the wrong jury forum error was waived. *State v. Dahlem*, 13-0577 (La.App. 1 Cir. 6/18/14), 148 So.3d 591.

Judge Kuhn concurred in the court of appeal's opinion, but disagreed with the majority's conclusion that a jury composition error occurred in this case. In Judge Kuhn's view, "La. R.S. 14:98(E)(4)(a) does not create a new crime entitling a defendant to a trial by a twelve-person jury, but merely provides for enhancement of the sentence for a fourth-offense DWI sentence if the offender previously has been required to participate in substance abuse treatment and home incarceration as the result of a third-offense DWI conviction." *Dahlem,* 13-577, p. 1, 148 So.3d at 600. Judge Kuhn also noted that even if there was an error in the jury composition, it would be subject to a harmless error analysis under *State v. Brown,* 11-1044 (La. 3/13/12), 85 So.3d 52, 53 (*per curiam*), and is not reversible unless the defendant is actually prejudiced. Moreover, Judge Kuhn observed, the defendant waived any objection to the error in the jury composition by actively participating in the selection of the six-person jury that ultimately unanimously convicted him.

This Court subsequently granted the defendant's writ application, with the specific instruction that the Court's review was to be limited to the jury composition issue. *State v. Dahlem,* 14-1555 (La. 3/27/15), 161 So.3d 646.

## LAW AND ANALYSIS

In brief, the defendant asserts that the court of appeal erred because the failure to conduct his trial before a twelve person jury under La. Const. art. I, §

5

17(A) constitutes a non-waivable structural defect that requires his conviction be reversed and his sentence vacated. In the alternative, if this Court finds the error is not structural, defendant avers it fails the harmless error analysis, which also dictates his conviction be reversed, his sentence vacated, and the matter be remanded for a new trial.

In contrast, the state asserts the defendant waived any error by failing to make a contemporaneous objection, as required by La. C.Cr.Pr. art. 841. Moreover, the state maintains that this was not a structural error, and again, was waived, as it was first asserted on appeal. According to the State, a fourth offense DWI is subject to a six- person jury, and La. R.S. 14:98(E)(4)(a) is only an enhancement provision and does not dictate a six- or twelve-person jury. If the state had failed to prove the defendant's predicate offenses, sentencing under the enhanced provision was only a possibility and never a certainty. Finally, the state avers any error was harmless, as there was overwhelming evidence of defendant's guilt in this matter, also established by the unanimous jury verdict.

As stated above, the narrow issue defined by this Court is whether, in this instance, trial by an incorrect number of jurors warrants reversal of the defendant's conviction. Article I, § 17(A) of the Louisiana Constitution provides, in pertinent part:

> **Jury Trial in Criminal Cases.** A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, all of whom must concur to render a verdict. . . .[7]

---

[7] La. C.Cr.Pr. art. 782 similarly provides:

> A.     Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Cases

In *State v. Jones*, 05-0226 (La. 2/22/06), 922 So.2d 508, defendant was charged by bill of information with one count of DWI, fourth offense, a violation of La. R.S. 14:98(E). The defendant was tried by a jury of twelve, which unanimously found him guilty as charged. The trial court sentenced Jones to twenty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. While reviewing the merits, the appellate court found that defendant had been incorrectly tried before a jury of twelve jurors, rather than six jurors as required by La. Const. Art. I, § 17. Noting that this Court has previously held that "trial by an incorrect number of jurors, either more than or less than required, renders the verdict and sentence null," the *Jones* court stated it must determine whether such a constitutional error automatically requires reversal, or whether it is subject to a harmless error analysis, warranting reversal only when the defendant is actually prejudiced. *Id.*, 05-0226 at p. 3-4, 922 So.2d at 511. The Court explained:

> A structural error is one which affects the framework within which the trial proceeds. *Arizona v. Fulminante*, 499 U.S. 279, 307-311, 111 S.Ct. 1246, 1264-1265, 113 L.Ed.2d 302 1991). Constitutional structural errors warrant automatic reversal. *Arizona v. Fulminante*, 499 U.S. at 307-311, 111 S.Ct. at 1264-1265. Structural defects are fatal and have been restrictively defined to include the complete denial of counsel, *see Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); adjudication by a biased judge, *see Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); exclusion of members of defendant's race from a grand jury, *see Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); the right to self-representation at trial, *see McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); the right to a public trial, see *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); and the right to a jury verdict of guilt beyond a reasonable doubt, *see Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

*Id.*

The *Jones* court further noted, however, that not all constitutional errors are

---

in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict.
B.       Trial by jury may be knowingly and intelligently waived by the defendant except in capital cases.

7

structural, and in fact, most are subject to a harmless error analysis. *Id., citing Sullivan v. Louisiana*, 508 U.S. 275, 278-9, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). Utilizing the harmless error analysis, the court in *Jones* found that the defendant's conviction by a unanimous twelve-person jury did not result in any prejudice to him and remanded the case to the appellate court. In so concluding, the *Jones* court set forth a bright-line rule that juries composed of greater numbers of persons than constitutionally required no longer constitute a non-waivable jurisdictional defect subject to automatic reversal. Critically, however, the Court stated in a footnote, ""[o]ur holding here today does not guarantee the same result would be reached if a lesser number of jurors had been empaneled than required by law, or if there was no unanimity of verdict." *Jones*, 05-0226 at 7, n. 9, 922 So.2d at 513.

This Court more recently considered a similar issue in *State v. Brown*, 11-1044 (La. 3/13/12), 85 So.3d 52, wherein a jury of twelve persons convicted the defendant as charged of simple burglary of a religious building by a non-unanimous, 10-2 vote. The trial court sentenced the defendant to 12 years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Although the appellate court had reversed his conviction and sentence based upon defendant's trial by a twelve-person jury, where defendant should have had a six-person jury, this Court pointed to its decision in *State v. Jones, supra*, to reiterate that a trial of a relative felony before a jury of twelve persons is no longer an "absolute constitutional outlier that it once was in Louisiana." *Brown*, 11-1044 at 3, 85 So.3d at 53, *citing State v. Jones*, 05-0226, p. 3 (La. 2/22/06), 922 So.2d 508, 511. In *Brown*, however, this Court deemed it unnecessary to address whether the error in jury composition actually prejudiced respondent's case, finding instead that because the defendant failed to make a contemporaneous objection to the jury error, "he waived any entitlement to reversal on appeal on

grounds that he was tried by a jury panel which did not conform to the requirements of La. Const. art. I, § 17 and La. C.Cr.Pr. art. 782 because it included a greater number of jurors than required by law, although the error is patent on the face of the record. . . ." *Brown*, 11-1044 at 5, 85 So.3d at 55, citing *Jones*, 05-0226 at 5, 922 So.2d at 516 (Weimer, J., concurring in *Jones*) ("[The state correctly argues that] Louisiana's established procedural default rules should govern because the rule barring trial of a six-person jury offense in a twelve-person forum no longer applies in all instances and hence has lost its jurisdictional aspect. . . . A defendant should not have the opportunity of gambling on a favorable verdict from the larger jury and then resorting on appeal to an error that easily could have been corrected in the trial court at the outset of jury selection.").[8]

Although our previous jurisprudence has properly posited the question, as reserved in *Jones* and *Brown*, as to the appropriate procedure when a defendant is erroneously tried by a fewer number of jurors than constitutionally required, this case does not fit squarely in those circumstances.[9]   Here, after the defendant's

---

[8] Similar to reserving the contrary issue of fewer jurors when more is required, the court in *Brown* stated as follows in a footnote:

> As in *Jones*, we have no occasion to consider here whether trial before a panel composed of fewer jurors than required by law, i.e., trial of a 12–person jury offense in a six-person jury forum, constitutes more than trial error and retains its jurisdictional character as a structural defect in the proceedings. We also have no occasion to consider here whether, in a postconviction claim of ineffective assistance of counsel, the failure of counsel to object to the error in jury composition, which may constitute counsel error for purposes of the two-part test of ineffective assistance claims set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), may also satisfy *Strickland*'s second prong, that the error prejudiced respondent, i.e., "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064. Cf. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (the test of prejudice under *Strickland* "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.").

*State v. Brown*, 11-1044, p. 6, n. 1 (La. 3/13/12), 85 So. 3d 52, 55, n. 1.

[9] "It is well-settled in the jurisprudence of this state that courts will not decide abstract, hypothetical or moot controversies or render advisory opinions with respect to such controversies." *Shepherd v. Schedler*, 2015-1750 (La. 1/27/16), quoting *Cat's Meow, Inc. v. City of New Orleans, Dept. of Finance*, 98–0601, p. 8 (La.10/20/98), 720 So.2d 1186, 1193.

original sentence was imposed, he was billed as a habitual offender, and adjudicated as such.  Consequently, the trial court vacated its original sentence (at hard labor) and defendant received an enhanced recidivist sentence as a multiple offender (at hard labor).  In sum, the defendant ultimately received the same at hard labor sentence, despite the original sentence given by the trial court.  Thus, we do not find it necessary to analyze the effect of any jury composition error, if any existed, in this particular case.

The bill of information in this case, as set forth in note 1 above, charged defendant in Count 1 with Driving While Intoxicated, fourth offense.  Specifically, the charging instrument states, in pertinent part:

> COUNT I
> R.S. 14:98 DRIVING WHILE INTOXICATED, by operating a motor vehicle while under the influence of alcohol or any scheduled controlled dangerous substance or while under the influence of alcohol and one or more drugs which is not a scheduled controlled dangerous substance.
>
> And now the District Attorney informs this Honorable Court that this is a FOURTH offense, the defendant having previously been convicted of operating a motor vehicle while under the influence of alcoholic beverages on May 15, 2002, in docket number F1360-18 in the Parish of Jefferson, State of Louisiana.
>
> And further having been convicted of operating a motor vehicle while under the influence of alcoholic beverages on February 19, 2004, in docket number 03-CR-89114, in the Parish of Washington, State of Louisiana.
>
> And further having been convicted of operating a motor vehicle while under the influence of alcoholic beverages on July 9, 2010, in docket number 10-CR1-108537, in the Parish of Washington, State of Louisiana.

It is imperative to note that the bill of information sets the parameters and dictates the mode of trial.[10]  Based solely upon the information on the face of the bill of

---

[10] This court is aware of *State v. Gage*, 42,279 (La.App. 2 Cir. 8/29/07), 965 So.2d 592, and *State v. Hardeman*, 04-760 (La.App. 1 Cir. 2/18/05), 906 So.2d 616, which found that a related provision, La. R.S. 14:98(E)(4)(b), is not a separate offense requiring additional facts to be

information, the defendant in this case was properly tried before a six person jury, as the sentencing range for a fourth offense DWI, as listed in this particular bill of information, is not mandatory hard labor.  Specifically, La. R.S. 14:98(E)(1)(a), in effect at the time of defendant's offense, provided that operating a vehicle while intoxicated, fourth offense, carried the following penalty range **with or without hard labor**:

> . . . on a conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction, the offender **shall be imprisoned with or without hard labor** for not less than ten years nor more than thirty years and shall be fined five thousand dollars. Two years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. (emphasis added)

Given that the enhanced sentence to which the evidence made defendant subject was not apparent on the face of the bill of information, we specifically decline to create a duty requiring a trial judge to look beyond the face of the bill of information or the indictment, and the Title 14 penalty range.  Nor is it the responsibility of a trial judge to interrogate the district attorney or independently investigate as to what evidence might be introduced that would require a different jury composition at the outset of a case.  Doing so would be inappropriate and contrary to the efficient administration of criminal justice, and effectively result in bad policy.

The defendant in this case was initially sentenced to twenty-five years at hard labor, with three years without the benefit of parole, probation, or suspension of sentence.  During trial, documentary evidence (State's Exhibit #11) was introduced that established that after his DWI, third offense, the defendant was

---

alleged in the indictment in order to satisfy *Apprendi v. New Jersey,* 530 U.S. 466, 476, 120 S.Ct. 2348, 2355, 147 L.Ed.2d 435 (2000).  We find these cases distinguishable, however, as they addressed an *Apprendi* problem, but not a jury composition issue.  As stated above, our ruling today is based upon the facts of the record before us, and we reserve for another day the issue of whether a jury composed of fewer jurors than required is a structural defect requiring a defendant's conviction be reversed and a sentence vacated.

11

sentenced to substance abuse treatment and home incarceration,[11] which, under then-La. R.S. 14:98(E)(4)(a), required an enhanced **mandatory** hard labor sentence:

> If the offender has previously been required to participate in substance abuse treatment and home incarceration pursuant to Subsection D of this Section, the offender shall not be sentenced to substance abuse treatment and home incarceration for a fourth or subsequent offense, but **shall be imprisoned at hard labor** for not less than ten nor more than thirty years, and at least three years of the sentence shall be imposed without benefit of suspension of sentence, probation, or parole. (emphasis added)

Thus, the trial court's original sentence, which included three years without the benefit of parole, probation, or suspension of sentence, is consistent with the enhanced mandatory language in La. R.S. 14:98(E)(4)(a). A sentence such as the trial court's original one should only have been imposed if the trial court considered the aforementioned documentary evidence that established that defendant had, indeed, been sentenced to home incarceration and substance abuse treatment. Stated differently, the trial court's original sentence (including three years without the possibility of probation, parole or suspension), was necessarily dictated by consideration of the documentary evidence establishing defendant was sentenced to home incarceration and substance abuse treatment following his third offense DWI. However, because the trial judge did not specifically outline his consideration of this evidence, it is not clear from the record before us whether the

---

[11] The appellate court accurately noted the defendant's predicate offenses, as listed in the record:

> In connection with predicate #3, the State introduced into evidence a bill of information, commitment, minutes of guilty plea and sentencing, and transcript of guilty plea and sentencing. The documents indicated the defendant pled guilty to third-offense DWI and was sentenced to three years at hard labor, with all but eighty days of the sentence suspended, and three years of supervised probation. Special conditions of probation included that the defendant submit to an evaluation by the Department of Health and Hospitals, Office of Addictive Disorders, to determine the nature and extent of his substance abuse, and that he participate in any treatment plan recommended by that office, including inpatient treatment for at least four weeks. Additionally, the court ordered the defendant would be subject to home incarceration during the entire period of probation.

*State v. Dahlem*, supra, at 596.

trial court absolutely did, in fact, consider this evidence related to defendant's predicate third offense DWI, as the jury did not make a finding related to this fact, and the trial judge did not explicitly make such a finding during the defendant's sentencing proceedings. Moreover, the record reflects no argument from either the prosecution or the defense about whether or not the trial court should consider the evidence related to predicate #3, which would have led to an enhanced sentence. As a result, given the uncertainty of which provision the defendant was sentenced under, this court cannot rule out the possibility that the defendant's original sentence was improper. In other words, **if** the trial court sentenced the defendant under the unenhanced provision (with optional hard labor), the defendant was correctly tried by a six-person jury. **If** the trial court sentenced the defendant under the enhanced version, then the trial court was in error, and the sentence imposed may have been inappropriate. However, as discussed below, even if the trial court's original sentence was improper, it was rendered moot by the defendant's subsequent habitual offender status and related sentence as such. Consequently, we are unable to reach the jury composition issue in this particular case, but reserve the issue for this Court's review another day.

The State's Multiple Offender Bill of Information alleged that defendant was a third felony offender, with previous convictions in 1997 and 2007 for distribution of marijuana and theft between $300 and $500, respectively. After a hearing, the defendant admitted the allegations, and the trial court vacated its original sentence and resentenced him under La. R.S. 15:529.1 to 25 years at hard labor, without benefit of probation or suspension of sentence. In other words, the multiple offender bill in this instance resulted in an enhanced recidivist sentence that displaced the original sentence, placing the defendant in the same position he would have been in, even without consideration of the provisions set forth in La. R.S. 14:98(E)(4)(a) (which, under the Louisiana Constitution, require a twelve

person jury).[12]  In sum, we find this to be an issue of an improper sentence which has been rendered moot by the defendant's multiple offender status.  As a result, we decline to find any error that warrants reversal of the defendant's conviction or sentence in this particular instance.

CONCLUSION

Based upon the foregoing analysis, although we find the trial court may have considered the documentary evidence necessary to impose the enhanced provisions set forth in 14:98(E)(4)(a), as evidenced by the trial court's original sentence, we are unable to reach the jury composition issue.  Even assuming a possible jury composition error, we find it was rendered moot by the defendant's multiple offender status, which required that he be sentenced under the mandatory hard labor requirement set forth in La. R.S. 15:529.1(G).  For these reasons, we affirm the defendant's conviction and sentence.

**AFFIRMED.**

---

[12]We agree with Judge Kuhn's concurrence in the court of appeal's opinion, which states:

> . . . .[T]rial of the defendant by a six-person jury was dictated by law in this case. The district attorney, in the exercise of his discretion, elected to charge the defendant pursuant to La. R.S. 14:98 with a fourth-offense DWI. Under La. R.S. 14:98(E)(1)(a), the punishment for fourth-offense DWI is imprisonment with or without hard labor for not less than ten years and not more than thirty years and a $5,000.00 fine. In accordance with La. Const. art. I, sec. 17(A), such a case "shall be tried before a jury or six persons, all of whom must concur to render a verdict." See also La.C.Cr.P. art. 782(A).

> In reliance on these constitutional and statutory provisions, the State, the defense, and the trial court worked together to select a six-person jury to try this case. Although, the State later presented evidence at trial in connection with predicate # 3 which, if accepted, allowed for a sentence at hard labor under La. R.S. 14:98(E)(4)(a), sentencing of the defendant under this sentencing enhancement provision was only a possibility, but never a certainty. Thus, as a practical matter, this case was required to be tried in a six-person jury forum since there was only a possibility that the defendant could receive a sentence at hard labor. In Louisiana, a twelve-person jury is required only when the potential sentence is necessarily confinement at hard labor. La. Const. art. I, sec. 17(A); La.C.Cr.P. art. 782(A). Thus, the defendant's trial was conducted in accordance with the jury composition rules applicable to La. R.S. 14:98(E)(1)(a), wherein the actual conduct prescribed is a fourth-offense DWI, and the sentence to be imposed may be with or without hard labor.

*State v. Dahlem*, 13-0577, p. 1 (La.App. 1 Cir. 6/18/14), 148 So.3d 591, 600-01 (Kuhn, J., concurring).

SUPREME COURT OF LOUISIANA

NO. 2014-KO-1555

STATE OF LOUISIANA

VERSUS

MAR 15 2016

GERALD W. DAHLEM

KNOLL, J., additionally concurs.

Although I agree with the majority's conclusion that the District Court did not err when it tried defendant by a jury of six persons, I write separately because I believe the majority's analysis is overly complex. I am in full agreement with the views Judge Kuhn expressed in his concurring opinion that no structural error occurred in this case as the hard-time requirement of the former La. R.S. 14:98(E)(4)(a) does not create a *new crime* warranting trial by a jury of twelve persons. Because this statute merely provides for a *sentencing enhancement*, it does not transfigure the relative felony with which the District Attorney charged the defendant into an absolute felony. As such, application of this enhancement to a defendant *at sentencing* does not trigger the right to trial by a twelve person jury *at the outset of trial*. Moreover, even if we willingly suspend disbelief to imagine a jury composition error in this case, defendant failed to lodge a contemporaneous objection at the time of jury selection. As compelled by La. C.Cr.P. art. 841, we have repeatedly held that an irregularity or error cannot be availed of after the verdict unless it was objected to at the time it occurred since a contemporaneous objection is required to preserve an error for appellate review.[1] Indeed,

---

[1] La. C.Cr.P. art. 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence."); *State v. Kahey*, 436 So.2d 475, 489 (La. 1983) ("[A]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."); *State v. Lindsey*, 404 So.2d 466, 478 (La. 1981) ("In the absence of a contemporaneous objection, an alleged error or irregularity in the proceedings cannot be availed of after the verdict is rendered."); *State v. Marcell*, 320 So.2d 195, 197 (La. 1975) ("By failing to make a timely objection, a defendant waives his right to subsequently attack the judgment of conviction on grounds

> The basis for objections to trial irregularities or errors should be stated at the time they occur. Counsel cannot wait, with an anchor to windward, to urge the irregularity for the first time after conviction. An objection without stating the grounds gives the trial judge no opportunity to correct the alleged error.[2]

Thus, even if we assumed a jury composition error was present, defendant waived review of any such error when he failed to lodge a contemporaneous objection.

---

of error or irregularity.").

[2] *State v. Thornton*, 284 So.2d 753, 756 (La. 1973).

## SUPREME COURT OF LOUISIANA

### NO. 2014-KO-1555

### STATE OF LOUISIANA

MAR 15 2016

### VERSUS

### GERALD W. DAHLEM

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF WASHINGTON*

**WEIMER, J.,** dissenting.

I respectfully dissent. Although correctly noting that the penalty range in the state's charge governs whether a court must empanel a six or twelve person jury, the majority absolves the district court from being so governed. The Louisiana Constitution mandates a defendant charged with an offense "in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons." La. Const. art. 1, § 17(A). The defendant faced a hard labor sentence; however, he was tried before a jury of six persons. Therefore, the defendant must be retried.

The state's bill of information charged the defendant with a fourth offense of driving under the influence ("DUI"). The bill of information indicated this was a violation of La. R.S. 14:98. Under the same statute, two penalty ranges were indicated for such an offense.[1] One statutory provision established a range of incarceration "at hard labor for not less than ten nor more than thirty years." La. R.S. 14:98(E)(4)(a) (an absolute felony). Another statutory provision established a range of incarceration "with or without hard labor for not less than ten years nor more than

---

[1] After the relevant events in this case, La. R.S. 14:98 was amended, and the penalty provisions for a fourth offense DUI have been separately enumerated as La. R.S. 14:98.4. See 2014 La. Acts 385, § 1. Citations in this dissenting opinion correspond to the statutes in force during the defendant's trial.

thirty years." La. R.S. 14:98(E)(1)(a) (a relative felony). Whether a defendant faces the relative or absolute penalty provisions of La. R.S. 14:98 depends on the defendant's sentencing history. If a defendant charged as a fourth DUI offender "has previously been required to participate in substance abuse treatment and home incarceration" for a prior DUI offense, then the defendant faces the absolute felony provisions of La. R.S. 14:98(E)(4)(a), specifically a mandatory sentence of hard labor if convicted.

Because the state specified the fourth offender provisions of La. R.S. 14:98, but did not specify whether the state was proceeding under section (E)(4)(a) as an absolute felony (*i.e.*–with hard labor) or under section (E)(1)(a) as a relative felony (*i.e.*–with or without hard labor), the bill of information was equivocal. More precisely stated, and measured by the standard correctly identified by this court's majority,[2] because the bill of information did not actually inform whether the state was charging the defendant with an absolute or relative felony, the bill of information was equivocal on its face.[3]

Under more typical circumstances, a defendant must file a request for a bill of particulars to clarify a deficient bill of information in order to preserve the issue for review.[4] However, the circumstances in this case cannot be fairly characterized as

---

[2] This court has long held that the penalty range indicated in the state's charges dictates whether the largest number of jurors is required. See **State v. Stanford**, 15 So.2d 817, 820 (1943) ("the number of jurors to try a case is determined by the gravity or nature of the crime charged").

[3] "In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him." La. Const. art. 1, § 13. This court has explained that a bill of information must "allow the court to determine the propriety of the evidence which is submitted upon the trial in order that it may impose the correct punishment upon a verdict of guilty." **State v. Meunier**, 354 So.2d 535, 538 (La.1978).

[4] See, e.g., **State v. Gainey**, 376 So.2d 1240, 1242-43 (La. 1979) ("This court has long held that a short form indictment is not subject to attack on the grounds that it does not adequately inform the defendant of the crime charged, because the state is required, on request for a bill of particulars, to inform the defendant of the essential facts of the offense charged."). See also, e.g., **State v. Richthofen**, 01-500, p. 34 (La.App. 5 Cir. 11/27/01), 803 So.2d 171, 192 ("The time for testing the

2

typical because whether the defendant was tried by a six or twelve person jury lies at the core of a constitutionally-mandated factfinding process. Therefore, this issue is reviewable notwithstanding that the defendant neither filed a pretrial request for a bill of particulars, nor contemporaneously objected when the state introduced evidence at trial revealing that the state was prosecuting the defendant for an absolute felony.[5]

Even overlooking the fact that the bill of information was equivocal, once the state introduced evidence[6] that the defendant had been previously sentenced to substance abuse treatment and home incarceration, the defendant's fate was sealed. That is, since the jury had found the defendant guilty after the state introduced uncontroverted evidence that the defendant had previously been sentenced to substance abuse treatment and home incarceration for a third DUI, the judge had no discretion to sentence the defendant to anything but hard labor. See La. R.S. 14:98(E)(4)(a).

It would have been far preferable for the district court, during the pretrial stage, to call attention to the equivocation in the bill of information and to require the state to bring clarity to the charges so that the district court could, in turn, correctly identify the number of jurors it might be required to empanel.[7] However, once the district court was alerted by the state's evidence of the defendant's prior sentence of substance abuse treatment and home incarceration, just as much as the district court was stripped of any discretion to sentence the defendant to incarceration without hard

_____

sufficiency of an indictment is before trial by a motion to quash or an application for a bill of particulars.") (citing **Gainey**, *supra*).

[5] See **State v. Arvie**, 505 So.2d 44, 47 (La. 1987) ("On very rare occasions, this court has refused to apply the contemporaneous objection rule as a bar to review of an error which was so fundamental that it struck at the very essence of the reliability of the fact-finding process.").

[6] See State Exhibit 11.

[7] District court judges are broadly empowered to "issue … all … needful writs, orders, and process in aid of the jurisdiction of his court." La. Const. art. V, § 2.

labor, so, too, was the court stripped of the ability to proceed with a six person jury. See La. Const. art. I, § 17(A) ("A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons ...."). (Emphasis added.)

In its focus on the multiple bill sentence that the district court imposed in place of the original sentence for the instant offense, I believe the majority of this court has fallen further into error. The majority relies on **State v. Jones**, 05-0226 (La. 2/22/06), 922 So.2d 508, for the proposition that not all constitutional errors require reversal. In **Jones**, the defendant was incorrectly tried by a jury of twelve, rather than six. Utilizing a harmless error analysis, the **Jones** court found that the defendant's conviction by the unanimous twelve person jury did not prejudice the defendant. **Jones** is inapposite to this case. The defendant in **Jones** essentially received twice the number of constitutionally mandated factfinders. Similarly, in another case cited by the majority, **State v. Brown**, 11-1044 (La. 3/13/12), 85 So.3d 52, the defendant was also incorrectly tried by a jury of twelve, rather than six. Instead of a unanimous jury, the defendant in **Brown** was found guilty by the minimum threshold of ten jurors. Citing **Jones**, this court, in **Brown**, found that the erroneous jury composition did not require reversal. We explained in **Brown** that, because La. Const. art. 1, § 17 had been amended to allow the joinder of absolute and relative felonies and a trial of the joined offenses by a twelve person jury,[8] incorrectly trying a sole relative felony charge to a twelve person jury was no longer a jurisdictional defect. **Brown**, 11-1044 at 5-6, 85 So.3d at 55 ("[T]he rule barring trial of a six-person jury offense in a twelve-person forum no longer applies in all instances and hence has lost its

---

[8] See 1997 La. Acts 1502, § 1, approved October 3, 1998, effective November 5, 1998.

4

jurisdictional aspect ....") (quoting **Jones**, 05-0226 at 5, 922 So.2d at 516 (Weimer, J., concurring)).

In the instant case, six of the constitutionally mandated triers of fact did not participate in the defendant's trial. See La. Const. art. I, § 17(A); see also La. C.Cr.P. art. 782. In stark numeric terms, and in contrast to both **Jones** and **Brown**, the defendant received half of the twelve factfinders guaranteed him by the Constitution. Therefore, replacing the defendant's sentence stemming from a constitutionally infirm guilty verdict with a multiple-bill sentence is not harmless. Essentially, replacing the defendant's fourth DUI sentence, which was predicated upon a guilty verdict issued by half the number of required factfinders, with a multiple bill sentence, is no different than replacing the presumption of innocence with an assumption of guilt. Not only is this bad policy, but it ignores that La. Const. art. I, § 17(A) mandates a trial by twelve factfinders for absolute felonies.

Finally, I must point out that the majority has ignored a constitutional mandate as a consequence of going to great lengths to avoid the very issue this court granted writs to address. The majority recognizes that this court granted writs to resolve this issue: "whether trial by a jury composed of fewer jurors than required by law is a non-waivable structural defect." However, even after confining the parties' briefing to this issue, the majority "decline[s] to reach the broader jury composition issue in this case." **State v. Dahlem**, 14-1555, slip op. at 1 (La. __/__/16). Nevertheless, the issue, as framed, answers itself when one considers the source of the requirement for twelve jurors. Because the predicate third DUI offense required the district court to sentence the defendant to hard labor, the defendant was entitled to a trial by a twelve person jury. This jury composition is cast in mandatory terms, both in the Louisiana Constitution and in the Code of Criminal Procedure. See La. Const. art. I, § 17(A)

5

("A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict."); and La. C.Cr.P. art. 782 ("Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict."). Here, both our state Constitution and an article of our Code of Criminal Procedure have established a twelve-person jury as a minimal requirement for factfinding in absolute felony cases; it is not for this court to say differently. This case is unlike **Jones** and **Brown**, where reversal was not required because the defendants in those cases received twice the number of factfinders than the minimal number guaranteed by the Constitution.

In conclusion, this analysis does not declare the defendant innocent. This analysis determines it is beyond debate that the defendant was tried by half the number of factfinders the Louisiana Constitution requires. Because I find this analysis compulsory under our state Constitution, I must respectfully dissent.

6



# Supreme Court
### STATE OF LOUISIANA
#### New Orleans

CHIEF JUSTICE
  BERNETTE J. JOHNSON    Seventh District
JUSTICES
  GREG G. GUIDRY        First District
  SCOTT J. CRICHTON     Second District
  JEANNETTE THERIOT KNOLL  Third District
  MARCUS R. CLARK       Fourth District
  JEFFERSON D. HUGHES III  Fifth District
  JOHN L. WEIMER        Sixth District

JOHN TARLTON OLIVIER
CLERK OF COURT

400 Royal St., Suite 4200
NEW ORLEANS, LA   70130-8102

TELEPHONE   (504) 310-2300
HOME PAGE   http://www.lasc.org

May 2, 2016

In Re:  State of Louisiana vs Gerald Dahlem

No: 2014-KO-1555

Dear Counsel:

Enclosed, please find a News Release documenting this court's denial of the application for rehearing in the above entitled referenced case.

With kindest regards, I remain,

Very truly yours,

John Tarlton Olivier
Clerk of Court

By:    Carmen B. Young
Deputy Clerk of Court

CBY
Enclosure
ccs:  All Counsel of Record

## Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #24

FROM: CLERK OF SUPREME COURT OF LOUISIANA

On the <u>2nd day of May, 2016</u>, the following action was taken by the Supreme Court of
Louisiana in the case(s) listed below:

### APPLICATION FOR REHEARING GRANTED; JUDGMENT REAFFIRMED; SEE PER CURIAM:

2015-CA-1750    DERRICK SHEPHERD v. THOMAS SCHEDLER, IN HIS OFFICIAL CAPACITY AS
                THE SECRETARY OF STATE FOR THE STATE OF LOUISIANA, & JAMES
                "BUDDY" CALDWELL IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL FOR
                THE STATE OF LOUISIANA, & PAUL D. CONNICK, JR., IN HIS OFFICIAL
                CAPACITY AS DISTRICT ATTORNEY FOR THE 24TH JUDICIAL DISTRICT,
                PARISH OF JEFFERSON, STATE OF LOUISIANA (Parish of E. Baton
                Rouge)
                GUIDRY, J., would grant rehearing and assigns reasons.

### APPLICATION FOR REHEARING NOT CONSIDERED:

2014-K -2295    STATE OF LOUISIANA v. QUINT MIRE (Parish of Vermilion)
                HUGHES, J., Not considered.  Not timely filed.  See Supreme Court
                Rule IX, Section 1.

### APPLICATIONS FOR REHEARING DENIED:

2014-KO-1555    STATE OF LOUISIANA v. GERALD W. DAHLEM (Parish of Washington)
                WEIMER, J., would grant.

2015-B -1453    IN RE: CHRISTINE M. MIRE
                JOHNSON, C.J., additionally concurs in the denial of the
                rehearing for the reasons assigned by Knoll, J.
                KNOLL, J., additionally concurs with reasons.
                WEIMER, J., dissents and assigns reasons.
                CLARK, J., additionally concurs in the denial of the rehearing
                for the reasons assigned by Knoll, J.
                HUGHES, J., would grant.
                GUIDRY, J., would grant.

2015-O -1691    IN RE:  JUSTICE OF THE PEACE LEROY J. LAICHE, JR., SECOND JUSTICE
                COURT, PARISH OF ASCENSION, STATE OF LOUISIANA
                WEIMER, J., would grant.
                HUGHES, J., would grant.

2015-C -1793    COASTAL DRILLING COMPANY, L.L.C. v. BARRY J. DUFRENE, IN HIS
                CAPACITY AS DIRECTOR OF ST. MARY PARISH SALES AND USE TAX
                DEPARTMENT AND EX-OFFICIO TAX COLLECTOR FOR ST. MARY PARISH
                (Parish of St. Mary)
                KNOLL, J., would grant.
                HUGHES, J., would grant.

**EXHIBIT E**

**FIRST CIRCUIT COURT OF APPEALS RULING
AND
DENIAL OF REHEARING**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT


NO. 2013 KA 0577


STATE OF LOUISIANA

VERSUS

GERALD W. DAHLEM

Judgment Rendered: *JUN 1 8 2014*

\* \* \* \* \* \* \* \*

Appealed from the
22nd Judicial District Court
In and for the Parish of Washington
State of Louisiana
Case No. #12 CR8 115995

The Honorable William J. Crain, Judge Presiding

*Higginbotham, J. concurs \* \* \* \**
*Kuhn, J concurs & assigns reasons*

Mary E. Roper                         Counsel for Defendant/Appellant
Baton Rouge, Louisiana                Gerald W. Dahlem

Gerald W. Dahlem                      Defendant/Appellant
Cottonport, Louisiana                 Pro Se

Walter P. Reed                        Counsel for Plaintiff/Appellee
District Attorney                     State of Louisiana
Covington, Louisiana

Kathryn Landry
Baton Rouge, Louisiana


\* \* \* \* \* \* \* \*


BEFORE: KUHN, HIGGINBOTHAM, AND THERIOT, JJ.

**THERIOT, J.**

  The defendant, Gerald W. Dahlem, was found guilty by a jury of fourth-offense driving while intoxicated.  The trial court adjudged him a third-felony habitual offender and sentenced defendant to twenty-five years at hard labor, without benefit of probation or suspension of sentence. For the following reasons, we affirm the conviction, habitual offender adjudication and sentence.

**FACTS AND PROCEDURAL HISTORY**

  On November 10, 2011, at approximately 4:00 a.m., Louisiana State Police Trooper Steven Dan Manning was patrolling on Marshall Richardson Road in Bogalusa. He observed a pickup truck being driven by the defendant cross the centerline to the left, veer back to the right, and then run off the road. When Trooper Manning initiated a traffic stop, he observed that the defendant swayed as he stood; he had an odor of alcohol on his breath; his speech was slurred; and his eyes were glassy and bloodshot. He conceded he had drunk "several" beers and had been "drinking driving." Thereafter, he submitted to a chemical test of his breath, and a sample he provided at 4:05 a.m. indicated his blood-alcohol level was 0.180.  He also performed poorly on the field sobriety tests. Furthermore, the defendant did not have a valid driver's license.

  The defendant was charged by bill of information with one count of fourth-offense driving while intoxicated[1] (DWI) (count I), a violation of La. R.S. 14:98; one count of improper lane usage (count II), a violation of La. R.S. 32:79; one count of license plate light required (count III), a violation

---

[1]  Predicate #1 was set forth as the defendant's May 15, 2002 conviction, under Parish of Jefferson Docket #F13560-18, for first-offense DWI. Predicate #2 was set forth as the defendant's February 19, 2004 conviction, under Parish of Washington Docket #03-CR-89114, for first-offense DWI. Predicate #3 was set forth as the defendant's July 9, 2010 conviction, under Parish of Washington Docket #10-CR1-108537, for third-offense DWI.

2

of La. R.S. 32:304(C); and one count of driving under suspension (count IV), a violation of La. R.S. 32:415(A); and pled not guilty on all counts. The State severed counts II-IV prior to the presentation of evidence. Following a jury trial on count I, the defendant was found guilty as charged and was sentenced to twenty-five years at hard labor, with three years without benefit of parole, probation, or suspension of sentence, pursuant to La. R.S. 14:98(E)(4)(a).   The defendant moved for reconsideration of sentence, and the motion was denied.

Thereafter, the State filed a habitual offender bill of information against the defendant, alleging he was a third-felony habitual offender.[2] The defendant agreed with the allegations of the habitual offender bill, and the trial court adjudged him a third-felony habitual offender, vacated the previously imposed sentence, and sentenced him to twenty-five years at hard labor, without benefit of probation or suspension of sentence. The defendant timely filed an appeal.

## ASSIGNMENTS OF ERROR

The defendant has filed a counseled brief and a pro se brief asserting:

1) The trial court imposed an unconstitutionally excessive sentence.

2) He was denied a fair trial and due process of law by being tried by a six-person petit jury.

3) He was denied a fair trial and due process of law because the predicate DWI evidence was insufficient due to an invalid first-offense DWI predicate.

---

[2]    Predicate #1 was set forth as the defendant's May 22, 2007 conviction, under Twenty-second Judicial Court Docket #424062, for theft between $300 and $500.  Predicate #2 was set forth as the defendant's June 26, 1997 conviction, under Fifteenth Judicial Court Docket #75466, for distribution of marijuana.

3

4) He was denied a fair trial and due process of law due to prosecutorial misconduct.

5) He was denied a fair trial and due process of law because an invalid predicate, based on a juvenile adjudication for theft, was used to obtain the habitual offender adjudication.

## EXCESSIVE SENTENCE

In his sole counseled assignment of error, the defendant argues the trial court imposed a constitutionally excessive sentence in this matter because his "criminal history has demonstrated that he has a severe problem with alcohol."

The Louisiana Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La. Code Crim. P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. *State v. Hurst*, 99-2868 (La. App. 1st Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 2000-3053 (La. 10/5/01), 798 So.2d 962. Remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown. *State v. Harper*, 2007-0299 (La. App. 1st Cir. 9/5/07), 970 So.2d 592, 602, writ denied, 2007-1921 (La. 2/15/08), 976 So.2d 173.

Louisiana Constitution Article I, Section 20 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. Generally, a sentence is

4

considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. *Hurst*, 797 So.2d at 83.

Pursuant to La. R.S. 14:98, the defendant's sentencing exposure was imprisonment at hard labor for not less than ten nor more than thirty years, with at least three years of the sentence without benefit of suspension of sentence, probation, or parole. See La. R.S. 14:98(E)(4)(a). As a third-felony habitual offender, his sentencing exposure increased to imprisonment at hard labor for not less than twenty nor more than sixty years, with at least three years of the sentence without benefit of suspension of sentence, probation, or parole. See La. R.S. 15:529.1(A)(3)(a); *State v. Bruins*, 407 So.2d 685, 687 (La. 1981) ("It is not a crime to be an habitual offender. The statute increases the sentence for a recidivist. The penalty increase is computed by reference to the sentencing provisions of the underlying offense. Similarly, the conditions imposed on the sentence are those called for in the reference statute."). The defendant was sentenced as a third-felony habitual offender to twenty-five years at hard labor, without benefit of probation or suspension of sentence.

At the habitual offender hearing, the trial court stated, under La. Code Crim. P. art. 894.1, it had considered the aggravating and mitigating factors and found that during the period of a suspended sentence, there was an undue risk the defendant would commit another crime. The court also found

the defendant was in need of correctional treatment or a custodial environment and any lesser sentence would deprecate the seriousness of his crime.

A thorough review of the record reveals the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing the sentence herein.  <u>See</u> La. Code Crim. P. art. 894.1(A)(1), (A)(2) & (A)(3).  Additionally, the sentence imposed was not grossly disproportionate to the severity of the offense, and thus, was not unconstitutionally excessive.

This assignment of error is without merit.

## INCORRECT NUMBER OF JURORS

In pro se assignment of error number 1, the defendant argues he was improperly tried before a six-member petit jury for a felony requiring hard labor.

A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict.  A case in which the punishment may be confinement at hard labor shall be tried before a jury of six persons, all of whom must concur to render a verdict.  La. Const. art. I, § 17(A); La. Code Crim. P. art. 782(A). The instant case was tried before a six-person jury.

In connection with predicate #3, the State introduced into evidence a bill of information, commitment, minutes of guilty plea and sentencing, and transcript of guilty plea and sentencing.  The documents indicated the defendant pled guilty to third-offense DWI and was sentenced to three years at hard labor, with all but eighty days of the sentence suspended, and three years of supervised probation.  Special conditions of probation included that the defendant submit to an evaluation by the Department of Health and Hospitals,

6

Office of Addictive Disorders, to determine the nature and extent of his substance abuse, and that he participate in any treatment plan recommended by that office, including inpatient treatment for at least four weeks. Additionally, the court ordered the defendant would be subject to home incarceration during the entire period of probation.

Louisiana Revised Statutes 14:98(E)(4)(a) provides:

> If the offender has previously been required to participate in substance abuse treatment and home incarceration pursuant to subsection D of this Section,[3] the offender shall not be sentenced to substance abuse treatment and home incarceration for a fourth or subsequent offense, but **shall be imprisoned at hard labor** for not less than ten nor more than thirty years, and at least three years of the sentence shall be imposed without benefit of suspension of sentence, probation, or parole. (Emphasis added).

Until recently, longstanding jurisprudence of the Louisiana Supreme Court considered errors involving trials conducted in the wrong jury forum, whether the selected panel included a greater or lesser number of jurors than required by law, nonwaivable jurisdictional defects which rendered any verdict returned absolutely null. *State v. Brown*, 2011-1044 (La. 3/13/12), 85 So.3d 52, 53 (per curiam).

In *Brown*, 85 So.3d at 54, however, the court noted that in *State v. Jones*, 2005-0226 (La. 2/22/06), 922 So.2d 508, 511, it had found the error of trying a six-person jury offense before a twelve-person jury to be a trial error subject to harmless error analysis, rather than a structural[4] or jurisdictional[5] defect in the proceedings. The court in *Brown* held a necessary corollary of

---

[3]    La. R.S. 14:98(D) sets forth the penalty for third-offense DWI.

[4]    A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Structural errors infect the entire trial process and necessarily render a trial fundamentally unfair; they deprive a defendant of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence. The United States Supreme Court has found structural errors in "only a very limited class of cases." Structural defects have been restrictively defined to include the total deprivation of the right to counsel, a biased trial judge, unlawful exclusion of grand jurors of defendant's race, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction. *State v. Ruiz*, 2006-1755 (La. 4/11/07), 955 So.2d 81, 85-86. (Citations omitted).

[5]    In *State v. Langley*, 2006-1041 (La. 5/22/07), 958 So.2d 1160, 1169 n.7, cert. denied, 552 U.S. 1007, 128 S.Ct. 493, 169 L.Ed.2d 368 (2007), the Louisiana Supreme Court rejected the position that structural errors or defects *necessarily* constitute the functional equivalent of jurisdictional defects which render the proceedings not merely voidable but absolutely null. (Emphasis in original).

*Jones* was that a wrong jury forum error was subject to Louisiana's procedural default rules which generally require a defendant to timely preserve trial errors in the trial court for subsequent appellate review. See La. Code Crim. P. art. 841(A). The *Brown* court further held grounds for arresting judgment as a matter of La. Code Crim. P. art. 859, including jury composition errors under La. Code Crim. P. art. 782, might provide narrow exceptions to the contemporaneous objection rule, but, under La. Code Crim. P. art. 861, a motion in arrest of judgment was required to be "filed and disposed of before sentence." *Brown*, 85 So.3d at 54-55. In *Brown*, the court found the defendant "acquiesced in the error of trying a six-person jury offense in a twelve-person jury forum by actively participating in the selection of a twelve-person jury without objection at any stage of the proceedings and thereby waived any relief on appeal on grounds that the panel selected was composed of a greater number of jurors than required by law". *Brown*, 85 So.3d at 53.

In the instant case, the defendant acquiesced in the error of trying a twelve-person jury offense in a six-person jury forum. He raised no objection at voir dire when the trial court announced, "[t]he purpose of this process is for us to select six people who can fairly and impartially hear the evidence in this case and decide the case." Thereafter, he participated in the selection of the six-person jury. Additionally, he failed to file a motion in arrest of judgment. Accordingly, the wrong jury forum error was waived.

## PREDICATE DWI EVIDENCE

In pro se assignment of error number 2, the defendant argues the State presented insufficient evidence concerning identification in regard to predicate DWI offense #1.

8

In Louisiana, proof that a person of the same name has been previously convicted does not constitute prima facie evidence that the two persons are the same. The state must additionally offer proof that the accused is the same person as the defendant previously convicted. Various methods may be used to prove that the defendant on trial is the same person whose name is shown as the defendant in the evidence of a prior conviction, such as by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver's license number, sex, race and date of birth. The mere fact that the defendant on trial and the person previously convicted have the same name does not constitute sufficient evidence of identity. See State v. Westbrook, 392 So.2d 1043, 1045 (La. 1980) (on rehearing); State v. Pitre, 532 So.2d 424, 426 (La. App. 1st Cir. 1988), writ denied, 538 So.2d 590 (La. 1989).

The bill of information charging the instant offense identified the defendant as "Gerald W. Dahlem," "DOB: 05/04/1971[,]" and listed his address as 11231 Hwy 21S, Bogalusa, Louisiana, 70427. The defendant did not challenge the accuracy of the identifying information on the bill.

At trial, the State presented testimony from Louisiana Department of Probation and Parole Officer Aaron Moran. Officer Moran identified the defendant in court and testified he supervised the defendant during his probation in connection with DWI Predicate #3. Officer Moran indicated the first predicate offense for DWI predicate #3 was DWI predicate #1.

Thereafter, in connection with DWI predicate #1, the State introduced into evidence State Exhibit #9, certified true copies of: the bill of information charging "DAHLEM, GERALD W.," white male, date of birth May 4, 1971, driver's license #5515517, address 11231 Highway 21,

Bogalusa, Louisiana, with DWI committed on December 24, 2000; extracts of minutes indicating "DAHLEM, GERALD W.," date of birth May 4, 1971, driver's license #5515517, on May 15, 2002 pled guilty as charged "under Art. 894," and a waiver of constitutional rights form for DWI, executed by Gerald Dahlem, date of birth May 4, 1971, on May 15, 2002, with benefit of counsel.  The defense objected that the defendant had not been identified as the person that was the subject of the paperwork.  The trial court overruled the objection, and the defense objected to the court's ruling.

There was no abuse of discretion.  The State sufficiently established the defendant was the same person convicted in predicate #1.

This assignment of error is without merit.

## PROSECUTORIAL MISCONDUCT

In pro se assignment of error number 3, the defendant argues the State was guilty of prosecutorial misconduct because it presented false testimony from Officer Moran that he "personally supervised" the defendant, and that the first-offense DWI listed on the bill of information concerning DWI predicate #3 had the same docket number as DWI predicate #1.

Initially, we note the defendant failed to contemporaneously object to the accuracy of the challenged testimony from Officer Moran, and thus, the instant claim was not preserved for review.   See La. Code Evid. art. 103(A)(1) ("Error may not be predicated upon a ruling which admits ... evidence unless a substantial right of the party is affected, and ... a timely objection ... appears of record, stating the specific ground of objection"); La. Code Crim. P. art. 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."); *State v. Trahan*, 93-1116 (La. App. 1st Cir. 5/20/94), 637 So.2d 694, 704 ("The grounds for objection must be sufficiently brought to the court's attention to

allow it the opportunity to make the proper ruling and prevent or cure any error.").

Moreover, although the bill of information concerning DWI predicate #3 identified the first-offense DWI listed thereon as the defendant's May 15, 2002 conviction, under Jefferson Parish Docket number "F1360-18," rather than the defendant's May 15, 2002 conviction, under Jefferson Parish Docket number "F13560-18," considering the other identifying information presented by the State, no substantial rights of the accused were affected by the typographical error. See La. Code Crim. P. art. 921.

This assignment of error is without merit.

### HABITUAL OFFENDER PREDICATE #1

In pro se assignment of error number 4, the defendant argues habitual offender predicate #1 was unavailable for use as a predicate to enhance his sentencing exposure because it was a third-offense conviction for theft, and his first-offense conviction for theft occurred when he was a juvenile.

In order to challenge the validity of a predicate offense listed in a habitual offender bill of information, the defendant must file a written response to the habitual offender bill, setting forth his claim, and the factual basis therefor, with particularity. The defendant has the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence. See La. R.S. 15:529.1(D)(1)(b).

In the instant case, the defendant failed to file a written response to the habitual offender bill. At the habitual offender hearing, defense counsel "preserve[d]" his previously filed motions for appeal and to reconsider sentence. Thereafter, he specifically admitted that "those two prior

11

convictions are, in fact, [the defendant's]," but preserved his right to challenge whether or not a fourth-offense DWI was subject to enhancement under the habitual offender law.

The instant claim was not preserved for review.  See La. R.S. 15:529.1(D)(1)(b); La. Code Crim. P. art. 841(A); *Trahan*, 637 So.2d at 704.

This assignment of error is without merit.

### REVIEW FOR ERROR

Initially, we note that our review for error is pursuant to La. Code Crim. P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignments of error and "error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. Code Crim. P. art. 920(2).

The defendant was sentenced as a third-felony habitual offender to twenty-five years at hard labor, without benefit of probation or suspension of sentence.  However, at least three years of the sentence should have been imposed without benefit of parole.  See La. R.S. 14:98(E)(4)(a), La. R.S. 15:529.1(A)(3)(a), & *Bruins*, 407 So.2d at 687.[6]  Although the failure to deny parole is error under La. Code Crim. P. art. 920(2), it is certainly harmless error.  The defendant is not prejudiced in any way by the court's failure to deny him parole.  Because the trial court's failure to deny parole was not raised by the State in either the trial court or on appeal, we are not required to take any action.  As such, we decline to correct the illegally lenient sentence.  See *State v. Price*, 2005-2514 (La. App. 1st Cir. 12/28/06), 952

---

[6] La. R.S. 15:301.1(A) cannot remedy the sentencing error because "at least" three years of the sentence imposed was required to be without benefit of suspension of sentence, probation, or parole.

12

So.2d 112, 123-25 (en banc), writ denied, 2007-0130 (La. 2/22/08), 976 So.2d
1277.

**CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.**

STATE OF LOUISIANA

VERSUS

GERALD W. DAHLEM

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

2013 KA 0577

Kuhn, J., concurs and assigns reasons.

I concur in the result reached by the majority affirming the defendant's conviction, habitual offender adjudication, and sentence. I emphatically disagree, however, with the language in the majority opinion indicating a jury composition error occurred in this case. The defendant was correctly tried by a six-person jury.

First, the hard-time requirement of La. R.S. 14:98(E)(4)(a) does not create a new crime entitling a defendant to a trial by a twelve-person jury, but merely provides for enhancement of the sentence for a fourth-offense DWI sentence if the offender previously has been required to participate in substance abuse treatment and home incarceration as the result of a third-offense DWI conviction. See La. R.S. 14:98(E)(4)(a). In considering another sentence enhancement provision, La. R.S. 14:98(E)(4)(b),[1] this Court, in *State v. Hardeman*, 04-0760 (La. App. 1st Cir. 2/18/05), 906 So.2d 616, 626, concluded that the provision did not create a new crime, but merely sets forth an additional penalty for fourth-offense DWI under delineated circumstances. The rationale employed in *Hardeman* to the effect that La. R.S. 14:98(E)(4)(b) punishes recidivism rather than creating a new crime is equally applicable to the sentencing provision at issue in this case. The hard-time requirement of La. R.S. 14:98(E)(4)(a) is simply an enhancement provision that does not implicate a defendant's right to trial by a twelve-person jury.

---

[1] Louisiana Revised Statues 14:98(E)(4)(b) provides that:

> If the offender has previously received the benefit of suspension of sentence, probation, or parole as a fourth offender, after serving the mandatory sentence required by Subparagraph (E)(1)(a), no part of the remainder of the sentence may be imposed with benefit of suspension of sentence, probation, or parole, and no portion of the sentence shall be imposed concurrently with the remaining balance of any sentence to be served for a prior conviction for any offense.

Second, trial of the defendant by a six-person jury was dictated by law in this case.  The district attorney, in the exercise of his discretion, elected to charge the defendant pursuant to La. R.S. 14:98 with a fourth-offense DWI.[2]  Under La. R.S. 14:98(E)(1)(a), the punishment for fourth-offense DWI is imprisonment *with or without hard labor* for not less than ten years and not more than thirty years and a $5,000.00 fine.  In accordance with La. Const. art. I, sec. 17(A), such a case "shall be tried before a jury or six persons, all of whom must concur to render a verdict."  See also La. C.Cr.P. art. 782(A).

In reliance on these constitutional and statutory provisions, the State, the defense, and the trial court worked together to select a six-person jury to try this case.  Although, the State later presented evidence at trial in connection with predicate #3 which, *if accepted*, allowed for a sentence at hard labor under La. R.S. 14:98(E)(4)(a), sentencing of the defendant under this sentencing enhancement provision was only a possibility, but never a certainty.  Thus, as a practical matter, this case was required to be tried in a six-person jury forum since there was only a possibility that the defendant could receive a sentence at hard labor.  In Louisiana, a twelve-person jury is required only when the potential sentence is *necessarily confinement* at hard labor.  La. Const. art. I, sec. 17(A); La. C.Cr.P. art. 782(A).  Thus, the defendant's trial was conducted in accordance with the jury composition rules applicable to La. R.S. 14:98(E)(1)(a), wherein the actual conduct prescribed is a fourth-offense DWI, and the sentence to be imposed may be with or without hard labor.

Finally, even assuming *arguendo* that a jury composition error occurred in trying the defendant by a six-person jury, such error would be subject to a harmless error analysis.  In *State v. Brown*, 11-1044 (La. 3/13/12), 85 So.3d 52, 53 (*per curiam*), the Supreme Court made it clear that there is no longer a "supposition that

---

[2]   The defendant could have filed a motion for a bill of particulars to further clarify the nature of the charge against him, but did not do so.  See La. C.Cr.P. arts. 484 & 521.

2

errors in jury composition are invariably jurisdictional or structural in nature." The Supreme Court further indicated that an error in jury composition "no longer constitute[d] a non-waivable structural defect in the proceeding" and "warrant[ed] reversal only where the defendant is actually prejudiced." **Brown**, 85 So.3d at 53.

In the instant case, the defendant waived any error in the jury's composition by actively participating in the selection of the six-person jury without objection. Even if the defendant had not done so, such error clearly would have been harmless in light of the overwhelming evidence of his guilt presented at trial. After the arresting officer observed the defendant's vehicle moving erratically on the roadway and stopped him, the officer noticed telltale signs of drunkenness, such as swaying, an alcoholic odor, slurred speech, and glassy and bloodshot eyes. The defendant conceded that he had consumed alcohol and had driven his vehicle. He also performed poorly on field sobriety tests, and a chemical breath test indicated that his BAC was 0.180 grams percent. Given the evidence of the defendant's guilt, as well as his acquiescence in the selection of a six-person jury, any error in the size of the jury – of which there was none – did not prejudice the defendant and was harmless beyond a reasonable doubt. See La. C.Cr.P. art. 921.

For these reasons, I concur.

3

**EXHIBIT F**

**REHEARING AND ORIGINAL BRIEF**
**FILED BY SOUTHERN UNIVERSITY LAW CENTER**

IN THE

SUPREME COURT OF LOUISIANA

No. 2014-KO-1555

---

STATE OF LOUISIANA,

*Respondent/Appellee*

v.

GERALD W. DAHLEM

*Petitioner/Appellant*

---

SUPERVISORY WRITS TO THE FIRST CIRCUIT COURT OF APPEAL
FOR THE STATE OF LOUISIANA
No. 2013-KA-0577

FROM THE 22ND JUDICIAL DISTRICT COURT
FOR THE PARISH OF WASHINGTON
HONORABLE WILLIAM J. CRAIN, PRESIDING
No. 12-CR8-115995, SECTION D

---

APPLICATION FOR REHEARING ON BEHALF OF
GERALD W. DAHLEM
PETITIONER/APPELLANT

---

Virginia B. Listach
Bar No. 19011
*Supervising Attorney*[1]

John R. Blanchard
Christine E. Wells
*Rule XX Certified Student Attorneys*[2]

Southern University Legal Clinic
P.O. Box 9294
Baton Rouge, LA 70813
Phone: 225.771.3333
Fax: 225.771.3383

Counsel for Petitioner-Appellant Gerald W. Dahlem

---

[1] Lead counsel, designated as required pursuant to Rule II, § 2 of the Rules of the Supreme Court of Louisiana.

[2] Pursuant to Rule XX, of the Rules of the Supreme Court of Louisiana.

<u>Table of Contents</u>

Table of Contents...........................................................................................................................i

Table of Authorities......................................................................................................................ii

Introduction....................................................................................................................................1

Brief in Support of Application for Rehearing ........................................................................ 3

Argument........................................................................................................................................ 3

    I.  Mr. Dahlem Was Sentenced Under La R.S. 14:98(E)(4)(a), Which Required A Twelve Person Jury, Because State's Exhibit 11 Mandated Such A Sentence And The Trial Court Had To Consider That Exhibit When Ruling On Mr. Dahlem's Motion for New Trial and Motion for Post Verdict Judgment for Acquittal During Sentencing................ 3

    II. This Court Has Effectively Denied Due Process to Multiple Offenders By Holding That Multiple Offenders Have No Constitutional Right To A Twelve Person Jury Trial Under The Louisiana Constitution Because Their Multiple Offender Status Moots The Jury Composition Issue......................................................................................................... 4

        a.  The Constitutionally Infirm Guilty Verdict Rendered by Half of the Twelve Fact Finders Guaranteed To Mr. Dahlem by the Louisiana Constitution Cannot Support a Multiple Offender Bill of Information........................................... 9

    III. Judge Kuhn's Concurrence Contradicts This Court's Express Recognition that Sentencing Under La R.S. 14:98(E)(4)(a) Requires A Twelve Person Jury.....................10

Conclusion.....................................................................................................................................11

Certificate of Service...................................................................................................................13

Verification and Service ..............................................................................................................14

<u>Table of Authorities</u>

**Cases**

*Duncan v. State of Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968) .................................7

*Gomez v. U.S.*, 490 U.S. 858, 876 (1989) ............................................................................7

*Guidry v. Roberts*, 335 So.2d 438 (La. 1976) ............................................................................6

*State v. Brown*, 11-1044,pg. 3 (La. 3/13/12), 85 So.3d 52, 53.................................................7

*State v. Dahlem*, 13-0577, p. 1 (La.App. 1 Cir. 6/18/14), 148 So.3d 591, 600-01 (Kuhn, J., concurring) ....................................................................................................................2, 11

*State v. Dahlem*, 14-1555 (La. 3/27/15), 161 So.3d 646.................................................1, 5

*State v. Dahlem*, 14-1555, at dissent (La. 3/15/16) (Weimer, J., dissenting)..............................2, 4, 9, 10

*State v. Dahlem*, 14-1555, slip op. (La. 3/15/16). ............................................................... passim

*State v. Gibson*, 391 So. 2d 421, 427 (La. 1980)............................................................................7

*State v. Jones*, 05-0226, p.3 (La. 2/22/06), 922 So.2d 508, 511 ............................................7

*State v. Sherer*, 354 So.2d 1038, 1040 (La. 1978)............................................................10

**Constitutional Provisions and Statutes**

La. Const. art. 1, § 2 ............................................................................5

La. Const. art. 1, § 13 ............................................................................7

La. Const. art. 1, § 15 ............................................................................7

La. Const. art. 1, § 17 ............................................................................5

La.C.Cr.Pr. art. 61 ............................................................................8

La.C.Cr.Pr. art. 702............................................................................8

La.C.Cr.Pr. art. 782............................................................................5

U.S. Const. Amend. XIV............................................................................5

**Other Authorities**

Louisiana and ABA Rule of Professional Conduct 3.8............................................8

RICHARD P. BULLOCK, THE DECLARATION OF RIGHTS OF THE LOUISIANA CONSTITUTION OF 1974:
THE LOUISIANA SUPREME COURT AND CIVIL LIBERTIES, 51 La. L. Rev. 787 (1991).........................6

## Introduction

When this Honorable Court granted writs in this case, it was "with the specific instruction that the Court's review was to be limited to the jury composition issue."[1] Given this Court's instructions, no attempt was made to discuss the Multiple Offender Bill of Information or Mr. Dahlem's multiple offender status beyond merely stating the facts and procedural history of this case because, as noted in Appellant's merits brief, "the habitual offender proceedings are not at issue in this case."[2] The briefs were submitted solely on the jury composition issue, and oral argument was heard on that issue by this Court on August 31, 2015. On March 15, 2016, this Court rendered its decision against the Appellant Mr. Gerald W. Dahlem finding, in sum, "this to be an issue of an improper sentence which has been rendered moot by the defendant's multiple offender status."[3] The undersigned humbly submits this timely application for rehearing[4] on behalf of Mr. Dahlem because they feel it is their professional and ethical responsibility to request that this Honorable Court revisit its holding for three primary reasons.

First, Appellant submits that, though the transcript of his sentencing is admittedly unclear, because of predicate #3, established by State's Exhibit 11, the trial court was statutorily mandated to sentence him under La. R.S. 14:98(E)(4)(a). While the trial court did not explicitly state that Mr. Dahlem was sentenced under this subsection, or outline its consideration of the evidence, during sentencing it ruled on Mr. Dahlem's Motion for New Trial and his Motion for Post Verdict Judgment for Acquittal. By ruling on these two motions, the trial court was familiar with the evidence presented by the State because both motions challenged, *inter alia*, the evidence supporting the jury's guilty verdict. Thus, notwithstanding the lack of an explicit statement, because the trial court necessarily had to review the evidence to rule on Mr. Dahlem's motions, the trial court's sentencing of Mr. Dahlem was consistent with La. R.S. 14:98(E)(4)(a) because it was dictated, and mandated, by the evidence.

Second, Appellant respectfully submits that this Court has effectively denied multiple offenders due process under the law by holding that multiple offenders have no constitutional right

---

[1] *State v. Dahlem*, 14-1555, slip op.at 5 (La. 3/15/16) (citing *State v. Dahlem*, 14-1555 (La. 3/27/15), 161 So.3d 646).

[2] Appellant's Original Brief on the Merits, at 4 n. 6.

[3] *State v. Dahlem*, 14-1555, slip op. at 14 (La. 3/15/16).

[4] The mailing of notice of judgment occurred on March 16, 2016. This application for *rehearing* is mailed, via the United States Postal Service, on March 30, 2016, "the fourteenth calendar day after the mailing of the notice of judgment" pursuant to Rule IX Section 1 of the Rules of the Supreme Court of Louisiana.

to a twelve person jury trial under the Louisiana Constitution merely because their "multiple offender status" moots the jury composition issue.[5] As noted above, Mr. Dahlem's multiple offender status was not briefed on the merits in accordance with this Court's explicit instructions only to address the jury composition issue. Nonetheless, this Court found the jury composition issue to be moot when it turned to the Multiple Offender Bill of Information and the subsequent enhanced recidivist sentence to find that Mr. Dahlem was placed "in the same position he would have been in, even without consideration of the provisions set forth in La. R.S. 14:98(E)(4)(a) (which, under the Louisiana Constitution, require a twelve person jury)."[6]

For the reasons set forth below in greater detail, the Multiple Offender Bill of Information and the subsequent enhanced recidivist sentence should not stand in place of the absent six jurors. The Multiple Offender Bill of Information was based, in part, on the constitutionally infirm guilty verdict because Mr. Dahlem only had "half of the twelve factfinders guaranteed him by the Constitution."[7] By holding that the jury composition issue in this case is moot because of Mr. Dahlem's multiple offender status, this Court has denied him the essential protections of the due process clauses of the Louisiana Constitution and the Fourteenth Amendment to the United States Constitution.

Finally, this Court, though detailing the difficulty in this case in determining exactly which subsection of La. R.S. 14:98 Mr. Dahlem was sentenced under, inexplicitly recognized that La R.S. 14:98(E)(4)(a) "under the Louisiana Constitution, require[s] a twelve person jury."[8] However, notwithstanding this correct determination, in footnote 12, this Court agreed with Judge Kuhn's concurrence to the Court of Appeal, First Circuit's opinion in which he importantly stated that "Although, the State later presented evidence at trial in connection with predicate #3 which, if accepted, allowed for a sentence at hard labor under La. R .S. 14:98(E)(4)(a), sentencing of the defendant under this sentencing enhancement provision was only a possibility, but never a certainty."[9] This Court's opinion and Judge Kuhn's concurrence stand in stark contrast to one another. The underlying reasons for both opinions are functionally different. Thus, Appellant

---

[5] *State v. Dahlem*, 14-1555, slip op. at 14 (La. 3/15/16).

[6] *State v. Dahlem*, 14-1555, slip op. at 14 (La. 3/15/16).

[7] *State v. Dahlem*, 14-1555, at dissent, p. 5 (La. 3/15/16) (Weimer, J., dissenting).

[8] *State v. Dahlem*, 14-1555, slip op. at 14 (La. 3/15/16) (parentheses omitted)

[9] *State v. Dahlem*, 13-0577, p. 1 (La.App. 1 Cir. 6/18/14), 148 So.3d 591, 600-01 (Kuhn, J., concurring)

respectfully requests that this Court not agree with Judge Kuhn's concurrence, or, in the alternative, clarify its agreement with Judge Kuhn to avoid confusion in the future.

Therefore, for these reasons, explained in greater detail below, Appellant respectfully requests that this Court grant his application for rehearing.

### Brief In Support of Application for Rehearing

### Argument

I.     **Mr. Dahlem Was Sentenced Under La R.S. 14:98(E)(4)(a), Which Required A Twelve Person Jury, Because State's Exhibit 11 Mandated Such A Sentence And The Trial Court Had To Consider That Exhibit When Ruling On Mr. Dahlem's Motion for New Trial and Motion for Post Verdict Judgment for Acquittal During Sentencing**

Appellant respectfully submits that, even though the record is less than clear in this case, the trial court necessarily had to consider the documentary evidence when sentencing Mr. Dahlem after his trial, particularly State Exhibit 11 – which "established that after his DWI, third offense, Mr. Dahlem was sentenced to substance abuse treatment and home incarceration ...– "[10] because Mr. Dahlem filed two separate motions that challenged the evidence his verdict was based on.

This Court recognized that Mr. Dahlem's sentence at trial "was necessarily dictated by consideration of the documentary evidence establishing defendant was sentenced to home incarceration and substance abuse treatment following his third offense DWI."[11] However, this Court explained that "it is not clear from the record before us whether the trial court absolutely did, in fact, consider this evidence related to defendant's predicate third offense DWI..."[12]

Appellant respectfully submits that this Court overlooked the trial court's ruling on two motions, prior to sentencing Mr. Dahlem, which required the trial court to perform a review of the evidence. On June 12, 2012, after the constitutionally infirm jury rendered their guilty verdict, Mr. Dahlem filed a Motion for New Trial as well as a Motion for Post Verdict Judgment for Acquittal.[13] Those motions challenged, *inter alia*, that "[t]he verdict is contrary to the law and the evidence"[14] and that "[t]he verdict is not supported by sufficient evidence[.]"[15]

---

[10] *State v. Dahlem*, 14-1555, slip op. at 12 (La. 3/15/16).

[11] *Id.* at 12-13

[12] *Id.* at 13.

[13] Court of App. Record Vol. I, pp. 31-33. Because the Court of Appeal's record contains uniform numbering throughout Vol. I, II and III, this application for rehearing refers to the Court of Appeal's record as (R. at [page number]).

[14] R. at 31 (emphasis added).

[15] R. at 32 (emphasis added).

Subsequently, on September 24, 2012, at the beginning of Mr. Dahlem's sentencing hearing, Mr. Linder, the assistant indigent defender representing Mr. Dahlem, noted to the trial court that these two motions had not yet been ruled on and submitted them on the motions.[16] The trial court then stated:

> All right. In No. 115995, State of Louisiana v. Gerald Dahlem. Matters having been submitted, I am going to deny the motion for post judgment verdict of acquittal, and I am going to deny the motion for new trial. I sat in on the trial and heard the **evidence. And having heard no new evidence,** I don't believe that the matter has merit; so those are denied.[17]

The trial court explicitly recognized that it was well aware of the evidence in Mr. Dahlem's case, and the two motions filed by Mr. Dahlem, at the very least, required the trial court to be familiar with the evidence that the State submitted. Given these considerations by the trial court, Appellant submits that, even though the record is less than clear, taking into account these two motions sheds light on the trial courts consideration of the evidence.

Appellant further submits that notwithstanding the unclear record, La. R.S. 14:98(E)(4)(a) is non-discretionary in nature because, as this Court stated, once State's Exhibit 11 "established that after his DWI, third offense, Mr. Dahlem was sentenced to substance abuse treatment and home incarceration … La. R.S. 14:98(E)(4)(a), required an enhanced **mandatory** hard labor sentence [.]"[18] This Court recognized that "the provisions set forth in La. R.S. 14:98(E)(4)(a) … under the Louisiana Constitution, require a twelve person jury."[19]

Thus, Mr. Dahlem was, in fact, sentenced under La. R.S. 14:98(E)(4)(a). Because he was sentenced under this statute, Mr. Dahlem was entitled to a twelve person jury.

II.  **This Court Has Effectively Denied Due Process to Multiple Offenders By Holding That Multiple Offenders Have No Constitutional Right To A Twelve Person Jury Trial Under The Louisiana Constitution Merely Because Their Multiple Offender Status Moots The Jury Composition Issue**

This Court's opinion stands for the proposition that multiple offenders have no constitutional right to a twelve person jury in cases "in which the punishment is necessarily

---

[16] R. at 229.

[17] R. at 229 (emphasis added).

[18] *State v. Dahlem*, 14-1555, slip op. at 12 (La. 3/15/16) (emphasis in original)

[19] *Id.* at 14 (parenthesis omitted). Similarly, Justice Weimer succinctly explained this in his dissent that "once the district court was alerted by the state's evidence of the defendant's prior sentence of substance abuse reatment and home incarceration, just as much as the district court was stripped of any discretion to sentence the defendant to incarceration without hard labor, so, too, was the court stripped of the ability to proceed with a six person jury." *State v. Dahlem*, 14-1555, at dissent, p. 5 (La. 3/15/16). (Weimer, J., dissenting) (citing La. Const. art. I, § 17(A)).

confinement at hard labor" merely because of their multiple offender status.[20] By finding that the Multiple Offender Bill of Information and the subsequent enhanced recidivist sentence in this case moots the jury composition issue, this Court has effectively denied multiple offenders the essential protections of the due process clauses of the Louisiana Constitution and the Fourteenth Amendment to the United States Constitution.[21] Further, Mr. Dahlem's multiple offender status was not briefed because when this Court granted his writ application it was "with the specific instruction that the Court's review was to be limited to the jury composition issue."[22]

Article I, § 17(A) of the Louisiana Constitution provides, in pertinent part:

> **Jury Trial in Criminal Cases.** A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, all of whom must concur to render a verdict....[23]

As noted above, this Court expressly recognized that La. R.S. 14:98(E)(4)(a) requires a twelve person jury. "If the trial court sentenced the defendant under [La. R.S. 14:98(E)(4)(a)], then the trial court was in error, and the sentence imposed may have been inappropriate."[24] Nonetheless, this Court took the unprecedented step of finding that Mr. Dahlem's subsequent multiple offender status mooted the jury composition error. This, in effect, denies Mr. Dahlem, and indeed other multiple offenders, their right to a twelve person jury trial under the Louisiana Constitution, effectively resulting in a denial of due process.

The right to a speedy trial, recognized from the time of the Magna Carta is secured by the Constitutions of the United States and Louisiana, and by the Louisiana Code of Criminal Procedure. Unlike the United States Constitution, the Louisiana Constitution sets forth the right of the people in the document itself; in so doing, it illustrates the relationship of civil rights to the constitution. The distinction set forth is that within the Louisiana Constitution, particularly Article 1 with the Declaration of Rights', it is placed prominently as the first legal source of state law. In this Court's role of interpreting the Declaration of Rights it has historically maintained a tradition of

---

[20] La. Const. art. 1, § 17(A).

[21] U.S. Const. Amend. XIV, § 1; La. Const. Art. 1, § 2

[22] *State v. Dahlem*, 14–1555, slip op. at 5 (La. 3/15/16) (citing *State v. Dahlem*, 14–1555 (La. 3/27/15), 161 So.3d 646).

[23] *See also* La.C.Cr.Pr. art. 782.

[24] *State v. Dahlem*, 14–1555, slip op. at 13 (La. 3/15/16) (emphasis in original)

guaranteeing expanded rights and civil liberties to the citizens of Louisiana.[25] This Declaration of Rights is founded and can be traced to that of the United States Constitution's Bill of Rights. Many guarantees of the Louisiana Declaration of Rights, have historically been interpreted to extend greater protections to civil rights than its federal counterpart. Particularly, former conservative Louisiana Supreme Court Justice Albert Tate, Jr. noted in *Guidry v. Roberts*:

> [T]he individual rights guaranteed by our state constitution's declaration of individual rights (Article 1) represent more specific protections of the individual ... than those found in the federal constitution's bill of rights, and the broader protection of the individual.[26]

He further articulated these specific expanded rights:

> Rights secured to Louisiana citizens under the Constitution [. . .] are far broader and more definitely articulated than corresponding rights in the Federal Constitution. Examples of this are found in such guarantees as the secret ballot (Art. XI, § 2), the right to individual liberty (Art. 1 § 3), the right to property (Art. 1, § 4), the right to privacy (Art. 1 § 5), freedom of expression (Art. 1 § 7), and the right of assembly and petition (Art. 1 § 9). And the constitution commands the government to hold these rights inviolate. (Art. I, §.1).[27]

Thus in these rights articulated and protected in the Louisiana Constitution, Appellant asserts that the constitutionally guaranteed protection of a trial by the correct protected number of jurors is not one that can be mooted by a subsequent proceeding and action in the trial.

Thus, Appellant asserts that through this Court's rendering that the **constitutional** structural defect of the trial process where six empty seats rendered an infirmed verdict, necessarily is mooted by a subsequent habitual offender proceeding of Mr. Dahlem's multiple offender status, disrupts the jurisdictional review threshold of this court. Historically, both in Louisiana and throughout the nation, it has long been held that "among the basic fair rights that can never be treated as harmless is

---

[25] On September 14, 1990, Judge John Minor Wisdom noted this tradition and its necessary historical importance:

> Some of you may not know that in 1836 the Louisiana Supreme Court had before it substantially the same issue that the United States Supreme Court mishandled in *Dred Scott [v. Sanford*, 60 U.S. 393(1857)]. In *Marie Louise [Free Woman of Color v. Marot*, 9 La. 473 (1836)], the principal issue, over-simplifying it was whether a slave who had been taken to a free country, France, on returning to her home in Louisiana, reverted to her status as a slave. Was she only property or was she a free citizen? George Mathews, author of the opinion, was the Presiding Judge of our Supreme Court. . . His opinion starts out with a short and declarative sentence: "This is a suit for freedom." It concludes: "Being free for one moment in France, it was not in the power of her former owner to reduce her again to slavery."

RICHARD P. BULLOCK, THE DECLARATION OF RIGHTS OF THE LOUISIANA CONSTITUTION OF 1974: THE LOUISIANA SUPREME COURT AND CIVIL LIBERTIES, 51 La. L. Rev. 787 (1991) (citing 38 La. B.J. 238 (December 1990)).

[26] *Guidry v. Roberts*, 335 So.2d 438 (La. 1976).

[27] *Id.* at 452.

a defendant's right to an impartial adjudicator, be it judge or jury."[28] The fundamental right to a jury trial is one set forth since the creation of the United States and has continuously been upheld. Particularly:

> The right to trial by jury reflects, we have said a profound judgment about the way in which law should be enforced and justice administered. The deprivation of the right with consequences are necessarily unquantifiable and indeterminate unquestionably qualifies as **structural error**.[29]

This Court has consistently upheld the correct jurisdictional threshold in the appellate review process based on constitutional errors to determine the harmlessness to be restricted by "... not permit[ting] a court to **substitute** for the verdict its judgment of what the jury would or should have decided in the absence of the error."[30]

Appellant agrees that Louisiana cannot revert back to a process of "jurisdictional defect" wherein any constitutional violation is one in which the defendant of a case is able to obtain an immediate reverse and remand for further proceedings, but, rather, Appellant asserts that **in this instance**—allowing the six empty seats to silently cast a verdict of guilt, to mutilate the defendant's right of a presumption of innocence until proven guilty—is that of an "absolute constitutional outlier [such] that it once was in Louisiana."[31]

Further, through these same legal vessels—the Constitutions of the United States and Louisiana[32], and the Louisiana Code of Criminal Procedure— and encompassing the Professional

---

[28] *Gomez v. U.S.*, 490 U.S. 858, 876 (1989).

[29] *Duncan v. State of Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968) (internal quotations omitted).

[30] *State v. Gibson*, 391 So. 2d 421, 427 (La. 1980)(emphasis added)

[31] *State v. Brown*, 11-1044, pg. 3 (La. 3/13/12), 85 So.3d 52, 53(citing *State v. Jones*, 05-0226, p.3 (La. 2/22/06), 922 So.2d 508, 511).

[32] Louisiana Constitution of 1974 Art. 1, §2- **Due Process of Law**:

> No person shall be deprived of life, liberty, or property, except by due process of law.

Louisiana Constitution of 1974 Art. 1, § 15-**Initiation of Prosecution**:

> Prosecution of a felony shall be initiated by indictment or information. . .

Louisiana Constitution of 1974 Art. 1, § 13- **Rights of the Accused**:

> When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. In a criminal prosecution, **an accused shall be informed of the nature and cause of the accusation against him**. At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by

Rules of Professional Responsibility[33], the duty rests with the prosecutor of the trial to structure the framework of its proceedings. In doing so, the trial judge is not asked to "look beyond the face of the bill of information or the indictment, and the Title 14 penalty range" but rather is reliant upon the prosecutor –as the moving party to set the trial– to uphold their constitutional, professional and statutorily dictated duties.

Particularly, these duties include Louisiana Code of Criminal Procedure Art. 702, providing that "cases **shall be** set for trial by the court on motion of the state. . ." with Official Revision Comment 1 stating: "[t]his article preserves the basic right of the state to **control the prosecution…**" (emphasis added). Additionally, Louisiana Code of Criminal Procedure Art. 61 states: "Subject to the supervision of the attorney general, as provided in Article 62, the district attorney **has entire charge and control of every criminal prosecution** instituted or pending in his district, and determines whom, when, and how he shall prosecute." (emphasis added). The Official Revision Comment for this article specifically explains:

> "In view of the tremendous importance of the district attorney's function in Louisiana, and in view of the fact that **Louisiana's system of placing full responsibility and confidence in the district attorney has proved satisfactory,** the basic language of the source provision concerning the powers and duties of the district attorney has been retained." (emphasis added)

---

imprisonment. **The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents.**

[33] Louisiana and ABA Rule 3.8. **Special Responsibilities of a Prosecutor**

The prosecutor in a criminal case shall:

(d) make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows, or reasonably should know, either tends to negate the guilt of the accused or mitigates the offense, and, **in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor,** except when the prosecutor is relieved of this responsibility by a protective order of the tribunal … (emphasis added)

Official Comment:

Rule 3.8 Special Responsibilities Of A Prosecutor – **Comment**

[1] A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. **This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice,** that guilt is decided upon the basis of sufficient evidence, and that special precautions are taken to prevent and to rectify the conviction of innocent persons…. **Applicable law may require other measures by the prosecutor and knowing disregard of those obligations or a systematic abuse of prosecutorial discretion could constitute a violation of Rule 8.4.** (emphasis added)

To allow the process set forth currently to continue would be an infringement not only on the defendant's rights throughout the trial proceeding and the infirmed verdict that would result, but grants the district attorney the ability to run amuck, negating their mandatory duties, causing constitutional violations to be unreviewable on appeal merely because of a defendant's multiple offender status.

As succinctly stated by Justice Weimer in his dissent:

> Essentially, replacing the defendant's fourth DUI sentence, which was predicated upon a guilty verdict issued by half the number of required factfinders, with a multiple bill sentence, **is no different than replacing the presumption of innocence with an assumption of guilt**. Not only is this bad policy, but it ignores that La. Const. art. I, § 17(A) mandates a trial by twelve factfinders for absolute felonies.[34]

Appellant prays that this Court uphold the sanctity of the United States Constitution as to a person's fundamental right to a trial by jury and the Louisiana Constitution—wherein we further preserve a defendant's rights—and find that the structure of the trial is set forth from its inception as the correct and legitimate vehicle of justice.

> a. **The Constitutionally Infirm Guilty Verdict Rendered by Half of the Twelve Fact Finders Guaranteed To Mr. Dahlem by the Louisiana Constitution Cannot Support a Multiple Offender Bill of Information**

Moreover, and importantly, the Multiple Offender Bill of Information and the subsequent enhanced recidivist sentence should not moot the jury composition issue in this case. In order to avoid blending the trial with the habitual offender proceedings, a breakdown of these proceedings in oversimplified explanation is particularly helpful. The Multiple Offender Bill of Information and subsequent habitual offender proceedings form what is essentially the second part of a two-step process. The first step is the trial itself. Subsequently, if a guilty verdict is rendered it triggers step two, the potential habitual offender proceedings instituted via the Multiple Offender Bill of Information that the prosecutor may move forward with.

Indeed, as this Court has previously concisely explained:

> The habitual offender proceeding is not applicable until *after a person has been convicted of a felony* within this state. La.R.S. 15:529.1(A) and (D). Thereafter, the filing of an information accusing the convicted felon of a previous conviction(s) is discretionary with the district attorney. La.R.S. 15:529.1(D). Hence, *the habitual offender proceeding is a separate proceeding applicable only after conviction* and then at the discretion of the district attorney. It forms no part of the punishment of the criminal case involving

---

[34] *State v. Dahlem*, 14-1555, at dissent, p. 5 (La. 3/15/16) (Weimer, J., dissenting) (emphasis added).

-9-

defendant's guilt or innocence; therefore, it has no bearing on the determination of the number of persons comprising the jury for the trial of the case.[35]

If the habitual offender proceeding has no bearing on the numerical composition of the jury, then it also should not moot that issue. In this case, importantly, the State's Multiple Offender Bill of Information was **predicated on** Mr. Dahlem's DWI, fourth offence, guilty verdict rendered by a constitutionally infirm jury:

> The District Attorney for the 22nd Judicial District Court avers that [Gerald W. Dahlem] was charged in this case number with the crime of violating La. R.S. 14:98 relative to DRIVING WHILE INTOXICATED FOURTH OFFENSE and that on the 2nd day of May, 2012, the said accused was convicted.[36]

Mr. Dahlem's DWI, fourth offence, guilty verdict **triggered** the Multiple Offender Bill of Information, and the subsequent habitual offender proceedings. Appellant respectfully disagrees with this Court's determination that the habitual offender proceedings, which resulted in a new sentence that displaced his original sentence, "plac[ed] the defendant in the same position he would have been in, even without consideration of the provisions set forth in La. R.S. 14:98(E)(4)(a) (which, under the Louisiana Constitution, require a twelve person jury)."[37] The habitual offender sentence could not have placed Mr. Dahlem in the same position he would have been in, because "six of the constitutionally mandated triers of fact did not participate in [his] trial."[38]

This Court should grant rehearing because the jury composition issue in this case should not have been rendered moot by Mr. Dahlem's multiple offender status. The trial and habitual offender proceedings are separate and distinct for the purposes of determining the correct numerical composition of the jury.

III.   **Judge Kuhn's Concurrence Contradicts This Court's Express Recognition that Sentencing Under La R.S. 14:98(E)(4)(a) Requires A Twelve Person Jury**

In footnote 12, this Court agreed with Judge Kuhn's Concurrence which stated:

> ….[T]rial of the defendant by a six-person jury was dictated by law in this case. The district attorney, in the exercise of his discretion, elected to charge the defendant pursuant to La. R.S. 14:98 with a fourth-offense DWI. Under La. R.S. 14:98(E)(1)(a), the punishment for fourth-offense DWI is imprisonment with or without hard labor for not less than ten years and not more than thirty years and a $5,000.00 fine. In accordance with La. Const. art. I, sec. 17(A), such a case "shall be tried before a jury or six persons, all of whom must concur to render a verdict." See also La.C.Cr.P. art. 782(A).

---

[35] *State v. Sherer*, 354 So.2d 1038, 1040 (La. 1978).

[36] R. at 34.

[37] *State v. Dahlem*, 14-1555, slip op. at 14 (La. 3/15/16)

[38] *State v. Dahlem*, 14-1555, at dissent, p. 5 (La. 3/15/16). (Weimer, J., dissenting)

In reliance on these constitutional and statutory provisions, the State, the defense, and the trial court worked together to select a six-person jury to try this case. Although, the State later presented evidence at trial in connection with predicate # 3 which, if accepted, allowed for a sentence at hard labor under La. R.S. 14:98(E)(4)(a), sentencing of the defendant under this sentencing enhancement provision was only a possibility, but never a certainty. Thus, this case was required to be tried in a six-person jury forum since there was only a possibility that the defendant could receive a sentence at hard labor. In Louisiana, a twelve-person jury is required only when the potential sentence is necessarily confinement at hard labor. La. Const. art. I, sec. 17(A); La.C.Cr.P. art. 782(A). Thus, the defendant's trial was conducted in accordance with the jury composition rules applicable to La. R.S. 14:98(E)(1)(a), wherein the actual conduct prescribed is a fourth-offense DWI, and the sentence to be imposed may be with or without hard labor.[39]

Appellant respectfully submits that this Court should not agree with Judge Kuhn's concurrence in that it is untenable that sentencing Mr. Dahlem under La. R. S. 14:98(E)(4)(a) was not merely a "possibility," because State's Exhibit 11 was required in order to find Mr. Dahlem guilty of DWI, fourth offence. Nonetheless, Judge Kuhn's concurrence stands in stark contrast to this Court's recognition that La. R.S. 14:98(E)(4)(a) requires a twelve person jury. Particularly, Judge Kuhn's concurrence states that Mr. Dahlem's was only entitled to a six-person jury. Whereas this Court explained that if the trial court considered State's Exhibit 11, which established that La. R.S. 14:98(E)(4)(a) definitively applied to Mr. Dahlem, the trial court was in error, and recognized a right to a twelve person jury.[40]

Judge Kuhn's concurrence differs entirely from this Court's analysis. As such, this Court should not agree with Judge Kuhn's concurrence. However, in the alternative, Appellant requests that this Court clarify its agreement with Judge Kuhn's concurrence because this agreement between opinions that essentially contradict each other will lead to much confusion in the future.

<u>Conclusion</u>

Gerald W. Dahlem and the undersigned counsel respectfully ask this Court grant rehearing in this case because multiple offenders should not be denied their right to a twelve person jury trial under the Louisiana Constitution merely because of their multiple offender status. This Court's ruling denying this Constitutional right to multiple offenders is, to the best of the undersigned's knowledge, the first of its kind that denies to multiple offenders the basic tenants of due process.

Further, notwithstanding the unclear record in this case, the trial court must have determined the evidence that demonstrated that statutorily mandated that Mr. Dahlem be sentenced

---

[39] *State v. Dahlem*, 13–0577, p. 1 (La.App. 1 Cir. 6/18/14), 148 So.3d 591, 600–01 (Kuhn, J., concurring).
[40] *State v. Dahlem*, 14-1555, slip op. at 13-14 (La. 3/15/16).

under La. R.S. 14:98(E)(4)(a). Finally, this Court should not agree with Judge Kuhn's concurrence insomuch that his concurrence is contradictory in nature to this Court's express recognition that La. R.S. 14:98(E)(4)(a) requires a trial by a twelve person jury under the Louisiana Constitution.

Therefore, for the foregoing reasons, Appellant respectfully requests that this Court grant his application for rehearing.

Respectfully submitted,

**VIRGINIA B. LISTACH**, BAR NO. 19011
*SUPERVISING ATTORNEY*
**SOUTHERN UNIVERSITY LEGAL CLINIC**
P.O. BOX 9492
BATON ROUGE, LA 70813
PHONE: 225.771.3333
FAX:   225.771.3383

**JOHN R. BLANCHARD**
*RULE XX CERTIFIED STUDENT ATTORNEY*
**SOUTHERN UNIVERSITY LEGAL CLINIC**
P.O. BOX 9492
BATON ROUGE, LA 70813
PHONE: 225.771.3333
FAX:   225.771.3383

**CHRISTINE E. WELLS**
*RULE XX CERTIFIED STUDENT ATTORNEY*
**SOUTHERN UNIVERSITY LEGAL CLINIC**
P.O. BOX 9492
BATON ROUGE, LA 70813
PHONE: 225.771.3333
FAX:   225.771.3383

*Counsel for Petitioner/Appellant Gerald W. Dahlem*

-12-

## CERTIFICATE OF SERVICE

I hereby certify that I have forwarded a copy of the foregoing to opposing counsel, as listed

below, by hand and/or United States Mail, First Class, this 30th day of March, 2016:

> **Kathryn Landry**
> *Special Appeals Counsel*
> IEYOUB & LANDRY, L.L.C.
> P.O. Box 82659
> Baton Rouge, Louisiana 70884
> Telephone No. (225) 766-0023
> Facsimile No. (225) 766-7341
>
> **Gerald Dahlem #384259**
> Avoyelles Correctional Center
> Cajun 3-D2
> 1630 Prison Road
> Cottonport, LA 71327

> **VIRGINIA B. LISTACH**, BAR NO. 19011
> *SUPERVISING ATTORNEY*
> **SOUTHERN UNIVERSITY LEGAL CLINIC**
> P.O. BOX 9492
> BATON ROUGE, LA 70813
> PHONE: 225.771.3333
> FAX:   225.771.3383

-13-

## VERIFICATION AND SERVICE

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

**BEFORE ME**, the undersigned authority, personally came and appeared Virginia Listach, who being duly sworn deposed that:

All of the allegations in the foregoing Original Brief on the Merits submitted by Petitioner/Appellant, Gerald W. Dahlem, is true and correct to the best of her information, knowledge and belief; and,

A copy of the above and foregoing brief has this date been served upon counsel for Respondent/Appellee and the First Circuit Court of Appeal by depositing same in the U.S. Mail, postage pre-paid, properly addressed to the following:

> **Kathryn Landry**
> *Special Appeals Counsel*
> IEYOUB & LANDRY, L.L.C.
> P.O. Box 82659
> Baton Rouge, Louisiana 70884
> Telephone No. (225) 766-0023
> Facsimile No. (225) 766-7341
>
> **Gerald Dahlem #384259**
> Avoyelles Correctional Center
> Cajun 3-D2
> 1630 Prison Road
> Cottonport, LA 71327

Baton Rouge, Louisiana, this <u>30th day</u> of March, 2016.

Virginia B. Listach (#19011)

SWORN TO AND SUBSCRIBED before me at Baton Rouge, Louisiana this 30th day of March 2016

NOTARY PUBLIC/No.  20576  LSBA

-14-

IN THE

SUPREME COURT OF LOUISIANA

No. 2014-KO-1555

---

STATE OF LOUISIANA,

*Respondent/Appellee*

v.

GERALD W. DAHLEM

*Petitioner/Appellant*

---

SUPERVISORY WRITS TO THE FIRST CIRCUIT COURT OF APPEAL
FOR THE STATE OF LOUISIANA
NO. 2013-KA-0577

FROM THE 22ND JUDICIAL DISTRICT COURT
FOR THE PARISH OF WASHINGTON
HONORABLE WILLIAM J. CRAIN, PRESIDING
NO. 12-CR8-115995, SECTION D

---

**ORIGINAL BRIEF ON THE MERITS
ON BEHALF OF
GERALD W. DAHLEM
PETITIONER/APPELLANT**

---

**Virginia B. Listach**
Bar No. 19011
*Supervising Attorney[1]*

**Charletta E. Anderson
John R. Blanchard
Christine E. Wells**
*Rule XX Certified Student Attorneys[2]*

**Southern University Legal Clinic**
P.O. Box 9294
Baton Rouge, LA 70813
Phone: 225.771.3333
Fax: 225.771.3383

**Counsel for Petitioner-Appellant Gerald W. Dahlem**

---

[1] Lead counsel, designated as required pursuant to Rule II, § of the Rules of the Supreme Court of Louisiana.

[2] Pursuant to Rule XX, of the Rules of the Supreme Court of Louisiana.

# TABLE OF AUTHORITIES

## CASES

*Arizona v. Fulminante,*
    499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2D 302 (1991) ..............................16, 17, 21, 25

*State v. Bazile,*
    2012-2243 (La. 5/7/13, 6); 144 So.3d 719, 726, reh'g denied (Aug. 30, 2013).....13, 14, 15

*Boykin v. Alabama,*
    395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)........................................................13

*Brown v. United States,*
    411 U.S. 223, 231-232, 93 S.Ct. 1565, 1570-1571, 36 L.Ed.2d 208 (1973) ...................15

*Carella v. California,*
    491 U.S. 263, 266, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (1989) ................................15

*Chambers v. Maroney,*
    399 U.S. 42, 52-53, 90 S.Ct. 1975, 1981-1982, 26 L.Ed.2d 419 (1970) ..........................15

*Chapman v. California,*
    386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)..........................................17, 21, 23

*Clemons v. Mississippi,*
    494 U.S. 738, 752-754, 110 S.Ct. 1441, 1450-1451, 108 L.Ed.2d 725 (1990) ...............15

*Coleman v. Alabama,*
    399 U.S. 1, 10-11, 90 S.Ct. 1999, 2003-2004, 26 L.Ed.2d 387 (1970) ............................15

*Commonwealth v. Simmons,*
    394 S.W.3d 903, 911 (Ky. 2013) ....................................................................................14

*Crane v. Kentucky,*
    *Crane v. Kentucky,* 476 U.S. 683, 691, 106 S.Ct. 2142, 2147, 90 L.Ed.2d 636 (1986) ...15

*Delaware v. Van Arsdall,*
    475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)....................................................15

*Duncan v. State of Louisiana,*
    391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2D 491 (1968)..............................................18, 19

*Gomez v. United States,*
    490 U.S. 858, 109 S. Ct. 2237, 104 L. Ed. 2D 923 (1989)................................................20

*Hooper v. Evans,*
    456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367(1982) ....................................................15

*Johnson v. United States,*
    520 U.S. 461, 468-69, 117 S.Ct. 1544, 1549-50, 137 L.Ed.2d 718 (1997) ......................21

*Kentucky v. Whorton,*
    441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 96 (1983) ........................................................15

*Massiah v. United States,*
    377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964........................................................15

*Milton v. Wainwright,*
    *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) ......................15

*Moore v. Illinois,*
    434 U.S. 220, 232, 98 S.Ct. 458, 466, 54 L.Ed.2d 424 (1977)..........................................15

*Neder v. United States,*
    527 U.S. 1, 7-8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999)........................................21

*People v. Bracey,*
    213 Ill. 2d 265, 821 N.E.2d 253, 256, 290 Ill. Dec. 202 (Ill. 2004) ..................................14

*People v. Traugott*,
    184 Cal. App. 4th 492, 109 Cal. Rptr.3d 66, 72 (Cal. App. 2010) .................................... 14

*Pope v. Illinois*,
    481 U.S. 497, 501-504, 107 S.Ct. 1918, 1921-1923, 95 L.Ed.2d 439 (1987) .................. 15

*Rose v. Clark*,
    478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) .................................................... 15

*Rushen v. Spain*,
    464 U.S. 114, 117-111 S.Ct. 1246, 113 L.Ed.2d 302, 59 USLW 4235 118, and n. 2, 104
    S.Ct. 453, 454-455, and n. 2, 78 L.Ed.2d 267 (1983) ...................................................... 15

*Satterwhite v. Texas*,
    486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) ................................................. 15

*State v. Brown*,
    2011-1044 (La. 3/13/12); 85 So.3d 52 ............................................................ 5, 12, 17, 24

*State v. Carlos*,
    98-1366 (La. 7/7/99); 738 So.2d 556, 558-59 ................................................................... 8

*State v. Comeaux*,
    408 So.2d 1099, 1103 (La.1981) ...................................................................................... 8

*State v. Dahlem.*,
    2013-0577 (La.App. 1 Cir. 6/18/14); 148 So.3d 591, *reh'g denied* (July 22, 2014), *writ
    granted*, 2014-1555 (La. 3/27/15); 161 So.3d 646 .................................................. *passim*

*State v. Easter*,
    2014-1630 (La.App. 1 Cir. 4/24/15) ................................................................................ 9

*State v. Gibson*,
    391 So.2d 421 (La.1980) ...................................................................................... 17, 20

*State v. Hegg*,
    410 N.W.2d 152, 155 (N.D. 1987) ................................................................................ 14

*State v. Hewitt*,
    128 N.H. 557, 517 A.2d 820, 823 (N.H. 1986) .............................................................. 14

*State v. Hicks*,
    41,906 (La.App. 2 Cir. 12/20/06); 945 So.2d 959 .......................................................... 13

*State v. Hood*,
    242 Kan. 115, 744 P.2d 816 (Kan. 1987) ...................................................................... 14

*State v. Johnson*,
    94-1379 (La. 11/27/95); 664 So.2d 94 ................................................................ 16, 17, 25

*State v. Johnson*,
    2010-196 (La.App. 3 Cir. 11/24/10); 52 So.3d 273 ........................................................ 18

*State v. Jones*,
    2005-0226 (La. 2/22/06); 922 So.2d 508 ................................................................ *passim*

*State v. Langley*,
    2004-269 (La.App. 3 Cir. 12/29/04); 896 So.2d 200 *disapproved of by State v. Langley*,
    2006-1041 (La. 5/22/07); 958 So.2d 1160 ............................................................ 19, 20, 21

*State v. Langley*,
    2006-1041 (La. 5/22/07); 958 So.2d 1160 ............................................................ 19, 20, 21

*State v. Lewis*,

2012-1021 (La. 3/19/13); 112 So.3d 796, *reh'g denied* (May 3, 2013) ......................18, 23

State v. Kibodeaux,
    524 So.2d 891 (1988) ..................................................................................................16

State v. McCarroll,
    337 So.2d 475 (La.1976) ...........................................................................................13

State v. McGee,
    447 S.W.2d 270, 273 (Mo. 1969) .......................................................................13, 14

State v. Machia,
    155 Vt. 192, 583 A.2d 556 (Vt. 1990) ......................................................................14

State v. Magee,
    2012-1025 (La.App. 4 Cir. 5/22/13); 116 So.3d 948, *writ denied*, 2013-1396 (La.
    12/6/13); 129 So.3d 530 .............................................................................................12

State v. Mandigo,
    29913 (La.App.2d Cir.10/31/97), 702 So.2d 351 .....................................................13

State v. Muller,
    351 So.2d 143 (La.1977) ......................................................................................13, 14

State v. Nedds,
    364 So.2d 588 (La.1978) ...........................................................................................10

State v. Patterson,
    2012-2042 (La. 3/19/13); 112 So.3d 806, *reh'g denied* (May 3, 2013) ......................18, 22

State v. Pierre,
    2002-2665 (La. 3/28/03); 842 So.2d 321 ..............................................................14, 15

State v. Ruiz,
    2006-1755 p. 6 (La.4/11/07), 955 So.2d. 81 .............................................................21

State v. Simpson,
    29 Kan. App. 2d 862, 32 P.3d 1226 (Kan. App. 2001) ............................................14

State v. Stegall,
    124 Wn.2d 719, 881 P.2d 979 (Wash. 1994) ...........................................................14

State v. Wilson,
    437 So.2d 272 (La.1983) ...........................................................................................13

State v. Wolfe,
    98-0345, pp. 6-7 (La.App. 4th Cir.4/21/99), 738 So.2d 1093, 1097 .......................14

Sullivan v. Louisiana,
    508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) ................................*passim*

United States v. Hasting,
    , 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) ............................................30

United States v. Stevens,
    223 F.3d 239, 244 (3rd Cir.2000) .............................................................................21

Walker v. State,
    578 P.2d 1388, 1389 (Alaska 1978) .........................................................................14

Williams v. Florida,
    399 U.S. 78, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970) ..............................................22

**CONSTITUTIONAL PROVISIONS, STATUTES, AND REGULATIONS**

La. Const. art. I, § 17 .................................................................................................. *passim*

La. Code Crim. Proc. art. 780 ........................................................................... 13, 14, 15

La. Code Crim. Proc. art. 782 ......................................................................... 6, 13, 14

La. Code Crim. Proc. art. 921 .................................................................................... 16

2014 La. Acts, No. 385§ 1 ........................................................................................... 7

Previous La R.S. 14:98(E)(1)(a) .................................................................... *passim*

Previous La R.S. 14:98(E)(4)(a) .................................................................... *passim*

Previous La. R.S. 14:98(D) ................................................................................. 6, 7

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

TABLE OF CONTENTS ........................................................................................................... 1

STATEMENT OF THE CASE .................................................................................................. 2

STATEMENT OF JURISDICTION ......................................................................................... 6

ASSIGNMENTS OF ERROR ................................................................................................... 6

ARGUMENT .............................................................................................................................. 6

I.    The 22nd Judicial District Court erred in trying Mr. Dahlem before a six member jury and acted in violation to his state constitutionally mandated right to a jury of twelve persons ...................... 6

      A.    Mr. Dahlem's participation in substance abuse treatment and home incarceration pursuant to Predicate No. 3 exposed him to a case in which the punishment is necessarily confinement at hard labor ................................................................................................ 7

      B.    The Circuits are split as to whether the fourth offense DWI subsections are enhancement provisions or mandate that punishment is necessarily at hard labor. .................................... 9

II.   The appellate court erred in finding that Mr. Dahlem waived his constitutionally protected right to a twelve person jury ............................................................................................................. 11

      A.    The First Circuit erred in presuming that Mr. Dahlem waived his right to a twelve person jury by silently participating in the voir dire process ..................................................... 11

      B.    Failure to conduct a trial before a twelve person jury as required by the Louisiana Constitution Article I, Section 17, constitutes a structural defect in the procedural mechanic of a trial ................................................................................................ 15

III.  Under the Louisiana Constitution Article I, Section 17, where every person is mandated with the right to a twelve person jury trial, does the error of denying this constitutional right rise to the level of structural error or a trial error, when the architecture of the entire trial proceedings violates this right with a six person jury trial. ............................................................................ 17

      A.    Denial of Mr. Dahlem's constitutionally protected right to a twelve person jury trial is a structural error that tainted the entirety of the trial proceedings ans as such the conviction should be automatically reverse. ................................................................................ 19

      B.    However, assuming *arguendo*, this Court finds that the error at trial does not conform to that of structural error, it should be quantified as a trial error that does not satisfy harmless analysis and should therefore be vacated and remanded for further proceedings. ................................................................................................ 23

CONCLUSION ........................................................................................................................ 26

1

## STATEMENT OF THE CASE

This is a case about the proper number of jurors for a fourth-offence DWI prosecution when a defendant previously participated in a treatment program and was subject to home incarceration.

At trial on May 2, 2012, Louisiana State Police Trooper Steven Dan Manning testified that on November 10, 2011, at approximately 4:00 a.m., he was patrolling on Marshall Richardson Road in Bogalusa, Louisiana, in the parish of St. Tammany. (Court of App. Vol. II, p. 161).[3] Trooper Manning testified that he observed a pickup truck driven by Mr. Gerald W. Dahlem cross the centerline to the left, veer back to the right, and then run off the road onto a grassy shoulder. (R. at 161). Trooper Manning testified that he then initiated a traffic stop. (R. at 162).

Trooper Manning testified that Mr. Dahlem did not have a valid driver's license. (R. 165). Trooper Manning testified that he observed Mr. Dahlem swaying; he had an oder of alcohol on his breath; his speech was slurred; and his eyes were glassy and bloodshot. (R. at 166). Trooper Manning testified that Mr. Dahlem admitted to him that he "had several beers." Id.

Trooper Manning testified that Mr. Dahlem performed poorly on the field sobriety tests. (R. at 184-86). Trooper Manning testified that he placed Mr. Dahlem under arrest for DWI and transported him to Bogalusa Police Department to administer an intoxilyzer test. (R. at 167). Trooper Manning testified that Mr. Dahlem agreed to submit to an intoxilyzer test and that Mr. Dahlem provided an appropriate sample for testing at 4:05 am. (R. at 171; 179). Trooper Manning testified that the intoxilyzer provided a result of .180 blood alcohol content. (R. at 179).

On January 9, 2012, Mr. Dahlem was charged by Bill of Information with one count of fourth-offence driving while intoxicated (DWI) (Count I), a violation of La. R.S. 14:98; one count of improper lane usage (Count II), a violation of La. R.S. 32:79; one count of license plate light required (Count III), a violation of La. R.S. 32:304(C); and one count of driving under suspension (Count IV), a violation of La. R.S. 32:415(A). (R. at 37-38). On January 17, 2014, Mr. Dahlem was arraigned. (R. at 55; 149). Mr. Dahlem pled not guilty on all counts. (R. at 149).

In support of Count I, the State included in the Bill of Information as Predicate No. 1 Mr. Dahlem's May 15, 2002, conviction for first-offense DWI under Parish of Jefferson docket number F1360-18. (R. at 37). The State included as Predicate No. 2 Mr. Dahlem's February 19, 2014, conviction for second-offense DWI under Parish of Washington docket number 03-CR-89114. Id. The State

---

[3] Because the Court of Appeal's record contains uniform numbering throughout Vol. I and II, this brief refers to the Court of Appeal's record as (R. at [page number]).

2

included as Predicate No. 3 Mr. Dahlem's conviction of third-offense DWI under Parish of Washington docket number 10-CR1-108537. *Id.*

On January 18, 2012, a Joint Stipulation was filed where the State and Mr. Dahlem stipulated that the "Assistant District Attorney has provided a copy of the entire file in this matter to the defendant." (R. at 13). The State agreed to "provide to the defense any additional file material subsequently obtained." *Id.* Further, the Join Stipulation provided that Mr. Dahlem stipulated that "the receipt of this file serves as notice of the State's intention to introduce all evidence … included therein." *Id.* The State agreed "to produce all exhibits and evidence for inspection to the defendant upon reasonable notice and request." *Id.*[4]

On April 30, 2012, voir dire was conducted. (R. at 53). The Honorable Judge William J. Crain presided over the voir dire process, as well as the trial. (R. at 52; 140). James E. Talley represented Mr. Dahlem and Lewis V. Murray III represented the State. (R. at 52). Judge Crain explained that the voir dire process that day was "for us to select *six* people who can fairly and impartially hear the evidence in this case and decide the case." (R. at 56) (emphasis added). Mr. Dahlem was present for the voir dire process. (R. at 54). However, the voir dire transcript evidences that no questions were asked of Mr. Dahlem by Judge Crain, and Mr. Dahlem did not speak during the entirety of the voir dire process. (R. at 54-138).

On May 1, 2012, just prior to the start of Mr. Dahlem's trial, the State severed Bill of Information Counts II-IV and proceeded to trial only under Count I, fourth offence DWI. (R. 144). At trial the state introduced evidence in connection with Predicates No. 1, 2, and 3. (R. at 142). In connection with Predicate No. 1, the State offered and introduced into evidence State Exhibit 9, the certified record F1360-18 from Jefferson Parish. (R. at 195-96). In connection with Predicate No. 2, the State offered and introduced into evidence State Exhibit 10, the certified record 03-CR-89114 from Parish of Washington. (R. at 197). In connection with Predicate No. 3, the State offered and introduced into evidence State Exhibit 11, the certified record 10-CR1-108537 from Parish of Washington. (R. at 192-94). All evidence was accepted by the court. (R. at 192-97).

---

[4] Not all exhibits appear to have been provided at the time of the Joint Stipulation. Mr. Dahlem's attorney, James E. Talley, stated at trial in regards to State Exhibit 1, CD of Traffic Stop, that it "was provided prior to trial. It was not in the original open file discovery, but it was provided prior to trial. We were aware of its existence, and we've had an opportunity to view it." (R. at 163-64). Mr. Talley made no similar statement with regards to any other exhibit. Thus, it is reasonable to infer that all State Exhibits were provided either at the time of the Joint Stipulation or some time prior to trial with enough time to view them.

State Exhibit 11 included "a bill of information, commitment, minutes of guilty plea and sentencing, and transcript of guilty plea and sentencing." *See State v. Dahlem*, 2013-0577 (La.App. 1 Cir. 6/18/14, 6); 148 So.3d 591, 596, *reh'g denied* (July 22, 2014), *writ granted*, 2014-1555 (La. 3/27/15); 161 So.3d 646. As summarized by the First Circuit:

> The documents indicated [Mr. Dahlem] pled guilty to third-offense DWI and was sentenced to three years at hard labor, with all but eighty days of the sentence suspended, and three years of supervised probation. Special conditions of probation included that [Mr. Dahlem] submit to an evaluation by the Department of Health and Hospitals, Office of Addictive Disorders, to determine the nature and extent of his substance abuse, and that he participate in any treatment plan recommended by that office, including inpatient treatment for at least four weeks. Additionally, the court ordered [Mr. Dahlem] would be subject to home incarceration during the entire period of probation.

*Id.*

After a fifteen minute deliberation, Mr. Dahlem was found guilty by the six member jury. (R. at 30; 40; 225).

On September 24, 2012, Mr. Dahlem was sentenced by Judge Crain. (R. at 228). Judge Crain sentenced Mr. Dahlem to 25 years at hard labor with three years served without benefit of parole, probation, or suspension of sentence. (R. at 233-34). Mr. Dahlem was sentenced pursuant to La. R.S. 14:98(E)(4)(a).[5] *Dahlem*, 2013-0577, p. 3; 148 So.3d at 594. Subsequently, Mr. Dahlem moved for a reconsideration of his sentence. (R. at 42). Judge Crain denied the motion. *Id.*

Following Mr. Dahlem's initial sentencing, the State introduced a Multiple Offender Bill of Information alleging that he was a third felony offender. (R. at 48). On September 28, 2012, Mr. Dahlem plead true to the allegations. (R. at 243-44). Thereafter, Judge Crain vacated his previous sentence. (R. at 50). Judge Crain then sentenced Mr. Dahlem to serve 25 years imprisonment at hard labor in the custody of the Department of Corrections without benefit of probation or suspension of sentence pursuant to La. R.S. 15:529.1 (Habitual Offender Law).[6] *Id.*

Before the First Circuit, Mr. Dahlem raised five assignments of error.[7] However, this Court only granted writ on Mr. Dahlem's assignment of error concerning the composition of the jury. Thus, Mr. Dahlem's other four assignments of error will not be discussed.

---

[5] While the transcript of the sentencing hearing does not clearly stipulate that Mr. Dahlem was sentenced under La. R.S. 14:98(E)(4)(a), the First Circuit clarified this apparent discrepancy. Furthermore, in their opposition to writ application, the State does not argue that he was sentenced under another provision of R.S. 14:98. *See* Opp. to Writ. p. 1-4.

[6] Appellant notes that the habitual offender proceedings are not at issue in this case.

Mr. Dahlem contended that he was denied a fair trial and due process of law by being tried by a six-person petit jury. *Dahlem*, 2013-0577, p. 3; 161 So.3d at 594. Mr. Dahlem argued that "he was improperly tried before a six-member petit jury for a felony [necessarily] requiring hard labor." *Dahlem*, 2013-0577, p. 6; 148 So.3d at 596. The First Circuit applied *State v. Brown*, 2011-1044 (La.3/13/12), 85 So.3d 52, 53 (per curiam), and found that Mr. Dahlem waived his wrong jury form error because he "acquiesced in the error of trying a twelve-person jury offense in a six-person jury forum." *Dahlem*, 2013-0577, p. 8; 148 So.3d at 597. The First Circuit further stated that Mr. Dahlem "raised no objection at voir dire … he participated in the selection of the six-person jury…. [and] he failed to file a motion in arrest of judgment." *Dahlem*, 2013-0577, p. 8; 148 So.3d at 597. For those reasons, the First Circuit held that Mr. Dahlem waived his assignment of error.

Following the First Circuit's ruling, Mr. Dahlem petitioned for a rehearing and was denied on July 22, 2014. Thereafter, Mr. Dahlem filed a timely application for writ in this Court, which this Court granted on March 27, 2015. *State v. Dahlem*, 2014-1555 (La. 3/27/15); 161 So.3d 646.

---

[7] Mr. Dahlem asserted that: 1) The trial court imposed an unconstitutionally excessive sentence. 2) He was denied a fair trial and due process of law by being tried by a six-person petit jury. 3) He was denied a fair trial and due process of law because the predicate DWI evidence was insufficient due to an invalid first-offense DWI predicate. 4) He was denied a fair trial and due process of law due to prosecutorial misconduct. 5) He was denied a fair trial and due process of law because an invalid predicate, based on a juvenile adjudication for theft, was used to obtain the habitual offender adjudication. *Dahlem*, 2013-0577, pp. 3-4; 148 So.3d at 594-95.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to Article 5, Section V of the Louisiana Constitution of 1974.

## ASSIGNMENTS OF ERROR

I.  **Whether Mr. Dahlem was unconstitutionally tried before a jury of six members rather than twelve when he was punished pursuant to Louisiana Revised Statute 14:98(E)(4)(a) which punishment is necessarily at hard labor and Article I, section 17 of the Louisiana Constitution requires that a case necessarily punishable at hard labor be tried before a jury of twelve; and, if so, whether Mr. Dahlem waived his constitutional right by silently participating in the voir dire processes; and, whether Mr. Dahlem's error exhibited at the trial level constitutions structural, trial subject to harmless error analysis.**

## ARGUMENT

I.  **THE 22ND JUDICIAL DISTRICT COURT ERRED IN TRYING MR. DAHLEM BEFORE A SIX MEMBER JURY AND WAS IN VIOLATION OF HIS STATE CONSTITUTIONALLY MANDATED RIGHT TO A JURY OF TWELVE PERSONS**

Mr. Dahlem was improperly tried before a six-member petit jury for a case necessarily punishable by hard labor. The Louisiana Constitution specifically stipulates:

> A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor shall be tried before a jury of six persons, all of whom must concur to render a verdict.

La. Const. art. I, § 17(A); *See also* La. Code Crim. P. art. 782(A).

Here, after a six member jury found Mr. Dahlem guilty, Mr. Dahlem was sentenced to twenty-five years at hard labor, with three years without benefit of parole, probation, or suspension of sentence, pursuant to La. R.S. 14:98(E)(4)(a). *Dahlem*, 2013-0577, p. 3; 148 So.3d at 594. At the time of Mr. Dahlem's trial, Louisiana Revised Statutes 14:98(E)(4)(a) provided:

> If the offender has previously been required to participate in substance abuse treatment and home incarceration pursuant to subsection D of this Section,[8] the offender shall not be sentenced to substance abuse treatment and home incarceration for a fourth or subsequent offense, but *shall be imprisoned at hard labor* for not less than ten nor more than thirty years,

---

[8] La. R.S. 14:98(D) previously set forth the penalty for third-offense DWI. Following 2014 La. Acts, No. 385, § 1, effective January 1, 2015, *see now* La. R.S. 14:98D(3) and La R.S. 14:98.3.

and at least three years of the sentence shall be imposed without benefit of
suspension of sentence, probation, or parole.

*Id. (emphasis added).*[9]

A.   **Mr. Dahlem's participation in substance abuse treatment and home incarceration
pursuant to Predicate No. 3 exposed him to a case in which the punishment is
necessarily confinement at hard labor**

The First Circuit below appeared to recognize that Mr. Dahlem should have been tried by a jury

of twelve, but explained that he "acquiesced in the error of trying a twelve-person jury offense in a six-

person jury forum." *Dahlem*, 2013-0577, p. 8; 148 So.3d at 597. Notwithstanding the First Circuit's

recognition of the error, Mr. Dahlem was exposed to a case wherein he would necessarily be punished at

hard labor because of his previous participation in substance abuse treatment and home incarceration

pursuant to his third-offence DWI.

The evidence the State produced at trial included Mr. Dahlem's sentence for his third-offense

DWI. Special conditions of his probation included inpatient treatment for at least four weeks, and that he

was subject to home incarceration during the entire period of probation. *Dahlem*, 2013-0577, p. 6; 148

So.3d at 596. This evidence provides that subsection E(4)(a) was to be implicated upon Mr. Dahlem

upon being found guilty of a fourth-offence DWI because E(4)(a) is implicated when an offender "has

previously been required to participate in substance abuse treatment and home incarceration[.]" La. R.S.

14:98(E)(4)(a). As evidenced by the Bill of Information, the State had knowledge of the evidence that

would have implicated subsection E(4)(a) long before the trial began. (R. at 37); (R. at 13). The State

included in the Bill of Information Mr. Dahlem's conviction of third-offense DWI under Parish of

Washington docket number 10-CR1-108537. (R. at 37). The State undoubtedly would easily have

learned of Mr. Dahlem's sentence from the third-offence DWI docket. Thus, Mr. Dahlem was entitled to

a twelve member jury pursuant to La. Const. art. I, § 17(A).

The State argues in their opposition to the writ that the subsection Mr. Dahlem was sentenced

under "is merely an enhancement provision and does not govern whether or not a defendant should be

tried before a jury [of] six or twelve person." (Opp. of State, at p. 3). Similarly, Judge Kuhn posited in

his concurrence below that "[t]he hard-time requirement of La. R.S. 14:98(E)(4)(a) is simply an

enhancement provision that does not implicate a defendant's right to trial by a twelve-person jury."

Concurrence, First Circuit Court of Appeal, p. 1; *Dahlem*, 148 So. 3d 591, 600. Furthermore, Judge

Kuhn stated "[a]lthough, the State later presented evidence at trial in connection with Predicate No. 3

---

[9] Following 2014 La. Acts, No. 385, § 1, effective January 1, 2015, *see now* La. R.S. 14:98D(4) and 14:98.4A(1).

7

which, *if accepted*, allowed for a sentence at hard labor under La. R.S. 14:98(E)(4)(a), sentencing of the defendant under this sentencing enhancement provision was only a possibility, but never a certainty." *Dahlem*, 148 So. 3d at 601 (emphasis in original).

However, the evidence submitted in connection to Mr. Dahlem's third-offence DWI, predicate No. 3, was not merely individual documents that spelled out his guilty plea, sentence, and special conditions of probation. The evidence was self-contained within State Exhibit 11, which was the entire "Record 10-CR1-108537 from Parish of Washington." (R. at 192-194). The State's argument and Judge Kuhn's concurrence appear to stand for the proposition that the jury can selectively choose which evidence from State's Exhibit 11 that they are going to accept. By that logic, if and only if the jury accepted the entirety of the evidence, then and only then will Mr. Dahlem be subject the penalties of a fourth-offence DWI under subsection (E)(4)(a). However, no mention of the opposite proposition is mentioned in either the State's argument or Judge Kuhn's concurrence.

Necessarily, the other side of the coin is that if the jury *rejects* State Exhibit 11, then not only is Mr. Dahlem not subject to La. R.S. 14:98(E)(4)(a), he would not be able to be found guilty of a fourth-offense DWI under La. R.S. 14:98 because there would be no evidence of the third-offense DWI. As this Court has previously explained, "the burden rests on the State to prove at trial, beyond a reasonable doubt, the existence of the prior convictions ... when charging a second, third, or subsequent offense."[10] *State v. Carlos*, 98-1366 (La. 7/7/99); 738 So.2d 556, 558-59. Consequently, the State would be unable to meet its burden without State Exhibit 11, evidence of Mr. Dahlem's third-offence DWI conviction.

Furthermore, the State essentially argues in its opposition to the writ that if subsection (E)(4)(a) is not an enhancement provision, "there would be two separate jury requirements for the same crime, i.e. forth offense DWI, dependent upon evidence to be produce regarding a predicate conviction." (Opp. of State, p. 3). Appellant contends that there is nothing wrong with there being two separate jury requirements because the Louisiana Constitution focuses on whether *a case* is necessarily punishable at hard labor to determine jury composition rather than the punishments of a particular crime. *See* La. Const. art. I, § 17(A). This Court explained in *State v. Comeaux*, 408 So.2d 1099, 1103 (La.1981), which is factually distinguishable,[11] that "[a] 'case' is formally delineated by the bill of information, indictment or affidavit." *Id.*

---

[10] This Court in *Carlos* also noted that it did not "resolve the issue of whether the recidivist portions of the DWI statute constitute 'elements' of the crime of DWI." *State v. Carlos*, 738 So.2d at 559 n. 2.

[11] *Comeaux* concerned whether a defendant had a right to a jury trial when two separate offences were charged by two separate affidavits under two separate docket numbers and weren't consolidated. *Comeaux*, 408 So.2d at

As explained above, the State would have ample knowledge at the time of the Bill of Information that Mr. Dahlem's case would be necessarily punishable at hard labor pursuant to subsection E(4)(a) because the sentence from his third-offence DWI provides that he had to participate in a treatment program and was subject to home incarceration. Therefore, because Mr. Dahlem participated in a treatment program and was subject to home incarceration, he was exposed to a case that was necessarily punishable at hard labor. While the jury must accept the evidence submitted by the State to convict under a fourth offence DWI, it was not merely a possibility that Mr. Dahlem was going to be subject to sentencing under subsection (E)(4)(a). Rather, it was a certainty based on his sentence for his third-offence DWI conviction.

**B.     The Circuits are split as to whether the fourth-offense DWI subsections are enhancement provisions or mandate that punishment is necessarily at hard labor.**

Subsequent to the decision below, where the First Circuit found Mr. Dahlem "acquiesced in the error of trying a twelve-person jury offense in a six-person jury forum," *Dahlem*, 2013-0577, p. 8; 148 So.3d at 597, the First Circuit has addressed another case regarding fourth offence DWI. In *State v. Easter*, the defendant was convicted of fourth offence DWI by a jury of six and subsequently sentenced to fifteen years imprisonment at hard labor, with the first two years required to be served without the benefit of parole and the payment of a $5,000.00 fine pursuant to former La. R.S. 14:98(E)(1)(a). *State v. Easter*, 2014-1630, p. 6 (La.App. 1 Cir. 4/24/15). The First Circuit had to determine whether the jury composition was proper because the defendant contended that he should have been tried before a jury of twelve. *Id.* at 5.

The First Circuit explained, similar to Judge Kuhn's concurrence posited in the proceedings below, that "[a]lthough, the State later presented evidence at trial in connection with Predicate No. 3[12] which, if accepted, allowed for the application of former La. R.S. 14:98(E)(4)(a), neither the charging instrument, nor the sentence imposed by the trial court, was based upon the enhancement provision." *Id.* at 6. The First Circuit found that the defendant "was never subjected to the mandatory hard labor or three-year parole restriction of former subsection (E)(4)(a)." *Id.* Rather, the defendant was sentenced under subsection E(1)(a) and he was properly tried before a jury of six. *Id.*

However, even though the First Circuit called subsection (E)(4)(a) an "enhancement provision," the First Circuit stated in a footnote that "[a]s we find the jury composition proper in this case, we do not

---

1104. There is no such issue in this case; however, Appellant contends that this Court's explanation of the phrase "a case" from the Louisiana Constitution is entirely applicable here.

[12] The defendant in *Easter* similarly had three prior DWI convictions. *Easter*, 2014-1630, p. 1.

have the occasion to consider whether trial before a panel composed of fewer jurors than required by law retains its jurisdictional character as a structural defect." *Id.* at n 4. Thus, even though the First Circuit categorizes subsection (E)(4)(a) as an "enhancement provision," the First Circuit recognized that there are unanswered questions concerning cases with *fewer* jurors than the law requires.

In contrast to the Fifth Circuit, the Third Circuit recognizes that subsection (E)(4)(a) mandates punishment at hard labor. The State argues in its opposition essentially that the Third Circuit's case of *State v. Johnson*, 2010-196 (La.App. 3 Cir. 11/24/10); 52 So.3d 273, is inapplicable to this case because of the factual differences between the two cases. (Opp. of State, p. 3). However, the State failed to mention that *Johnson* created a split in the circuits as to whether subsection E(4)(a) is an enhancement provision or mandates punishment at hard labor.

*Johnson* is, undoubtedly, factually distinct from this case. In *Johnson*, the defendant was tried for a fourth-offence DWI by a six member jury, and the State admitted that the defendant should have been tried by a twelve person jury. *Johnson*, 2010-196, p. 2; 52 So.3d at 275. There is no such admission by the State in this case. Even so, the Third Circuit explained that "[u]nder the provisions of La.R.S. 14:98(E)(4)(a), *Defendant was subject to a mandatory prison sentence at hard labor for a minimum of ten years and a maximum of thirty years for the current offense.*" *Johnson*, 2010-196, p. 2; 52 So.3d at 274 (emphasis added). The Third Circuit further explained:

> In *State v. Nedds*, 364 So.2d 588 (La.1978), the Louisiana State Supreme Court held that a jury verdict rendered by either more or less than the correct number of jurors is null. Although the Louisiana Supreme Court partially abrogated the decision in *Nedds* in its more recent decision *State v. Jones*, 05–226 (La.2/22/06), 922 So.2d 508, upholding a conviction by a unanimous verdict of twelve in a case requiring only six jurors, *the law has not changed regarding the impropriety of trying a criminal defendant before a jury of six when a jury of twelve is required.*

> *Id.* (emphasis added).

The Third Circuit clearly recognized the differences between this Court's holding in *Jones* where a defendant was tried by a jury consisting of *more* jurors than the law requires, and cases where a defendant is tried by a jury consisting of *fewer* jurors than the law requires. The Third Circuit further explained that:

> Because Defendant, charged with fourth offense DWI, was previously required to participate in substance abuse treatment and was placed on home incarceration *the law mandates he be tried before a jury of twelve persons.* As Defendant was tried before a jury of only six persons, contrary to the provisions of our State Constitution requiring trial by twelve jurors for his offense, his conviction is null and is hereby set aside; his sentence is vacated; and the matter is remanded for a new trial.

*Johnson*, 2010-196 2-3; 52 So.3d at 275.

The Third Circuit recognized that a defendant, like Mr. Dahlem, who previously participates in substance abuse treatment and was placed on home incarceration, will be subject to a mandatory prison sentence at hard labor. Unlike the State's assertions that "the possibility of sentence enhancement ... does not render this a case in which the punishment is necessarily imprisonment at hard labor necessary to invoke a jury of twelve persons," (Opp. of State, p. 3), Mr. Dahlem was not subject to a mere enhancement provision. Subsection E(4)(a) is a *mandatory* sentence for an offender who previously participates in treatment and home incarceration.

While the Circuits are split as to whether subsection (E)(4)(a) is an enhancement provision or mandates that punishment be at hard labor, even the First Circuit recognized the proper jury composition under (E)(4)(a) in the proceedings below when it held that Mr. Dahlem acquiesced to trying a twelve-person jury offence in a six-person jury forum. *Dahlem*, 2013-0577, p. 8; 148 So.3d at 597. However, the Third Circuit correctly recognizes that subsection (E)(4)(a) sets forth a mandatory sentence. Thus, Mr. Dahlem should have been tried by a twelve person jury.

This is a case where Mr. Dahlem was found guilty of fourth offence DWI by a six person jury and was sentenced under La. R.S. 14:98(E)(4)(a) because he previously participated in substance abuse treatment and home incarceration. *Dahlem*, 2013-0577, p. 3; 148 So.3d at 594. Subsection (E)(4)(a) clearly establishes that Mr. Dahlem was subject to a case in which the punishment is necessarily confinement at hard labor. It was never a possibility that Mr. Dahlem would be subject to subsection (E)(4)(a) because if the jury rejected the State's evidence in connection with Predicate No. 3, the State would have failed to meet its burden to prove Mr. Dahlem's prior offences. Thus, Mr. Dahlem should have been tried before a jury of twelve persons as is his constitutional right. *See* La. Const. art. I, § 17(A).

## II.   THE LOWER COURT ERRED IN FINDING THAT MR. DAHLEM WAIVED HIS CONSTITUTIONALLY PROTECTED RIGHT TO A TWELVE PERSON JURY.

### A.   Mr. Dahlem did not waive his state constitutional right to a twelve person jury when he participated in the six juror member voir dire process.

In this case, Mr. Dahlem silently participated in the voir dire process. The voir dire transcript shows that Mr. Dahlem was asked no questions, and he did not speak during the entirety of the voir dire process. (R. at 54-138). The transcript reflects that Mr. Dahlem did not speak throughout the entirety of the trial proceedings. (R. at 139-226). The record is silent to any vocalization in any manner for Mr. Dahlem from the beginning of the trial process at voir dire, to the summation of the trial proceedings.

(R. at 54-226). The Louisiana Constitution provides that "a defendant may knowingly and intelligently waive his right to a trial by jury but no later than forty-five days prior to the trial date and the waiver shall be irrevocable." La. Const. art. I, § 17.

In the proceedings below, the First Circuit applied this Court's holding from *Brown* and found that Mr. Dahlem waived his right to a twelve person jury forum. The First Circuit explained:

> In *Brown*, the court found the defendant "acquiesced in the error of trying a six-person jury offense in a twelve-person jury forum by actively participating in the selection of a twelve-person jury without objection at any stage of the proceedings and thereby waived any relief on appeal on grounds that the panel selected was composed of a greater number of jurors than required by law". *Brown*, 85 So.3d at 53. In the instant case, the defendant acquiesced in the error of trying a twelve-person jury offense in a six-person jury forum. He raised no objection at voir dire when the trial court announced, "[t]he purpose of this process is for us to select six people who can fairly and impartially hear the evidence in this case and decide the case." Thereafter, he participated in the selection of the six-person jury. Additionally, he failed to file a motion in arrest of judgment. Accordingly, the wrong jury forum error was waived.

*Dahlem*, 148 So. 3d at 597 (paragraph break omitted).

However, *Brown* is inapplicable to this case. In *Brown*, the defendant was tried by *more* than the number of jurors required by law. *State v. Brown*, 2011-1044, p. 2 (La. 3/13/12), 85 So. 3d 52, 53. Furthermore, this Court reiterated that "*Jones* specifically cautioned that: 'Our holding here today does not guarantee the same result would be reached if a lesser number of jurors had been empaneled than required by law, or if there was not unanimity of verdict.' " *Brown*, 85 So. 3d at 53-54 (citing Id., 05–0226 at 7, n. 9, 922 So.2d at 513 (citing *State v. Jones*, 05–0226, p. 7, n. 9 (La.2/22/06), 922 So.2d 508, 513).

Furthermore, at least one circuit court has found that *Brown* is inapplicable when a defendant merely participates in the selection of a six member jury where the law requires a twelve person jury. In *State v. Magee*, the defendant was charged, on one count, with the crime of home invasion pursuant to La. R.S. 14:62.8, which requires imprisonment at hard labor. 2012-1025 (La.App. 4 Cir. 5/22/13, 13); 116 So.3d 948, 955 writ denied, 2013-1396 (La. 12/6/13); 129 So.3d 530. The defendant in *Magee* was tried by a six member jury. *Id.* 2012-1025 at 1, 116 So.3d at 949. After a thorough analysis of *Brown*, the Forth Circuit held that:

> The facts in the case at bar are not analogous to *Brown*, because Magee had fewer jurors than required, whereas in *Brown*, the defendant had more jurors than required. We find that *Brown* is not applicable to this case and that the principle of law in *Jones* is still applicable; Magee did not waive his entitlement to reversal based upon a jury panel that did not conform to the requirements of La. Const. art. I, § 17 and La.C.Cr.P. art. 782.

*Id.* 2012-1025 at 16-17, 116 So.3d at 958.[13]

The Second Circuit has explained the jurisprudence regarding a defendant's waiver of his right to a jury trial as thus:

> A defendant's knowing and intelligent waiver of his right to a jury trial must be sufficiently demonstrated by the record. *State v. Muller*, 351 So.2d 143 (La.1977); *State v. McCarroll*, 337 So.2d 475 (La.1976). *See also Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Every reasonable presumption must be indulged against the waiver of the fundamental right to a trial by jury. *State v. McCarroll, supra.* A waiver of a right to jury trial must be expressed and will never be presumed from a silent record. *State v. Wilson*, 437 So.2d 272 (La.1983); *State v. McCarroll, supra.* On appeal, the record must show some manifestation of an effective waiver. *See State v. Muller, supra. See State v. Mandigo*, 29913 (La.App.2d Cir.10/31/97), 702 So.2d 351.

*State v. Hicks*, 41,906 (La.App. 2 Cir. 12/20/06, 2-3); 945 So.2d 959, 961.

Here, the record is entirely silent as to whether Mr. Dahlem waived his right to a twelve person jury. Indeed, the transcript of the void dire proceedings conducted on April 30, 2012, and the entirety of the trial proceedings conducted on May 1, 2012, reflects that Mr. Dahlem did not speak once. (R. at 5-266). Furthermore, Mr. Dahlem could not have waived his right to a twelve person jury the day voir dire was conducted. This Court has explained that:

> With the 2010 amendment of La. Const. art. I, § 17(A), a third time period was imposed. That period commences forty-five days prior to trial. During this period, a defendant is prohibited from waiving the right to a trial by jury, and the district court's ability under La.C.Cr.P. art. 780(B) to approve a waiver is similarly restricted.

*State v. Bazile*, 2012-2243 (La. 5/7/13, 6); 144 So.3d 719, 726, reh'g denied (Aug. 30, 2013).

This Court in *Bazile* further explained that:

> *The clear intention of the redactors of La. Const. art. I, § 17(A) was to prevent last minute waivers by criminal defendants of the right to a jury trial.* Consistent with that intent, La. Const. art. I, § 17(A) was enacted to limit the time period in which a criminal defendant charged with a non-capital offense may exercise his or her constitutional right to waive a jury trial. However, the constitutional provision was not enacted to deprive a defendant of the right to waive a jury trial entirely, nor was it enacted to allow the fixing of trial dates in such a manner as to deprive a defendant of the opportunity to knowingly and intelligently waive the right to a trial by jury.

*Id.* 2012-2243 at, 7, 144 So.3d at 726-27 (emphasis added).

Here, even assuming *arguendo* that Mr. Dahlem attempted to waive his right to a twelve person jury by participating in the voir dire process that was two days prior to the trial proceedings, this would clearly constitute a last minute waiver that La. Const. art. I, § 17(A) was enacted to prevent. *See Id.* By

---

[13] The Fourth Circuit also found that harmless error was not applicable. *Magee.* 2012-1025 at 17, 116 So.3d at 958. Harmless error is discussed further below in this brief.

applying *Brown* to Mr. Dahlem, the First Circuit effectively applied a last minute waiver to Mr. Dahlem in violation of La. Const. art. I, § 17(A).

However, while the transcript is silent as to Mr. Dahlem's participation in voir dire, Mr. Talley, Mr. Dahlem's counsel, did participate in voir dire. This Court has previously explained that "[a]lthough it remains the preferred method for the district court to advise a defendant of her right to trial by jury in open court before obtaining a waiver, such a practice is not statutorily required." *State v. Pierre*, 2002-2665 (La. 3/28/03, 1); 842 So.2d 321, 322 (citing La.C.Cr.P. art. 780; *State v. Kahey*, 436 So.2d 475, 486 (La.1983); *State v. Muller*, 351 So.2d 143, 146-47 (La.1977)). This Court further explained that "[l]ikewise, it is preferred but not necessary, for the defendant to waive her right to jury trial personally." *Id.* (citing *State v. Wolfe*, 98-0345, pp. 6-7 (La.App. 4th Cir.4/21/99), 738 So.2d 1093, 1097). "Counsel may waive the right on the defendant's behalf, provided that the defendant's decision to do so was made knowingly and intelligently." *Id.*[14]

Even so, in *Pierre*, this Court found that counsel waived a jury trial on the defendant's behalf. *Id.* In *Pierre*, on the second day of the trial, the district court memorialized the defendant's earlier waiver in her presence. *Id.* Furthermore, "defense counsel stated that he and his client had discussed the waiver at length and on several occasions, and that both agreed to the waiver." *Pierre*, 2002-2665, at 1-2, 842 So.2d at 322. This Court held that those circumstances constituted a knowing and intelligent waiver. *Id.* 2002-2665, at 2, 842 So.2d at 322

This case, unlike *Pierre*, has no indication that Mr. Dahlem had any discussion with Mr. Talley about waiving his right to a twelve person jury. No waiver was memorialized by the trial court. Furthermore, there was no discussion between Judge Crain and Mr. Talley concerning whether Mr.

---

[14] At least two other states allow for a defendant's counsel to waive the right to a twelve person jury on a defendant's behalf. *See, e.g., State v. Machia*, 155 Vt. 192, 583 A.2d 556 (Vt. 1990) (holding that counsel may stipulate to a reduced jury panel); *People v. Bracey*, 213 Ill. 2d 265, 821 N.E.2d 253, 256, 290 Ill. Dec. 202 (Ill. 2004) ("Generally, a jury waiver is valid if it is made by defense counsel in defendant's presence in open court, without an objection by defendant."). However, far more states require a waiver of the right to a twelve person jury to be made personally by a defendant. *See, e.g., Commonwealth v. Simmons*, 394 S.W.3d 903, 911 (Ky. 2013) (holding that a twelve-person jury can only be waived by the defendant) (collecting cases); *State v. Stegall*, 124 Wn.2d 719, 881 P.2d 979 (Wash. 1994) (holding that the record must demonstrate either the defendant's personal expression of intent or his informed acquiescence in counsel's stipulation); *State v. Hegg*, 410 N.W.2d 152, 155 (N.D. 1987) ("Silently proceeding with trial before a six-person jury is not an express and affirmative waiver of one's constitutional right to a jury of twelve."); *State v. Hewitt*, 128 N.H. 557, 517 A.2d 820, 823 (N.H. 1986) ("A personal waiver by the defendant, indicating his understanding of the right to a full jury, is required to effectuate the constitutional guarantee."); *Walker v. State*, 578 P.2d 1388, 1389 (Alaska 1978) (Pretrial stipulation by counsel was insufficient because "[w]aiver of the right to trial by a jury of twelve persons requires that the court personally address the defendant."); *State v. McGee*, 447 S.W.2d 270, 273 (Mo. 1969) ("We agree that complete waiver of a jury and consent to be tried by less than twelve jurors in substance amount 'to the same thing.'"); *State v. Simpson*, 29 Kan. App. 2d 862, 32 P.3d 1226 (Kan. App. 2001) (citing *State v. Hood*, 242 Kan. 115, 744 P.2d 816 (Kan. 1987), in support of holding that waiver of twelve-person jury must be personally addressed to the defendant); *People v. Traugott*, 184 Cal. App. 4th 492, 109 Cal. Rptr.3d 66, 72 (Cal. App. 2010) ("Like the waiver of the right to a jury, the consent to a jury of fewer than 12 persons must be expressed by the defendant in open court.").

14

Dahlem waived his right to a twelve person jury. Thus, Mr. Dahlem could not under such circumstances knowingly and intelligently waive his right to a twelve person jury.

Therefore, even though this Court has held that counsel may waive the right to a trial by jury on behalf of a defendant, there can be no knowing and intelligent waiver when the record is completely silent regarding any such waiver. Mere participation in voir dire simply is not enough to waive a constitutional right with a silent record. Moreover, such a waiver on the day of voir dire clearly violates the 45-day requirement of La. Const. art. I, § 17(A). This is especially so when the 45-day requirement was enacted to prevent last minute waivers. *See*, *Bazile*, *supra*.

**B.    Failure to conduct a trial before a twelve person jury as required by the Louisiana Constitution Article I, Section 17, constitutes a structural defect in the procedural mechanics of a trial.**

Historically, this Court has adhered to the guidance dictated by the United States Supreme Court as to when constitutional errors experienced during the trial proceedings infect the structure of the trial mechanism and result in vocation and reversal of the case. Constitutional errors[15] do not automatically require reversal of a conviction and there is not an exhaustive list of what comprises constitutional error; rather errors are reviewed on case by case analysis to determine the severity of the error. There are two types of error – trial error and structural error. *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). When a trial error occurs it is quantitatively assessed in the context of other

---

[15] Constitutional errors include *Clemons v. Mississippi*, 494 U.S. 738, 752-754, 110 S.Ct. 1441, 1450-1451, 108 L.Ed.2d 725 (1990) (unconstitutionally overbroad jury instructions at the sentencing stage of a capital case); *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (admission of evidence at the sentencing stage of a capital case in violation of the Sixth Amendment Counsel Clause); *Carella v. California*, 491 U.S. 263, 266, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (1989) (jury instruction containing an erroneous conclusive presumption); *Pope v. Illinois*, 481 U.S. 497, 501-504, 107 S.Ct. 1918, 1921-1923, 95 L.Ed.2d 439 (1987) (jury instruction misstating an element of the offense); *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (jury instruction containing an erroneous rebuttable presumption); *Crane v. Kentucky*, 476 U.S. 683, 691, 106 S.Ct. 2142, 2147, 90 L.Ed.2d 636 (1986) (erroneous exclusion of defendant's testimony regarding the circumstances of his confession); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (restriction on a defendant' right to cross-examine a witness for bias in violation of the Sixth Amendment Confrontation Clause); *Rushen v. Spain*, 464 U.S. 114, 117-111 S.Ct. 1246, 113 L.Ed.2d 302, 59 USLW 4235 118, and n: 2, 104 S.Ct. 453, 454-455, and n. 2, 78 L.Ed.2d 267 (1983) (denial of a defendant's right to be present at trial); *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (improper comment on defendant's silence at trial, in violation of the Fifth Amendment Self-Incrimination Clause); *Hopper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367(1982) (statute improperly forbidding trial court's giving a jury instruction on a lesser included offense in a capital case in violation of the Due Process Clause); *Kentucky v. Whorton*, 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 96 (1983) (failure to instruct the jury on the presumption of innocence); *Moore v. Illinois*, 434 U.S. 220, 232, 98 S.Ct. 458, 466, 54 L.Ed.2d 424 (1977) (admission of identification evidence in violation of the Sixth Amendment Counsel Clause); *Brown v. United States*, 411 U.S. 223, 231-232, 93 S.Ct. 1565, 1570-1571, 36 L.Ed.2d 208 (1973) (admission of the out-of-court statement of a nontestifying codefendant in violation of the Sixth Amendment Counsel Clause); *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (confession obtained in violation of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)); *Chambers v. Maroney*, 399 U.S. 42, 52-53, 90 S.Ct. 1975, 1981-1982, 26 L.Ed.2d 419 (1970) (admission of evidence obtained in violation of the Fourth Amendment); *Coleman v. Alabama*, 399 U.S. 1, 10-11, 90 S.Ct. 1999, 2003-2004, 26 L.Ed.2d 387 (1970) (denial of counsel at a preliminary hearing in violation of the Sixth Amendment Confrontation Clause.)

evidence. *Id.* However, when a structural error occurs it affects the very framework within which the trial proceeds. *Id.* A trial by an incorrect number of jurors is an error that is discoverable by a mere inspection of the pleadings and proceedings and is an error patent on the face of the record. *State v. Kibodeaux,* 524 So.2d 891 (1988). When there is an error patent on the face of the record a reversal of conviction is required. *State v. Johnson,* 94-1379 (La. 11/27/95); 664 So.2d 94.

Through a historical evaluation of this Court's proceedings it is evident that lower appellate courts should strictly adhere to the narrowly tailored exceptions designated to be structural error, and evaluate all other errors as trial errors subject to harmless error analysis. Mainly that this Court offers very particular guidance as to when an error would be deemed sufficient to constitute a reversal. Specifically, case reversals conducted by the appellate courts must adhere to Louisiana Code of Criminal Procedure 921, where the error plainly displays a substantial violation of a constitutional or statutory right.[16] *Johnson,* 94-1379 (La. 11/27/95); 664 So.2d 94. This Court exemplified in *Johnson* the Legislature's progressive development of the current codal article. In particular when evaluating the legislative history of this codal article and reviewing the comments specified, it clearly reflects that the Legislature's modification were reflective of this Court's intentions. *See* La. C.Cr.P. Art. 921. In particular, under the Official Revision Comments subsection C, states:

> The Louisiana Supreme Court has experienced very little difficulty in logically interpreting and applying the Louisiana provision. Although the federal 'harmless error' rule is more concisely stated than Louisiana's rule, a revision of the Louisiana provision is not advisable, because it might then be argued that a change in the meaning was intended, which would case doubt upon the Louisiana Supreme Court's decisions.

*Id.*

While some constitutional errors are readily categorized as trial errors or structural errors there is not an exhaustive list. Errors that fall outside of the list of trial errors and structural errors have to first be determined as constitutional errors and then further assessed into one of the two categories of errors. Seminally, in *Fulminante,* the United States Supreme Court evaluated the issue of whether a confession admitted into evidence during trial was a constitutional error that invalidated a conviction. In *Fulminante,* while in prison, the defendant confessed to an informant that he had killed someone. *Id.* The defendant moved to have the confession thrown out as a structural defect that violated his constitutional right. *Id.* The Court held that the confession was a constitutional trial error and reversed and remanded

---

[16] The current La. C.Cr.P. Art. 921:
> A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity or variance which does not affect substantial rights of the accused.

the case back for new trial. *Id.* The Court reasoned that it was a trial error because it occurred during the presentation to the trier of fact and may be quantitatively assessed in the context of other evidence. *Id.*

Louisiana jurisprudence tells us that a jury composed of a greater number of persons than constitutionally required is a constitutional error that may be a waivable, but the law is silent on the type and severity of defect that occurs when there are a lesser number of jurors than required by state constitution. Previously this Court reasoned in *State v. Brown*, 2011-1044 (La. 3/13/12); 85 So.3d 52, that while the defendant was tried by a twelve person jury panel which did not conform to the Louisiana Constitutional guarantee of a six person jury trial, there was harmless error even though the error is patent on the face of the record. *Id.*

Currently, in this case Mr. Dahlem experienced the constitutional violation that this Court has not had an opportunity to address; he is constitutionally entitled to a twelve person jury but the structure of this trial was grossly in error when the trial proceedings were conducted in front ofo a six person jury panel. As such, Mr. Dahlem respectfully requests this Court to offer guidance to the lower courts that when a constitutional violation of this degree occurs, it is a reversible offense entitled to a new trial.

III.  **UNDER THE LOUISIANA CONSTITUTION ARTICLE I, SECTION 17, WHERE EVERY PERSON IS MANDATED WITH THE RIGHT TO A TWELVE PERSON JURY TRIAL, DOES THE ERROR OF DENYING THIS CONSTITUTIONAL RIGHT RISE TO THE LEVEL OF STRUCTURAL ERROR OR A TRIAL ERROR SUBJECT TO HARMLESS ERROR ANALYSIS, WHEN THE ARCHITECTURE OF THE ENTIRE TRIAL PROCEEDINGS VIOLATES THIS RIGHT WITH A SIX PERSON JURY TRIAL.**

The matter at hand offers this Court a paramount proceeding in which to clarify for the lower courts the distinction between structural error, which is immediately vacated and remanded for new trail, and trial error subject to harmless error analysis and the accompanying burden of proof. Having established that *this* constitutional error infringed upon the Appellant's mandatory state constitutional right to a twelve person jury, and manifestation that this right was not effectively waived, Appellant now advances the analysis of the nature and level of the error at trial.

Historically, this Court has interpreted and adapted the test set forth by the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), to determine the distinction between structural error and trial error subject to harmless error analysis. Through this Court's adaptation of *Chapman* in *State v. Gibson*, 391 So.2d 421, 426 (La.1980), it stipulated that throughout the confusion and interpretation of errors in a criminal trial, there are some "infractions that can never be treated as harmless, [while] other may be deemed harmless and not require

17

the automatic reversal. . . If the error is deemed harmless, the burden is on someone *other than the person prejudiced* by it to show that it was harmless." *Id.* (emphasis added). In as much, this Court has established that errors can occur at trial, but the issue is to identify whether it is a structural error or a trial error subject to harmless error evaluation.

Continuing to adapt and modify the current standard of evaluation, *State v. Johnson, 94-1379 (La. 11/27/95); 664 So.2d 94,* offers this Court's definition of trial error and structural error:

> *Trial error* occurs during the presentation of the case to the trier of fact and may be quatitatively assessed in the context of the other evidence to determine whether its admission at trial is harmless beyond a reasonable doubt. A *structural error* is one which affects the framework within the trial proceeds. Structural defects include the complete denial of counsel, adjudication by a biased judge, exclusion of members of defendant's race from a grand jury, the right to self-representation at trial, the right to a public trial, and the right to a jury verdict of guilt beyond a reasonable doubt. This Court has acknowledged the distinction between trial error and structural error.

*Johnson*, 664 So. 2d at 100. (emphasis added*).*

Structural error has continued to be a narrowly tailored test in as much that only six seminally found errors were structural and subject to immediate reversal of the charges. *Id.* This means most errors—even those of a constitutional right—are deemed trial errors. With trial errors, in *State v. Patterson,* 2012-2042 (La. 3/19/13); 112 So.3d 806, *reh'g denied* (May 3, 2013), this Court clearly identified the burden of proving the harmlessness of the error that led to the erroneously obtained judgment lies with the benefiting party. *Patterson,* 112 So.3d at 810. This Court further recognized in *State v. Lewis,* 2012-1021 (La. 3/19/13); 112 So.3d 796, *reh'g denied* (May 3, 2013), that when dealing with the error regarding the composition of a jury, "the State's burden in a case such as this is a difficult one, given jury dynamics and the possible influence even a single juror may have [i]n the course of deliberations." [17] *Lewis,* 112 So.3d 805.

The importance of a jury trial is not one taken lightly. The Untied State Supreme Court continued to uphold the seminal case *Duncan v. State of Louisiana, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968),* when it further emphasized the significance of jury trials in *Sullivan v. Louisiana:*

> The right to trial by jury reflects, we have said 'a profound judgment about the way in which law should be enforced and justice administered.' The deprivation of the right with consequences that are necessarily unquantifiable and indeterminate unquestionably qualifies as *structural error.*

---

[17] While the issue in *Lewis* was regarding the composition of the jury wherein the error was whether a juror that should have been stricken for a preemptive challenge was a structural or trial in nature, it is important to acknowledge this Court's emphasis regarding proper jury construction. *Lewis,* 112 So.3d 796.

*Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). (emphasis added).

Through the understanding of this Court's adaptation to the aforementioned seminal United States Supreme Court cases, Appellant respectfully asserts that in the present proceedings his successfully established constitutional error is structural in nature and should be immediately vacated and remanded for further proceedings. However, if *arguendo*, this Court does not find this error to be a structural error, Appellant asserts that this trial error does not defeat harmless error analysis beyond a reasonable doubt, and therefore should be vacated and remanded for a new trial.

**A.   Denial of Mr. Dahlem's constitutionally protected right to a twelve person jury trial is a structural error that tainted the entirety of the trial proceedings and as such the conviction should be automatically reversed.**

The violation of Mr. Dahlem's constitutional right when he was denied a twelve person jury and instead was subjected to a six person jury trial undoubtedly affected the structure of the trial composition. Adhering to this Court's analysis of structural error, Mr. Dahlem's constitutional violation manifestly is structural in nature for the following three reasons: first, the duration of the violation was through its entirety of the district court trial; secondly, the ruling of the six absent triers of fact at the jury trial cannot be deduced based on a possibility of what they probably would have ruled; thirdly, the infringement of this error is such an intimate and personal infringement of his constitutional right that it qualifies as a separate standard of structural error or conforms to the narrow framework of a current structural error.

First, in *State v. Langley*, 2006-1041 (La. 5/22/07); 958 So.2d 1160, this Court reviewed and recognized the hazardous predicament that appellate courts face in interpretation of trial level errors and the ramifications of misinterpretation. While the proceedings in *Langley* were ruled on issues of double jeopardy, this Court was forced to evaluate the appellate courts misinterpretation of structural error in the first trial proceedings of *State v. Langley*, 2004-269 (La.App. 3 Cir. 12/29/04); 896 So.2d 200 *disapproved of by State v. Langley*, 2006-1041 (La. 5/22/07); 958 So.2d 1160. Through this analysis this Court clarified that it is clear and evident that a " structural error, by its very nature impacts the entire framework of the trial from beginning to end without reference to any other trial consideration." *Langley*, 958 So.2d at 1168. In order to interpret whether an error is structural in nature, it must first be understood when a trial begins.

As this Court illustrated in *Langley*, Louisiana has adopted the Supreme Court ruling of *Gomez v. United States*, 490 U.S. 858, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989). In *Gomez*, the United States

Supreme Court found that a criminal trial begins at the onset of the voir dire process. *Gomez*, 490 U.S. at 876. In *Gomez*, it was determined that a magistrate judge who does not have jurisdiction to preside over the criminal trial, does not have jurisdiction to conduct the voir dire process and that through this action constituted a structural error that was immediately vacated and remanded for a new trial. *Id.* The United States Supreme Court found that "among the basic fair trial rights that can never be treated as harmless is a defendant's right to an impartial adjudicator, be it judge or jury." *Id.*

In *Langley* this Court further rectified the state appellate court's preceding interpretation of *Gomez* by clarifying that the absence of the trier of fact must be undoubtedly during a critical point of the trial–such as voir dire–to constitute a structural error. However, if it must be evaluated whether the period of absence of the trier of fact could *possibly* be at a critical point, this represents a trial error subject to harmless error analysis.[18] *Langley*, 958 So.2d at 1165. The ruling of *Langley* offers clarity when a trier of fact is absent from a proceeding. Following *Gomez* the adjudicator cannot be absent for the entirety of a critical proceeding; however, sporadic absence where it must be evaluated what was *possibly* missed, does not rise to the level of structural error. *Langley*, 958 So.2d at 1165-66.

Currently, the Appellant's first point alone substantiates a structural error analysis. Mr. Dahlem began the trial at the voir dire proceedings wherein there was a selection of a six person jury. Throughout the entirety of the trial from beginning to end, and with it all critical points, six of the twelve constitutionally mandated triers of fact were absent and unable to rule or deliberate on the proceedings. Adhering to this Court's previous rulings, this is a structural defect at the trial level that infects the trial mechanisms as a whole and would therefore be a structural error.

In reference to Appellant's second point, the State argues that the trial evidence presented and the unanimity of the ruling of the jurors negates any error present.[19] However, in *State v. Gibson, 391 So.2d 421 (La.1980)*, this Court clearly identified that while jurisdiction extends to questions of law in evaluating convictions based on constitutional errors to determine harmlessness, ". . . it does not permit a court to *substitute* for the verdict its judgment of what the *jury would or should have* decided in the absence of the error."[20] *Gibson*, 391 So.2d at 427. Through this Court's progressive adaptation of United

---

[18] To clarify, this Court found in Langley that if the *effect* of the absence of the trier of fact for particular periods must be evaluated, the error is a trial error in nature and is subject to harmless error analysis. *Langley*, 958 So.2d at 1165.

[19] Please find a more thorough response to the State's contestation of harm-less error in the *Trial Error Section* of this brief.

States Supreme Court cases it has adopted the narrow interpretation of structural error set forth in *Arizona v. Fulminante*:

> Each of these constitutional violations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as *fundamentally fair*.

*Fulminante*, 499 U.S. at 310. (citations omitted).

The State's claim of harmless error is fundamentally erroneous. The State is asking this Court to place themselves as the six absent triers of fact and to determine a ruling, a choice this Court has concretely refused to do.

Finally, the constitutional error in this case directly correlates to this Court's adaptation of *Chapman*'s six structural errors.[21] In particular, the matter at hand correlates with the sixth prong of "defective reasonable doubt instruction" deemed a structural error in *Sullivan v. Louisiana*, 508 U.S. at 275-85. In *Sullivan*, the United State's Supreme Court recognized that an incorrect jury instruction omitting that the conviction is "beyond a reasonable doubt" is a structural error which is separate and distinct from previously ruled harmless trial errors conducted during jury instructions. *Sullivan*, 508 U.S. at 280. In particular, the United States Supreme Court identified that:

> Denial of the right to a jury verdict of guilt beyond a reasonable doubt is certainly a [structural error], the jury guarantee being a 'basic protection' whose precise effects are unmeasurable but without which a criminal trial cannot reliably serve its function.

*Sullivan*, 508 U.S. at 281.

While the jury instructions are not at issue in the present case, Mr. Dahlem was clearly deprived his basic protection of a jury trial when six of the twelve constitutionally guaranteed jurors were absent throughout the entire proceedings of the case and as such there was not a twelve person verdict of guilt beyond a reasonable doubt. The verdict was constitutionally flawed.

---

[21] This Court in *Langley*, 985 So.2d at 1164, concisely stipulated the six instances of structural errors as the following:

> Structural defects occur in only "a very limited class of cases," and include the total deprivation of the right to counsel, lack of an impartial trial judge, unlawful exclusion of grand jurors of the defendant's race, deprivation of the right to self-representation at trial, the right to a public trial, and erroneous reasonable doubt instructions. *Johnson v. United States*, 520 U.S. 461, 468-69, 117 S.Ct. 1544, 1549-50, 137 L.Ed.2d 718 (1997); *Neder v. United States*, 527 U.S. 1, 7-8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999); *United States v. Stevens*, 223 F.3d 239, 244 (3rd Cir.2000); *see also State v. Ruiz*, 2006-1755 p. 6 (La.4/11/07), 955 So.2d 81.

In their Opposition to Writ Application on page 2-4, the State counters the argument that the Appellant is constitutionally entitled to a twelve person jury by citing cites to *Williams v. Florida*, 399 U.S. 78, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970). The State argues "the [United States] Supreme Court rejected the argument that a defendant was entitled to a jury of more than six people." (Opp. of State, p. 2). In this instance, the State's reliance on *Williams* is misplaced. An analyzation of only the holding of *Williams* states that there is not a **federal** constitutional right under the due process clause to a twelve person jury trial. *Williams*, 399 U.S. at 99-100. However, the Supreme Court specifically granted the states the power to delineate whether or not there is a **state** constitutional right to a twelve person jury trial. *Williams*, 399 U.S. at 99-103. In *Williams*, the United States Supreme Court poised:

> We do not mean to intimate that legislatures can never have good reasons for concluding that the 12-man jury is preferable to the smaller jury, or that such conclusions - - reflected in the provisions of most States and in our federal system- - are in any sense unwise. Legislatures may well have their own views about the relative value of the larger and smaller juries, and may conclude that. . . it is desirable to spread the collective responsibility for the determination of guilt among the larger group.

*Williams*, 399 U.S. at 103.

The State further contends that this Court proclaimed in *State v. Jones* that the construction of the number of jurors in a trial proceeding is a harmless error. *State v. Jones*, 2005-0226 (La. 2/22/06); 922 So.2d 508. Again, this is a misrepresentation of the holding. This Court held in *Jones* that harmless error occurred when a defendant was constitutionally guaranteed a six person jury and instead the trial was conducted before twelve person jury and wherein a unanimous guilty verdict was achieved. *Jones*, 922 So.2d at 512-513. In particular, this Court scribed: "Our holding here today does not guarantee the same result would be reached if a lesser number of jurors had been empanelled than required by law, or if there was no unanimity of verdict." *Jones*, 922 So.2d at 513, no. 9. The case at bar is converse to the argument held in *Jones*.

The State is currently requesting this Court to hold all errors presented at trial, in all cases to be equally weighed in relation to one another. Simply, the State is requesting that because this Court in *Jones* previously held that conducting a defendant's trial before a twelve person jury when only a six person jury is constitutionally mandated constitutes a harmless trial error, so should the exact converse to be true. Furthermore, this Court in *Johnson* quoting *Sullivan* stipulated that ". . . the inquiry is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict rendered in *this* trial was surely unattributable to the error." *Johnson*, 664 So.2d at 100.

22

Appellant respectfully requests for this Court to continue to uphold its historical rationale that when a structural error infects the entirety of the trial proceeding there must be immediate reversal of the conviction and remanding for further proceedings.

**B.     However, assuming *arguendo*, this Court finds that the error at trial does not conform to that of structural error, it should be quantified as a trial error that does not satisfy harmless analysis and should therefore be vacated and remanded for further proceedings.**

However, assuming *arguendo*, this Court finds that the error at trial does not conform to the rigorous stipulations of a structural error, it should be quantified as a trial error that does not satisfy harmless analysis. Mr. Dahlem's constitutional violation fails the harmlessness analysis for the following two reasons: one, the State failed to meet their mandated burden of proof exemplifying how the error was harmless and instead implores this Court to act as a trier of fact; two, the error that occurred was not harmless beyond a reasonable doubt.

First, this Court has historically held and recently solidified in both *State v. Lewis*, and *State v. Patterson*, that the benefiting party of the error *must* prove that the error is harmless beyond a reasonable doubt.[22] *Patterson*, 112 So.3d at 810-811, *quoting Lewis*, 112 So.3d at 805. Furthermore, in *Patterson* this Court recognized the perplexity and strenuous burden of proof this places on the benefitting party. *Id.* However, this Court refused to lighten this burden, explaining it stands as such so that undoubtedly, the error is displayed as not a causal factor in the erroneously obtained judgment. *Id.* In *Patterson*, this Court highlighted previous cases where the burden of proof was adequately achieved and the error was deemed harmless.[23] *Id.*

---

[22] In *Patterson*, 112 So.3d at 810-811, *quoting Lewis*, 112 So.3d at 805, this Court displayed the consistent historical burden of proof for harmless error:

> When this Court addressed the question of harmless error in *Taylor* we referenced *State v. Johnson*, 1994-1379 (La. 11/27/95), 664 So.2d 94, 100, which adopts the harmless error test of *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed. 2d 182 (1993). Under that test derived from *Chapman v. California*, 386 U.S. 18, 87 S.Ct, 824, 17 L. Ed. 2d 705 (1967), "[t]he inquiry. . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Johnson*, 1994-1379 at 14, 664 So.2d 100, *quoting Sullivan*, 508 U.S. at 279. Moreover, under *Chapman*, it is clear that the burden of proving harmless error resets squarely on the shoulders of the party benefitting from the error. *Chapman*, 386 U.S. at 24 ("Certainly error. . . . casts on someone other that the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harm-less rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment.

[23] Particularly, this Court state in *Patterson*, 112 So.3d at 810: "Certainly, under some circumstances, the error. . . . may be harmless. Such was the situation this court encountered in *Taylor*, where we found harmless error. . ."

In the State's Opposition to Writ Application, a minimal four sentences were submitted as their proof to the harmlessness of the error. (Opp. of State, p. 4). In particular, the State poises a sweeping declaration that "any error was harmless." *Id.* The State apparently is relying on this Court to act as the six missing triers of fact and find that due to the evidence presented at trial and the unanimous verdict of the six present jurors, that even if Mr. Dahlem was granted a new trial, his verdict would be guilty, making this constitutional error seamlessly pass the harmless error analysis. Again, this is not the case. As stipulated in *Sullivan*:

> The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt–not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough. . . A *reviewing* court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, *the wrong entity judge[s] the defendant guilty*.

*Sullivan*, 508 U.S. at 280. (*citations omitted*).

The State also relies on Judge Kuhn's concurrence in the appellate court's opinion, wherein he relied on *Brown* stating, an error in jury composition ". . .warrant[ed] a reversal only where the defendant is actually prejudiced." *State v. Dahlem*, 2013-0577 (La.App. 1 Cir. 6/18/14); 148 So.3d 591, *reh'g denied* (July 22, 2014), *writ granted*, 2014-1555 (La. 3/27/15); 161 So.3d 646. This does not upset the delineation of the burden of proof to the State; but rather. this Court has held, refers to trial errors that prejudice the defendant. *State v. Brown*, 2011-1044 (La. 3/13/12); 85 So.3d 52. See also *Patterson*, 112 So.3d at 810. Currently as a violation of a state constitutional mandatory right that was not waived, the defendant's issue of prejudice is not at bar. Also, the immediate subsequent sentence to the quote reference to in *Brown* offers the same advice as in previously reviewed in *Jones*. We see again that this Court cautioned: "Our holding here today does not guarantee the same result would be reached if a lesser number of jurors had been empaneled than required by law, or if there was not unanimity of verdict." *Brown*, 85 So.3d at 53. Finally, this Court in *Brown* explicitly stated that the issue of prejudice was not at question. *Brown*, 85 So.3d at 54.

Therefore, since the State has not achieved their burden of proof that the trial error was harmless in nature, and instead is relying on this Court to act as a trier of fact solely from the record at bar, this trial error does not pass the harmlessness analysis.

24

Secondly, Appellant recognizes that there are constitutional errors at trial which are harmless in nature; however, this trial error is not harmless beyond a reasonable doubt and must therefore be vacated and remanded for further proceedings.[24]

Historically, in this Court's adaptation of the harmless error doctrine prescribed in *Fulminante* it has adhered to the importance of its analysis.[25] *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). In *Fulminante,* the United States Supreme Court clarified the core distinction between a structural error and a trial error relies on the fact that a trial error can be "quantitatively assessed in the context of the other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante*, 499 U.S. at 308. In *Johnson*, this Court solidified that the harmlessness test for the trial error is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. . .An error did not 'contribute' to the verdict when the erroneous trial feature is unimportant in relation to everything else. . ." *Johnson*, 664 So.2d at 100.

Currently, Mr. Dahlem's injury suffered does not satisfy the harmless beyond a reasonable doubt analysis; his injury is directly related to the verdict obtained from only six jurors wherein he was entitled to twelve. It is not possible to sever Mr. Dahlem's injury and still reasonably achieve the same result. Accordingly, the State did not prove the harmlessness of the error suffered, and this Court cannot be asked to hypothetically sever the error and perceive the possible outcome of a trial less the error, the trial error in Mr. Dahlem's case does not satisfy the harmless error analysis beyond a reasonable doubt and should be vacated and remanded for further proceedings.

---

[24] Notably, in the seminal case of *Chapman,* Justice Stewart declared in his concurrence: ". . .constitutional rights are not fungible goods. The differing values which they represent and protect may make a harm-less rule appropriate for one type of constitutional error and not for another.

[25] In *Arizona v. Fulminante*, 499 U.S. at 308, the United States Supreme Court poised:
> In applying harm-less error analysis to these many different constitutional violations, the [United States Supreme] Court has been faithful to the belief that the harm-less error doctrine is essential to prove the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying **fairness** of the trial rather than on the virtually inevitable presence of immaterial error.

## CONCLUSION AND PRAYER

For these reasons, Mr. Gerald W. Dahlem respectfully requests that this Court find that the error in this case is not a harmless violation of one's state mandated constitutional rights and will reverse and remand the case for a new trial, and grant such relief as the Court deems just and equitable.

Respectfully submitted,

**VIRGINIA B. LISTACH**, BAR NO. 19011
*SUPERVISING ATTORNEY*
**SOUTHERN UNIVERSITY LEGAL CLINIC**
P.O. BOX 9492
BATON ROUGE, LA 70813
PHONE: 225.771.3333
FAX:  225.771.3333

**CHARLETTA E. ANDERSON**
*RULE XX CERTIFIED STUDENT ATTORNEY*
**SOUTHERN UNIVERSITY LEGAL CLINIC**
P.O. BOX 9492
BATON ROUGE, LA 70813
PHONE: 225.771.3333
FAX:  225.771.3333

**JOHN R. BLANCHARD**
*RULE XX CERTIFIED STUDENT ATTORNEY*
**SOUTHERN UNIVERSITY LEGAL CLINIC**
P.O. BOX 9492
BATON ROUGE, LA 70813
PHONE: 225.771.3333
FAX:  225.771.3333

**CHRISTINE E. WELLS**
*RULE XX CERTIFIED STUDENT ATTORNEY*
**SOUTHERN UNIVERSITY LEGAL CLINIC**
P.O. BOX 9492
BATON ROUGE, LA 70813
PHONE: 225.771.3333
FAX:  225.771.3333

*Counsel   for   Petitioner/Appellant   Gerald   W.   Dahlem*

## CERTIFICATE OF SERVICE

I hereby certify that I have forwarded a copy of the foregoing to opposing counsel, as listed below, by hand and/or United States Mail, First Class, this **22nd** day of **June**:

**The Honorable William J. Crain**
Judge of the 22nd Judicial District Court
3122 Justice Center
701 North Columbia Street
Covington, LA 70433

**The Honorable Warren Montgomery**
District Attorney
Parish of St. Tammany
701 North Columbia Street
Covington, LA 70433

**Court of Appeal First Circuit**
Clerk of Court
P.O. Box 4408
Baton Rouge, LA 70821-4408

**Kathryn Landry**
*Special Appeals Counsel*
IEYOUB & LANDRY, L.L.C.
P.O. Box 82659
Baton Rouge, Louisiana 70884
Telephone No. (225) 766-0023
Facsimile No. (225) 766-7341

**Gerald Dahlem #384259**
Avoyelles Correctional Center
Cajun 3-D2
1630 Prison Road
Cottonport, LA 71327

VIRGINIA B. LISTACH, BAR NO. 19011
*SUPERVISING ATTORNEY*
SOUTHERN UNIVERSITY LEGAL CLINIC
P.O. Box 9492
BATON ROUGE, LA 70813
PHONE: 225.771.3333
FAX:  225.771.3383

## VERIFICATION AND SERVICE

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

**BEFORE ME,** the undersigned authority, personally came and appeared Virginia

Listach, who being duly sworn deposed that:

All of the allegations in the foregoing Original Brief on the Merits submitted by

Petitioner/Appellant, Gerald W. Dahlem, is true and correct to the best of her information,

knowledge and belief; and,

A copy of the above and foregoing brief has this date been served upon counsel for

Respondent/Appellee and the First Circuit Court of Appeal by depositing same in the U.S. Mail,

postage pre-paid, properly addressed to the following:

**The Honorable Warren Montgomery**
Judge of the 22nd Judicial District Court
3122 Justice Center
701 North Columbia Street
Covington, LA 70433

**The Honorable Walter P. Reed**
District Attorney
Parish of St. Tammany
701 North Columbia Street
Covington, LA 70433

**Court of Appeal First Circuit**
Clerk of Court
P.O. Box 4408
Baton Rouge, LA 70821-4408

**Kathryn Landry**
*Special Appeals Counsel*
IEYOUB & LANDRY, L.L.C.
P.O. Box 82659
Baton Rouge, Louisiana 70884
Telephone No. (225) 766-0023
Facsimile No. (225) 766-7341

**Gerald Dahlem #384259**
Avoyelles Correctional Center
Cajun 3-D2
1630 Prison Road
Cottonport, LA 71327

Baton Rouge, Louisiana, this **22nd day** of **June**, 2015.

*Virginia Listach*

**Virginia Listach (#19011)**

**SWORN TO AND SUBSCRIBED** before me at Baton Rouge,
Louisiana this 22 day of June 2015.

*Harold W. Isadore*

NOTARY PUBLIC/NO. 59634

HAROLD W. ISADORE
NOTARY PUBLIC
NOTARY #59634
STATE OF LOUISIANA
My Commission is
for Life

2

**EXHIBIT G**

**REHEARING AND ORIGINAL BRIEF
FILED BY PETITIONER**

INTO THE

LOUISIANA SUPREME COURT

---

DOCKET NO. -2014-KO-1555

---

GERALD WAYNE DAHLEM
*APPELLANT*

VERSUS

STATE OF LOUISIANA
*APPELLEE*

---

**DIRECT APPEAL, DERIVED FROM;**

22ND JUDICIAL DISTRICT COURT, PARISH OF WASHINGTON

DOCKET NO. 12-CR8-115995, HONORABLE WILLIAM J. CRAIN PRESIDING;

ALSO

FIRST CIRCUIT COURT OF APPEALS, DOCKET NO. 2013-KA-0577;

HONORABLE KUHN, HIGGINBOTHAM, AND THERIOT PRESIDING

---

*APPLICATION FOR A REHEARING*

---

CERTIORARI WAS GRANTED; MARCH 27, 2015

AN AFFIRMED JUDGMENT WAS RENDERED; MARCH 15, 2016

Respectfully Submitted, _____

Gerald Wayne Dahlem # 384259
Avoyelles Correctional Center C-3 D-2
1630 Prison Road
Cottonport, La. 71327

**(CRIMINAL)**

## JURISDICTION

Jurisdiction is provided to this Honorable Court pursuant to the provisions set forth in **Article V, Section 5, of the Constitution of the State of Louisiana of 1974,** as amended granting the Supreme Court control of, and general supervisory jurisdiction over cases arising within the State of Louisiana

## INTRODUCTION

NOW INTO COURT comes, Gerald Wayne Dahlem, appellant, now "Petitioner" and *pro-se*, who respectfully petitions this Honorable Court for a rehearing of his respectfully submitted Supervisory Writ of Judicial Review, along with his assisted counsel's Supervisory Writs, filed by appointed counsel, Virginia B, Listach, "Professor" with the **Southern University Legal Clinic.**

**RULE X CONSIDERATIONS, 1,2,3,4, & 5.**

Petitioner received and viewed the judgment rendered in his case, an affirmation, and has come to the conclusion that appointed counsel's brief, filed on behalf of the Appellant/Petitioner was not considered. There are several facts of law and discussion, that this Honorable Court did not address in their judgment. Southern University Law Clinic argued several other issues that the Appellant/Petitioner did not. Therefore, request is made for a rehearing of his brief, along with the brief submitted by Virginia B. Listach, appointed counsel, with the Southern University Law Clinic. (a copy of the appointed counsel's brief is attached)

After, a thorough review of the judgment rendered in this case, it has come to the Petitioner's attention, that there are in fact several erroneous interpretations, and applications of law, that need to be addressed.

Therefore, Petitioner has decided to include in this petition/application, an opposition to the judgment rendered. In this opposition, the Petitioner will address the issues as they chronologically appear, and some of the errors, will be addressed with case law citing, almost all of the citing comes from *Cage v. Louisiana,* U.S., 111 S. Ct. 328, L.Ed.2d, (1990).

Petitioner will try to keep this opposition to the judgment, as concise as possible, and strictly to the point, but, Petitioner must get his point across, that a rehearing is required.

2

## OPPOSITIONS TO ERRORS IN JUDGMENT

**ERROR IN JUDGMENT ONE: IMPLIED "ACQUIESCENCE"**

At the onset of trial, during voir-dire, and throughout the entire trial proceedings, Petitioner remained totally silent, and was unaware of his constitutionally guaranteed right to a twelve person jury composition for trial. The First Circuit Court of Appeals, along with this Honorable Court, stated that the Petitioner "acquiescence" in picking the jury, and failed to contemporaneously object, when the trial judge stated "we are here today to pick six people to decide this case." The implied "acquiescence" by the courts is "fortuitous."

Now, Petitioner will elaborate on the terminology of "acquiescence," acquiescence is equivalent to assent inferred from silence **with knowledge**. Petitioner had no knowledge of his constitutionally protected guaranteed right, to a twelve person jury forum for trial, therefore, inaction was not knowingly inferred during the performance, of such act.

If any question of fact or liability be conclusively presumed against him, this is not due process of law. The question of fact here is: did the Petitioner have knowledge of his constitutionally guaranteed right to a twelve person jury trial, something this Honorable Court cannot prove beyond a reasonable doubt, due to a silent record. In fact the trial judge did not interrogate petitioner or counsel, at any point in time, concerning the proper jury forum.

Now, the courts have taken the question of fact, (knowledge of constitutional right) and conclusively presumed it against him. This in its purest form, is not, due process of law.

With this reasoning, the courts have created a new constitutional violation, a Fifth, Sixth and Fourteenth Amendment violation of the Constitution of the United States, to procedural due process, and a fair trial.

Ultimately here, petitioner did not posses the facts or knowledge of his constitutionally protected guaranteed right to a twelve person jury composition for trial. So, the fact remains that in order to assent by acquiescence, one has to knowingly, know, what he is assenting to, by inferred acquiescence. Something, that according to the record, cannot be established, and therefore cannot be conclusively presumed against the petitioner.

In reality, the courts cannot prove the petitioner acquiescence, because, the court cannot prove that the petitioner had knowledge of his constitutionally protected and guaranteed right to a twelve person jury trial.

In affirming the First Circuit Court of Appeals ruling by the Louisiana Supreme Court, this Court has availed of another United States Constitutional violation, specifically, a Fifth and Sixth Amendment violation, right to remain silent and a fair trial.

The Fifth Amendment of the United States Constitution, as well as provisions in many state constitutions and laws, prohibit the government from requiring a person to be a witness against himself involuntarily or to furnish evidence against himself.

As the Petitioner exercised his right to remain silent during voir-dire and throughout the entire trial, the First Circuit Court of Appeals, along with this Courts affirmation, has taken the exercise of this right, by the Petitioner, and has conclusively and involuntarily used it as evidence against him, by stating that the petitioner "acquiescence" in the voir-dire process, thereby, waiving his right to a twelve person jury trial.

It is the burden of the government to accuse and carry the burden of proof of guilt. The Petitioner cannot be compelled to aid the government in this regard.

By the state using his silence against him, conclusively and involuntarily, it deprived him of the right, that no person shall be deprived of life, liberty, or property without due process of law.

Here the state, is using my Fifth Amendment right to remain silent, to violate my Fifth Amendment right to due process of law, this is a double standard, violation.

**ERROR IN JUDGMENT TWO: FAILURE TO CONTEMPORANEOUSLY OBJECT**

The First Circuit Court of Appeals, along with this Honorable Court, stipulated that Petitioner "waived" this constitutional violation, by not contemporaneously objecting, at the time, the incident occurred.

In order for a person to "waive" a right, he or she must do it **knowingly**, and be **possessed of the facts,** something the Petitioner did not have knowledge of, due to the fact that, the trial judge did not engage the Petitioner or his counsel in any type of colloquy, dialogue, or discussion, regarding the **proper** jury composition, or petitioner's constitutional rights.

Therefore, how could the Petitioner know that he was required to contemporaneously object to the proceedings, if in fact, he did not posses the knowledge that the proceedings were in fact, illegal and unconstitutional. Then again, how would the Petitioner know that he was required, to file a motion in arrest of judgment, if in fact, he had no knowledge of the illegal proceedings, or constitutional violations, at the time of the occurrence.

4

Petitioner now cites; *Cage v. Louisiana,* U.S., 111 S. Ct. 328, L.Ed.2d, (1990). of which in pertinent part states;

"Petitioner acknowledges that his trial counsel did not object to either of the constitutionally erroneous jury instructions, but that failure is excusable. La.C.Cr.P. art. 930.4.

The *Cage* erroneous instruction has been used for years by district courts in Louisiana, and when objected to, its use has been affirmed on appeal. *State v. Cage,* 554 So.2d. 39 (La. 1989) ; *State v. Messiah,* 538 So.2d 175 (La. 1988), cert. denied, U.S., 110 S. Ct. 880, L.Ed.2d (1990) ; *State v. Rault,* 445 So.2d 1203 (La. 1989), cert, denied, 469 U.S. 873, 105 S. Ct. 225, 83 L.Ed.2d. 154 (1984) ; *State v. Taylor,* 410 So.2d. 224 (La. 1982) ; *State v. Monroe,* 397 So.2d. 1285 (La. 1981), cert. denied, 463 U.S. 1229, 103 S. Ct. 3571, 77 L.Ed.2d. 1411 (1982) ; *State v. Stramiello,* 392 So.2d. 425 (La. 1981) ; *State v. West,* 552 So.2d. 478 (La. App. 4th Cir, 1989), writ granted, 560 So.2d. 33 (1990) ; *State v. Washington,* 522 So.2d. 628 (La. App. 4th Cir. 1988), writ denied, *Bently v. State,* 523 So.2d.1321 (La. 1988), cert. denied, U.S., 109 S. Ct. 94, 102 L.Ed.2d> 70 (1980) ; *State v. Miller,* 489 So.2d. 268 (La. App. 4th Cir. 1986), writ denied, 496 So.2d. 1030 (La. 1986).

Accordingly, any objection for the use of the erroneous jury instruction would have been frivolous. *Hernandez v. Beto,* 443 F.2d. 634 (5th Cir. 1971). Also, "[t]he basis for objecting to [the] charge did not come until *Cage v. Louisiana* was decided." *State ex rel. Burnham v. Blackburn,* 498 So.2d. 656, 657 (La. 1986). See *Baldwin v. Blackburn,* 653 F.2d. 942, 950-951 (5th Cir. 1981). Further support for this argument can be found in *O'Conner v. Ohio,* 385 U.S. 92, 87 S. Ct. 252, 17 L.Ed.2d. 189 (1966), wherein the Court stated

> "We hold that in these circumstances the failure to object in the
> state courts cannot bar the petitioner from assisting this federal
> right ..Defendants can no more be charged with anticipating the
> *Griffin [v. California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L.Ed.2d. 106
> (1965) ] decision then can the States ..... Thus, his failure to object
> to a practice which Ohio had long allowed cannot strip him of his
> right to attack the practice following its invalidation."

Id., 382 U.S. at 93, 17 L.Ed.2d. at 191. This is also true for the erroneous La.C. Cr. P. art. 804 instruction. *Mack,* supra, and *Vessel,* supra, were handed down after petitioner's conviction.

Another basis supporting the argument that the failure to object is excusable, is found in the Official Revision Comment (b), appended to La. C.Cr.P. art. 841, which states, *inter alia,* "[o]f course, certain rights are so basic that they can be raised for the first time...in an application for writ of habeas corpus ([La. C.C,P.] Art. 362....").

Article 362, provides, inter alia:

"If the person in custody is being held by virtue of a court order, he shall be discharged if:

........
(9) He was convicted without due process of law.

In *State v. Terry,* 458 So.2d. 97, 100 (La. 1984) the Supreme Court held that "these articles of the Code of Criminal Procedure on post-conviction relief merely implement the Constitutionally authorized right, of a court to issue the writ of habeas corpus, La. Const. Art. 1, § 21 and Art. 5, §2." Because *Cage* holds the giving of the erroneous instruction is a denial of due process, which is the basis of petitioner's claim herein, no objection is required. *State v. Nelson,* 379 So.2d 1072 (La. 1980). See also: *Tasco v. Butler,* 835 F.2d 1120, 1123 (5th Cir. 1988; *Clark v. Blackburn,* 632 F.2d 531, 533 n.1 (5th Cir. 1980)."

Now, the First Circuit Court of Appeals, along with this Courts affirmation, concluded that the Petitioner was erroneously tried before a six-person jury, that is well established, with the foresaid cases cited, Petitioner has shown that no contemporaneous objection is required or needed, and as for the acquiescence, petitioner has shown that this did not happen and the state has no way to prove it, due to a silent record. For these reasons alone, the Louisiana Supreme Court should grant this instant rehearing. In the interest of justice and judicial economy, this case should be concluded as was the first intention of the Louisiana Supreme Court when they granted certiorari on March 27, 2015, to rule on the jury composition.

**ERROR IN JUDGMENT THREE: JUDGE KUHN'S ERRONEOUS INTERPRETATION AND PERCEPTION OF LAW**

In Judge Kuhn's view, "La. R.S. 14:98(E)(4)(a) does not create a new crime entitling a defendant to a trial by a twelve-person jury" in this aspect Judge Kuhn is totally correct, that it does not create a new crime, but, it does create a new punishment, "shall be imprisoned at hard labor" this is exactly what dictates the size of the jury here in Louisiana, in fact there are two different legal law references that dictate this application of law, one being the Constitution of the State of Louisiana, Article 1, § 17, the other, Louisiana Code of Criminal Procedure Art. 782, both of these legislatively embodied provisions dictate and direct the courts, on what size jury will need to be empanelled.

There is no specific crime that dictates jury forum, but, there is a specific punishment, that dictates jury forum, here Judge Kuhn's view is distorted and misleading.

6

**ERROR IN JUDGMENT FOUR: ERRONEOUS APPLICATION OF LAW**

In the case sub-judice, the Supreme Court, along with the First Circuit Court of Appeals, keep relying on the _Jones_ and _Brown_ judgments that were rendered, but these cases are totally the opposite of the case at bar.

In _Jones_ and _Brown_, both defendants were tried by more jurors than required by law, this was not illegal, in this instance, but, if you failed to empanel the correct number of jurors required by law, this becomes illegal. This is where harmless error analysis comes into play, if you are given more than enough jurors to decide you case, it is non-prejudicial, but, when you are given less than the correct number of jurors, required by law, it becomes prejudicial.

There is no way that not having enough jurors, mandated by law, to decide you case, is harmless error, in fact, it is a devastating error.

Petitioner cited: _State of Louisiana v. Curt E. Johnson,_ 52 So.3d 273; La. App 3rd Cir. (2010) in his brief, but unfortunately, this Honorable Court has seemed to have overlooked it, in this case, which is identical to the case at bar, the defendant did not contemporaneously object, and the state didn't try to implicate that he acquiescence in picking the jury, in fact this case was considered **patent error on the face of the record.** Here, is the exact same case as the Petitioner's.

In fact Petitioner became aware of the constitutional jury violation when he was transported to Avoyelles Correctional Center in February of 2013, where upon his arrival, he was housed in Cajun-3 D-2, the very same tier that Curt E. Johnson was housed in. So, this is when the Petitioner discovered the jury issue, and the Johnson case.

**ERROR IN JUDGMENT FIVE: DUE PROCESS VIOLATION**

In this Courts opinion, on pg.6, 2 paragraph, last sentence, this Court iterates on the states emphasis of "overwhelming evidence" here this Court is contradicting of itself:

Louisiana's harmless-error rule is set forth in La.C.Cr.P. art.921. In _State v. Gibson,_ 391 So.2d 421 (La. 1980), the Louisiana Supreme Court adopted the federal harmless error rule, as stated and applied in _Chapman v. California,_ 386 U.S. 18, 87 S. Ct. 624, 17 L.Ed.2d 705 (1967), as the standard most compatible with its view of its own criminal appellate jurisdiction, noting that _Chapman's_ rule is "more consistent with the notion that all accused persons are entitled to a fair trial, even if guilty." _Gibson, supra,_ at 927.

The Supreme Court cautions that:

> "Injudicious application of the harmless error doctrine tends 'to shield from attack errors of a most fundamental nature and thus to deprive many defendants of basic constitutional rights,' *Harrington v. California*, 395 U.S. 250, 257, 89 S. Ct. 1726, 23 L.Ed.2d 284, 289-90 (1969) (Brennan, J. dissenting) Our Court has recognized that absent reversal, certain legal practices may continue unabated.(Citation Omitted). The *Chapman* court pointed out that a state court may err by giving 'emphasis, and perhaps overemphasis', upon the court's view of "overwhelming evidence," '386 U.S. 18, 23, 87 S. Ct. 824,827, 17 L.Ed.2d 705, 710 (1967)." Id. 391 So.2d, at 427

However, in *State v. Gibson*, 391 So.2d 421 (1980), this Court clearly identified that while jurisdiction extends to questions of law in evaluating convictions based on constitutional errors to determine harmlessness, "...it does not permit a court to *substitute* for the verdict its judgment of what the jury *would* or *should* have *decided* in the absence of the error.

Furthermore, here this Court again, takes the question of fact and conclusively presumes it against him, this is not due process of law. The question of fact here is: guilt and this Court has conclusively presumed it against him. "overwhelming evidence"

**ERROR IN JUDGMENT SIX: DUE PROCESS VIOLATION**

The Louisiana Supreme Court is trying to justify its position and ruling by providing that the original sentence that was imposed at hard labor, was vacated, and the Petitioner was adjudicated to be a Multiple Offender, and given a (25) twenty-five year hard labor sentence, thereby, typically making the original conviction and sentence moot.

This is truly an erroneous interpretation and application of law, the direct appeal was granted on the Fourth Offense D.W.I. charge, not the Multiple Offender adjudication. This is putting the "buggy in front of the horse" its not feasible or justifiable.

Furthermore, due process would have dealt with the conviction, that lead to the multiple offender adjudication first, to dispose of any error present, before jumping the gun, with an illegal proceeding, and furthering it, to another illegal proceeding. You cannot take a second illegal proceeding to justify the first illegal proceeding, because the second is based on the first.

Another problem with this interpretation and application is that the First Circuit Court of Appeals affirmed that the Petitioner should have been tried by a twelve person jury, thereby, confirming also, that the D.W.I. conviction is constitutionally infirm, a conviction that a multiple offender adjudication cannot be legally based upon.

8

**ERROR IN JUDGMENT SEVEN: UNITED STATES SIXTH AMENDMENT**

**VIOLATION:**

Unconstitutionally being tried before a six-person jury when twelve were in fact required

by the constitution of Louisiana, violated my United States Sixth Amendment right to a fair trial.

## CONCLUSION

**PREMISES CONSIDERED:**

Petitioner, request that this Honorable Court conduct a rehearing, on his brief, along with

the appointed counsel's brief, that is attached. This type of ruling needs to be made, concerning

the twelve-person jury issue.

## PRAYER

Petitioner humbly prays that this Honorable Court see the merits of his opposition, and

continue to conclude this case, granting the Petitioner relief.

Respectfully submitted, *Gerald W. Dahlem*

Gerald W. Dahlem # 384259
Avoyelles Correctional Center
1630 Prison Road
Cottonport, La. 71327

SUPREME COURT

STATE OF LOUISIANA

DOCKET NUMBER # _____

STATE OF LOUISIANA
*APPELLEE*

VERSUS

GERALD WAYNE DAHLEM
*APPELLANT*

22nd JUDICIAL DISTRICT COURT, PARISH OF WASHINGTON,

DOCKET # 12-CR8-115995, HONORABLE WILLIAM J. CRAIN PRESIDING;

FIRST CIRCUIT COURT OF APPEAL, DOCKET NUMBER 2013-KA-0577,

HONORABLE KUHN, HIGGINBOTHAM, AND THERIOT PRESIDING.

APPLICATION FOR SUPERVISORY WRIT OF JUDICIAL REVIEW

Respectfully Submitted

_____

Gerald Wayne Dahlem
D.O.C. # 384259 , Cajun 3 – D2
Avoyelles Correctional Center
1630 Prison Road
Cottonport, Louisiana 71327

(CRIMINAL)

Appellant, *pro se*

## TABLE OF CONTENTS.

Table of Authorities...................................................................................2

Introduction .............................................................................................4

Statement of Rule X Considerations ........................................................4

Jurisdiction ..............................................................................................4

Law and Discussion.................................................................................. 4

Assignment of Error One:
Appellant was unconstitutionally tried before a six-person jury ...............5

Assignment of Error Two:
Insufficient evidence of predicate D.W.I. offenses ..................................7

Assignment of Error Three:
Prosecutorial Misconduct.........................................................................9

Assignment of Error Four:
Prosecutorial Misconduct.......................................................................10

Assignment of Error Five:
Excessive Sentence ................................................................................11

Conclusion ............................................... .............................................12

Prayer .....................................................................................................12

Appendix ...................................................................................attached

## TABLE OF AUTHORITIES.

**APPELLANT'S CASE, AND PREDICATE OFFENSES**

Direct Appeal
First Circuit Court of Appeal
Docket Number # 2013-KA-0577 ............................................................ 4

Fourth-Offense D.W.I.
22nd Judicial District Court,
Parish of Washington
Docket Number # 12-CR-8-115995 ....................................................... 4

Third-Offense D.W.I.
22nd Judicial District Court,
Parish of Washington
Docket Number # 10-CR1-108537 .........................................................5

First Offense D.W.I.
22nd Judicial District Court,
Parish of Washington
Docket Number # 03-CR-89114 .............................................................9

First Offense D.W.I.
24th Judicial District Court,
Parish of Jefferson
Docket Number # F1356018 .............................................................. 7, 8

**LOUISIANA CONSTITUTION**

Article V, Section 5 ................................................................4

Article I, Section 17 ..........................................................4, 5

**RULES OF COURT**

Rule X (1.)(a)(1.) ............................................................ 4, 12

Rule X (1.)(a)(2.)...............................................................4, 12

Rule X (1.)(a)(3.) ............................................................. 4, 12

Rule X (1.)(a)(4.) ............................................................. 5, 12

**LOUISIANA JUDICIAL DECISIONS**

*State v. Brown*, 2011-1044
     (La. 3/13/12), 85 So.3d 52 ............................................ 5

*State v. Johnson,* 10-196, 52 So.3d 273,
     (La. App. 3rd Cir. 11/24/10) ........................................ 5, 6

*State v. Nedds*, 364 So.2d 588 (La. 1978) ............................ 6

*State v. Jones,* 05-226
     (La. 2/22/06), 922 So.2d 508 ......................................6

*State v. Westbrook,* 392 So.2d 1043, 1045
     (La. 1980)(on rehearing) ........................................7, 8

*State v. Pitre*, 532 So.2d 424, 426 (La. App. 1st Cir. 1988),
     writ denied, 538 So.2d 590 (La. 1989) .............................. 7

*State v. Crosby*, 338 So.2d 584 (La. 1976) ...........................11

*Burgos v. Hopkins,* 14 F. 3d 787, 789 (2nd Cir. 1994)................13

*Estelle v. Bronson,* 872 F2d 20, 21-22 (2nd Cir. 1989)..............13

**SUPREME COURT OF THE UNITED STATES**

*Napue v. Illinois*, 320 U.S. 264, 269,
     79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959) .............................9

*Haines v. Kerner,* 404 U.S. 519 (1972)................................12

*Conley v. Gibson,* 355 U.S. 41 (1957)................................13

**LOUISIANA REVISED STATUTES**

Louisiana Revised Statutes 14:98 (E)(4)(a) ........................... 5

Louisiana Revised Statutes 14:98 (D) ................................. 5

Louisiana Revised Statutes 15:529.1 ................................. 9

Louisiana Revised Statutes 15:529.1(D)(1)(b) ....................... 11

**CODE OF CRIMINAL PROCEDURE**

C.Cr.P Art. 871. A., B. (1)(a),(b)(i)(ii), (2)(a), (C)................. 9

## JURISDICTION.

Jurisdiction is provided to this Honorable Court pursuant to the provisions set forth in **Article V, Section 5, of the Constitution of the State of Louisiana of 1974**, as amended granting the Supreme Court control of, and general supervisory jurisdiction over cases arising within the State of Louisiana.

## STATEMENT OF RULE X CONSIDERATION.

The Appellant requests for this Honorable Court to consider this application for judicial review, as it conforms with the guidelines established in Rule X of the Supreme Court, under Subsections: (1.)(a)(1.), (1.)(a)(2.), (1.)(a)(3.), (1.)(a)(4.).

## INTRODUCTION.

NOW INTO COURT, comes the Appellant, Gerald Wayne Dahlem, *pro se*, who respectfully applies to this Honorable Court for a Writ of Supervisory Judicial Review, of his Direct Appeal, in **Docket Number # 12-CR-8-115995**, in the 22nd Judicial District Court, Parish of Washington, Honorable Judge William J. Crain presiding. The Appellant's conviction, habitual offender adjudication and sentence were affirmed by the First Circuit Court of Appeal on **Docket Number # 2013-KA-0577**.

## STATEMENT OF CASE, LAW, AND DISCUSSION.

The Appellant asserts that the First Circuit Court of Appeal erroneously affirmed his conviction and sentence. In doing so, the First Circuit has created a conflicting decision, by allowing a conviction requiring a twelve-person jury to stand uncorrected, when he was unconstitutionally tried before a six-person petit jury. *See* **Rule X (1.)(a)(1.), Supreme Court**.

While it has been clearly established by this Honorable Court that it is harmless error, when a greater number of jurors is used to try a case requiring a petit jury, however, this Court has not permitted a conviction to stand where a petit six-person jury was used to obtain a conviction that required a twelve-person jury. *See* **Rule X (1.)(a)(3.), Supreme Court**.

The Appellant's case is the opposite scenario. A case where a lesser number of jurors were used to convict a defendant where a greater number of jurors is required has not been presented before this Honorable Court, therefore making this instant case, a case of first impression. *See* **Rule X (1.)(a)(2.), Supreme Court**.

For this Court to allow the Appellant's conviction to stand, would create bad case law, therefore he cautions this Court to carefully consider his Writ application before making any

4

decisions which would adversely affect the application of **Article I, Section 17 of the Constitution of the State of Louisiana of 1974.** *See* **Rule X (1.)(a)(4.), Supreme Court.**

This should have been discovered as error patent on the record.

### ASSIGNMENT OF ERROR ONE:

### APPELLANT WAS UNCONSTITUTIONALLY

### TRIED BEFORE A SIX-PERSON JURY.

### RULE X CONSIDERATIONS SEC. (1.)(a)(1.)(2.)(3.)(4.)

In his first assignment of error, the Appellant asserts that the First Circuit erred when it allowed his conviction of fourth-offense D.W.I. stand, when it is required by the Constitution of the State of Louisiana that he be tried by a twelve-person jury.

**Louisiana Revised Statutes 14:98 (E)(4)(a) provides:**

> If the offender has previously been required to participate in substance abuse treatment and home incarceration pursuant to Subsection D of this Section,[1] the offender shall not be sentenced to substance abuse treatment and home incarceration for a fourth or subsequent offense, but **shall be imprisoned at hard labor** for not less than ten nor more than thirty years, and at least three years of the sentence shall be imposed without benefit of suspension of sentence, probation or parole. **(Emphasis Added)**

The Appellant contends that according to the information presented by the State in this case, that he has participated in substance abuse treatment and home incarceration in **Docket Number # 10-CR1-108537** for a third-offense D.W.I. conviction, therefore it is mandated by the State's Constitution that he be tried before a twelve-person jury.

**Louisiana Constitution, Article I, Section 17**, in pertinent part provides:

> A. Jury Trial in Criminal Cases.
> A criminal case in which the punishment may be capitol shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. **A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. ... (Emphasis Added)**

In its erroneous decision, the First Circuit cited *State v. Brown*, **2011-1044 (La. 3/13/12), 85 So.3d 52**, where this Honorable Court found the error of trying a six-person jury offense before a twelve-person jury to be a trial error subject to harmless error analysis, rather than a structural or jurisdictional defect in the proceedings.

The Appellant contends that his situation is the opposite of *Brown*, in that a greater number of jurors were required. He further contends that his situation is exactly the same as the defendant in *State v. Johnson*, **10-196, 52 So.3d 273, 2010 La. App. LEXIS 1604 (La. App. 3rd**

---

[1] La. R.S. 14:98(D) sets forth the penalty for third-offense D.W.I.

Cir. 11/24/10), where the conviction was vacated and remanded for a new trial. The *Johnson* court expressly stated:

> "Although the Louisiana Supreme Court partially abrogated the decision in *State v. Nedds*, 364 So.2d 588 (La. 1978), in its more recent decision *State v. Jones*, 05-226 (La. 2/22/06), 922 So.2d 508, upholding a conviction by an unanimous verdict of twelve in a case requiring only six jurors, the law has not changed regarding the impropriety of trying a criminal defendant before a jury of six when a jury of twelve is required. Because Defendant, charged with fourth offense DWI, was previously required to participate in substance abuse treatment and home incarceration the law mandates he be tried before a jury of twelve persons. As Defendant was tried before a jury of only six persons contrary to the provisions of our State Constitution requiring twelve jurors for his offense, his conviction is null and is hereby set aside; his sentence is vacated; and the matter is remanded for a new trial.

*Johnson*, 52 So.3d at 273 [p.3.]

In the *Jones* decision, the Louisiana Supreme court addressed whether a D.W.I. case, where a greater number than required jurors unanimously voted to the convict a defendant is an inherently prejudicial structural error which automatically requires reversal, or whether it falls within the vast category of errors which are subject to harmless error analysis and which only warrant reversal only where the defendant is actually prejudiced. The *Jones* court took special notice of Justice Dennis' dissent from *Nedds*, 364 So.2d 588 (La. 1978), where it stated:

> "... This position would be justified in those cases where a defendant is convicted by a jury composed of fewer persons than the law mandates. ..."

*State v. Jones*, 922 So.2d at 513

The Appellant respectfully presents that his case is exactly the kind of situation that should be considered a structural defect, according to the decisions made by the *Jones* and *Nedds* courts.

The Louisiana Constitution requires that ten members of the jury concur for a verdict to be rendered, where the punishment is *necessarily at hard labor*. A jury of six, when the sentence upon conviction is necessarily punishment at hard labor, leaves four votes missing – that is, if all six vote unanimously to convict. However, a six person unanimous verdict, when twelve were constitutionally required, undermines the need for ten out of the twelve juror votes to convict. If four or five out of the missing six were to vote for a verdict of not guilty, then a defendant, or the Appellant in this case, would have been set free with no punishment imposed. The same could be said if three of the missing six were to vote for a verdict of not guilty. Thus prejudice is found in the fact that even with a unanimous six-person jury verdict, when the Louisiana Constitution required a jury of twelve persons, there can be no confidence in the outcome of the six person verdict.

Simply stated, the Appellant's case must be deemed to have been a structural defect, one that cannot be remedied absent overturning the conviction and remanding for a new trial.

The Appellant emphasizes the need for this Honorable Court to address this unresolved issue, because it conflicts with previous decisions issued by this Court.

**ASSIGNMENT OF ERROR TWO:**

**INSUFFICIENT EVIDENCE OF PREDICATE D.W.I. OFFENSES.**

**RULE X CONSIDERATIONS SEC. (1.)(a)(1.)(2.)(3.)(.4)**

In his second assignment of error, the Appellant asserts that the First Circuit erred when it found that there was no merit to his claim concerning the sufficiency of the evidence for the predicate D.W.I. offenses.

Not only has the State failed to properly identify the Appellant as the same person convicted previously in Jefferson Parish, but has also supplied insufficient evidence of documentation, for the following reasons to wit:

> 1. Copy of the bill of information is unsigned by the Appellant, no finger prints, no photograph, and no certified signature by the clerk of court, also contains the wrong driver's license number.
>
> 2. The extract of minutes, contains the wrong driver's license number and is not signed by any one at all, not even the minute clerk.
>
> 3. The waiver of constitutional rights form contains no initials by the allegedly waived rights as required, has no finger prints, or certified signature by the Appellant, and no page numbers are present to conclude this is one complete document, as a whole.

The Appellant respectfully presents that his driver's license number is **not identical** to the driver's license number listed on the documents the District Court relied upon to determine him to be one and the same person.

In Louisiana, proof that a person of the same name has been previously convicted does not constitute prima facie evidence that the two persons are the same. The state must additionally offer proof that the accused is the same person as the defendant previously convicted. Various methods may be used to prove that the defendant on trial is the same person whose name is shown as the defendant in the evidence of a prior conviction, such as testimony of witnesses, by expert opinion as to the fingerprints of an accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver's license number, sex, race, and date of birth. The mere fact that the defendant has the same name does not constitute sufficient evidence of identity. See *State v. Westbrook,*

392 So.2d 1043, 1045 (La. 1980)(on rehearing); *State v. Pitre*, 532 So.2d 424, 426 (La. App. 1st Cir. 1988), writ denied, 538 So.2d 590 (La. 1989).

When this Honorable Court emphasized on the evidence of *identical driver's license number, sex, race, and date of birth*, it was meant to be taken into context as a whole. The usage of commas, as well as the word "and" is clearly intended to indicate the conjunctive in this means of identification, therefore requiring all this information to be identical.

The Appellant respectfully presents that the first and second page of Louisiana State Police, Trooper Dan Manning's arrest report reveals Appellant's **correct driver's license number, 5315517** as it is transcribed and typed on these pages.

The documents used by the District Court to verify that the Appellant and the defendant previously convicted are one in the same, uses driver's license number **5515517**, this is not a typographical error, due to every document, from Jefferson Parish contains this number.

While the State presented the testimony of Louisiana Department of Public Safety and Corrections, Department of Probation and Parole Officer Aaron Moran, identifying the Appellant in court as the defendant previously sentenced to his supervision for probation in connection with the predicate third-offense D.W.I., the bill of information for that offense lists the incorrect docket number.[2] Officer Moran further testified that the first predicate offense used to determine if he was a third offender, was a first-offense D.W.I. conviction that was allegedly obtained in Jefferson Parish. However, the Appellant respectfully presents that the driver's license number listed on every document presented as evidence contains someone else's driver's license number.

Officer Moran, did not personally supervise the Appellant for the alleged first-offense predicate conviction, in Jefferson Parish, and thus should not have been permitted to testify concerning the Appellant's identification in that offense.

Officer Moran's complete testimony was objected to on the grounds that there was not a proper foundation presented to affiliate Officer Moran and the Appellant in 2002, the alleged conviction date, of the Jefferson Parish offense.

As for, Officer Moran's testimony for identification of the Appellant in the alleged Jefferson Parish offense, Appellant met Officer Moran 1/26/12 at a revocation hearing in Washington Parish court house, for the first time ever, so Officer Moran can't testify to somebody's identity (10) ten years prior to meeting the individual, that is absurd.

---

[2]  See Bill of Information, Docket Number # 10-CR1-108537, Washington Parish.

8

The Appellant further asserts that in **Docket Number # 03-CR-89114**, in the Parish of Washington, the State could not use the Jefferson Parish predicate offense to properly identify him as the prior defendant, due to insufficient evidence. The documentation for the Jefferson Parish offense was deficient, in that not only did it have an incorrect driver's license number, but it also lacked fingerprints, sworn signature, and photograph, of the defendant in that case.

To allow this erroneous decision of having no merits, to stand, would undermine the need for **Article 871. A., B. (1)(a),(b)(i)(ii), (2)(a), (C)** of the Louisiana Code of Criminal Procedure.

Also, there was a post-conviction relief that was filed on the Appellant's third offense D.W.I. conviction challenging the identity of the alleged Jefferson Parish Offense, and it is now presently before this Honorable Court in docket number **2014-KH-111** filed on 1/14/2014.

Due to the Appellant filing this post-conviction, attacking the identity issues also, Officer Moran's testimony is irrelevant at this point.

### ASSIGNMENT OF ERROR THREE:

### PROSECUTORIAL MISCONDUCT.

### RULE X CONSIDERATIONS SEC. (1.)(a)(1.)(2.)(4.)

In his third assignment of error, the Appellant asserts that the First Circuit erred when it found that there was no merit to his claim concerning the false testimony of Officer Moran, which the District Attorney knew to be false, and allowed it to go uncorrected.

When a prosecutor allows a State Witness to give false testimony without correction, a conviction obtained as a result of that testimony must be reversed, if the witness's testimony could have reasonably affected the verdict, even though the testimony may be relevant to the credibility of the witness. Furthermore, fundamental fairness to the accused, i.e. Due Process is offended when the State, although not knowingly soliciting false evidence, allows it to go uncorrected as it appears. When false testimony has been given under such circumstances, the Defendant is entitled to a new trial, unless there is no reasonable likelihood that the alleged false testimony could have reasonably affected the outcome. *Napue v. Illinois*, **320 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)**.

The First Circuit found that because the Appellant failed to contemporaneously object to the accuracy of the challenged testimony, that the instant claim was not preserved for review.

Pages 142-147, of the typed trial transcripts, clearly prove the objections that were made, therefore, these claims were preserved for review.

9

Officer Moran testified that the bill of information for the third-offense D.W.I. identifies the Appellant as the defendant previously in the first-offense D.W.I. conviction out of Jefferson Parish. Officer Moran went on to state that the Jefferson Parish conviction was obtained on **Docket Number # F1360-18**. The Appellant respectfully presents that the correct information for the alleged Jefferson Parish offense is **Docket Number # F1356018**. Officer Moran, when presented with a copy of the third-offense bill of information, containing **Docket Number # F1360-18,** for the alleged Jefferson Parish offense, testified that **Docket Number # F1360-18** was same docket information on both bills.

The First Circuit finds that considering the other identifying information presented by the State, no substantial rights of the Appellant were affected by the typographical error. At this time, the Appellant contends that his substantial rights were affected because error clearly goes beyond the scope of typographical nature.

Officer Moran physically held both bills of information, and testified that the information on them matched, when they clearly do not. Because this false testimony was presented before a jury, which could not discern the difference between the documents, the Appellants rights were substantially affected when he was falsely identified as the defendant previously convicted in Jefferson Parish.

While the State had presented other information about identifying the Appellant as the defendant previously convicted in Jefferson Parish, that information is deficient, because it contains, as we discussed in Assignment of Error Two [pp. 7-8 this document] incorrect information about the driver's license number.

### ASSIGNMENT OF ERROR FOUR:

### INVALID PREDICATE USED FOR HABITUAL OFFENDER ADJUDICATION.

### RULE X CONSIDERATIONS SEC. (1.)(a)(1.)(2.)(4.)

In his fourth assignment of error, the Appellant asserts that the First Circuit erred when it found that there was no merit to his claim concerning the use of an invalid predicate conviction for theft to adjudicate him as a habitual offender under **Louisiana Revised Statutes. 15:529.1**.

The First Circuit found that because the Appellant failed to file a written response to the habitual offender bill of information, that he did not reserve this issue for review.

At the hearing, the Appellant plead guilty to the Habitual Offender bill of information, however, he expressly stated that he wished to preserve his rights to appeal the adjudication

10

pursuant to *State v. Crosby*, 338 So.2d 584 (La. 1976). However, the First Circuit, citing 15:529.1(D)(1)(b) stated that because the Appellant did not challenge his previous convictions by written motion, prior to the imposition of the sentence, that he may not raise them thereafter to attack the sentence.

The Appellant contends that if this is the case, then he was improperly denied of his right to attack the use of predicate convictions, when the District Court knowingly accepted his plea, when he verbally attempted to preserve his rights to appeal, because there would in effect be no such thing.

### ASSIGNMENT OF ERROR FIVE:

### EXCESSIVE SENTENCE,

### RULE X CONSIDERATIONS SEC. (1.)(a)(1.)(2.)(4.)

In his fifth and final assignment of error, the Appellant asserts that the First Circuit erred when it found his sentence to be illegally lenient. While the claim of excessive sentence was initially raised by the Louisiana Appellate Project, the Appellant shall respectfully bring this claim before this Honorable Court *pro se*.

The Appellant's contends that his sentence is not illegally lenient, because while the District Court failed to deny parole, he still falls within the greater end of sentencing spectrum, which is usually reserved for the worst kinds of offenders.

The statutory sentencing limits for a fourth-offense D.W.I. are excessive, despite what the legislature passes. It is a great departure from the sentence mandated for a first offense, when they are intrinsically the same offense. The only difference is the amount of times the offense has occurred, and while a number of offenses may have occurred over a long period of time for certain offenders, some offenders may have accumulated up to a fourth offense within a matter of weeks. In view of the harm done to society, it is a shock to one's sense of justice that a person would receive a twenty-five year sentence for a D.W.I. conviction; where there was no harm done to society, not even as much as a fender bender, just an initial traffic stop, regardless of how many times that person has been previously convicted for D.W.I.

This concludes the Appellant's assignment of errors.

11

## CONCLUSION.

The Appellant has respectfully presented in this Writ application his assignment of errors, of which entitle him to be sentenced to a lesser and included offense, due to insufficient evidence, or to a reversal of his conviction, and remand for a new trial, due to the unconstitutional jury composition. Additionally, the Appellant has asserted reasons why this Honorable Court should grant this Writ Application under the Rules of the Supreme Court.

The First Circuit has created a conflicting decision, by allowing a conviction requiring a twelve-person jury to stand uncorrected, when he was unconstitutionally tried before a six-person petit jury. *See* **Rule X (1.)(a)(1.), Supreme Court**. While it has been clearly established by this Honorable Court that it is harmless error, when a greater number of jurors is used to try a case requiring a petit jury, however, this Court has not permitted a conviction to stand where a petit six-person jury was used to obtain a conviction that required a twelve-person jury. By affirming the Appellants conviction, the First Circuit has attempted to overrule or modify the controlling precedent decisions of this Honorable Court. *See* **Rule X (1.)(a)(3.), Supreme Court**. The Appellant's case at hand is a case of first impression. Being that it is the opposite scenario than what has been established by this Honorable Court, it is a significant, yet unresolved issue where a lesser number of jurors were used to convict a defendant where a greater number of jurors is required. So far, a case like this has not been presented before this Honorable Court. *See* **Rule X (1.)(a)(2.), Supreme Court**. The decision that was issued by the First Circuit Court of Appeal is an erroneous interpretation of **Article I, Section 17 of the Constitution of the State of Louisiana of 1974** and it would cause material injustice and significantly affect the public interest if it were allowed to stand uncorrected. *See* **Rule X (1.)(a)(4.), Supreme Court**.

This Honorable Court, after carefully considering the claims raised in this Application for Supervisory Writ of Judicial Review should reverse the Appellant's conviction, and remand this matter for a new trial or to be sentenced to a lesser included offense.

## PRAYER

The Appellant, proceeding in the above captioned case in pro-se' capacity, respectfully prays that this application for Supervisory Writ of Review and the arguments raised therein be liberally and broadly construed, and that this Court consider his pro-se deficiencies according to the standards set forth by the U.S. Supreme Court, See: *Haines v. Kerner*, **404 U.S. 519 (1972)**,

and *Conley v. Gibson*, **355 U.S. 41 (1957)**. Since applicant is acting pro-se', it is asked that this Honorable Court "read his supporting arguments liberally" and "interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, **14 F.3d 787, 789 (2nd Cir. 1994)**, as "pro-se' allegations must be read in a liberal fashion" and "however in artfully pleaded must be held to less stringent standards." *Estelle v. Bronson*, **872 F2d 20, 21-22 (2nd Cir. 1989)**.

Furthermore, the Appellant prays that the Honorable Supreme Court hereby GRANT his Application for Supervisory Writ of Judicial Review, vacating his conviction and sentence REMANDING this matter for a new trial, or alternatively, REMANDING with instructions to be sentenced to a lesser included offense.

Respectfully submitted,

*Gerald Dahlem*

Gerald Wayne Dahlem   *PRO-SE*

13

Exhibit H.

Rehearing for Court of Appeal

First Circuit,

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT


CASE NO. 2013-KA-0577




STATE OF LOUISIANA

VERSUS

GERALD W. DAHLEM



APPLICATION AND MOTION FOR REHEARING *EN BANC* FROM

DENIAL OF APPEAL FROM THE 22ND JUDICIAL DISTRICT COURT,

IN AND FOR THE PARISH OF WASHINGTON, STATE OF

LOUISIANA, CASE NUMBER *12 CR8 115995*, HONORABLE

WILLIAM J. CRAIN, JUDGE PRESIDING



RESPECTFULLY SUBMITTED BY:


_____
Gerald W. Dahlem, LA D.O.C. #384259
A.V.C. – Cajun #3 / D #2
1630 Prison Road
Cottonport, Louisiana 71327

## JURISDICTION

Jurisdiction vests in this Honorable Court pursuant to the Louisiana Constitution of 1974, Article 5, § 10.

## VENUE

Venue is provided this Honorable Court pursuant to the Louisiana Uniform Rules of Court, Rule 2-18 (Rehearing) and the LA Code of Civil Procedure, Article 2166(A) (Court of Appeal Judgment Rehearing; Finality; Stay).

MAY IT PLEASE THE COURT:

NOW INTO COURT COMES GERALD W. DAHLEM, *"Petitioner"* hereinafter and *pro se*, who respectfully moves this Honorable Court to grant the instant motion, providing an *En Banc* panel for a rehearing of his appeal, which was denied by a three-panel quorum of this Honorable Court on June 18, 2014, for the following reasons:

## INCORRECT NUMBER OF JURORS

**It is clear an evident that defense counsel objected to the joinder and the mode of trial on pages 92-93, here counsel is asked if he is ready to proceed, "Yes, subject to objections previously made to pre-trial motions".**

1.

Petitioner respectfully avers that the denial of Claim Number Two (Incorrect Number of Jurors) is clear legal error, as the trial for a fourth offense D.W.I. by a six member petit jury, when conviction mandatorily required that he be sentenced to *at hard labor*, is a structural defect – one

2

that cannot be remedied except by the overturning of the conviction and sentence and a new trial ordered

## 2.

The Court cited *State v. Brown*, 2011-1044 (La. 3/13/2012), 85 So.3d 52, 53 (per curiam), as the basis for denying Petitioner's appeal, where the Louisiana Supreme Court held that trying a person in front of a twelve member jury (where at least 10 of 12 guilty votes are necessary to convict) for a six-person jury offense is subject to harmless error analysis, rather than a structural, or jurisdictional defect in the proceedings.

## 3.

The Court's reliance on *Brown*, *supra*, is misplaced in that *Brown* dealt with a six-person jury offense was tried in front of a twelve-person jury, where a 10-2 verdict was rendered.

## 4.

Most importantly, the *Brown* Court stated: "However, under present law, trial of a six-person jury offense in a 12-person jury forum may take place if the offense is joined in a single proceeding with a 12-person jury offense, i.e., with an absolute felony necessarily punishable at hard labor." *Brown*, 85 So.3d at 53.

## 5.

The *Brown* Court, referencing *State v. Jones*, La. 2005-2006, 922 So.2d 508, 2006 La. LEXIS 654 (La. Feb. 22, 2006), expressly stated: "As in *Jones*, we have no occasion to consider here whether trial before a panel composed of fewer jurors than required by law, i.e., trial of a 12-person jury offense in a six-person jury forum, constitutes more than trial error and retains its jurisdictional character as a structural defect in the proceedings." *See Brown*, 85 So.3d 52, footnote 1.

6.

With regard to the structural defect versus harmless error analysis, in *State v. Jones*, 922 So.2d 508 (La. 2006), the Louisiana Supreme Court addressed whether a D.W.I. case, where a greater than required number of jurors unanimously voted to convict a defendant, is an inherently prejudicial structural error which automatically requires reversal, or whether it falls within the vast category of trial errors which are subject to harmless error analysis and which warrant reversal only where the defendant is actually prejudiced. The *Jones* Court took special notice of Justice Dennis' dissent from *State v. Nedds*, 364 So.2d 588 (La. 1978), where it stated:

> "... This position would be justified in those cases where a defendant is convicted by a jury composed of fewer persons than the law mandates. ..." *Jones*, 922 So.2d at 513.

7.

Petitioner respectfully suggests that his case is exactly the kind of situation that should be considered a structural defect, according to the *Jones* and *Nedd* Courts' reasoning. The Louisiana Constitution requires that ten members of the jury concur for a verdict to be rendered, where the punishment is necessarily *at hard labor*.

8.

A jury of six, when the sentence upon conviction is necessarily punishment *at hard labor*, leaves four votes missing – that is, if all six vote unanimously to convict; however, a six person unanimous verdict, when twelve were constitutionally required, undermines the need for ten out of twelve to convict. If four or five out of the missing six were to vote for not guilty, then a defendant, or even Petitioner, would have been set free with no

4

punishment imposed. The same could be said if three of the missing four were to vote for not guilty. Thus, prejudice is found in the fact that even with a unanimous six person vote, when the Constitution required a jury of twelve persons, there can be no confidence in the outcome of the six person verdict. Simply stated, Petitioner's case must be deemed to have been a structural defect, one that cannot be remedied absent overturning the conviction and remanding for a new trial.

9.

Petitioner has been prejudiced by the fact that only six of the Constitutionally required twelve were used as jurors; therefore, the ten required for a verdict to be rendered did not take place. This, in its purest form, constitutes a structural defect in the trial and requires reversal.

Petitioner's case is a direct duplicate of **STATE V. JOHNSON**, only Petitioner's D.W.I. history was not as bad as Mr. Johnson's.

**PREDICATE DWI EVIDENCE**

2.

Petitioner presents that his drivers license number is not **Identical** to the drivers license number that this Honorable Court relied upon in their ruling, on June 18, 2014, (5515517) is not the Petitioner's Drivers License Number.

"In Louisiana, proof that a person of the same name has been previously convicted does not constitute prima facie evidence that the two persons are the same." Various methods, may be used, one is:

5

By evidence of **Identical** driver's license number, sex, race, and date of birth. [this has to be taken in context as a whole] therefore requiring all this information to be **Identical.**

Furthermore, there is not one document from Jefferson Parish that contains Petitioner's drivers license number, each document has some other person's drivers license number on it. **(not a typographical error)**

The first and second page of L.S.P. trooper Dan Manning's arrest report reveals Petitioner's correct drivers license number, which is: (5315517) it is transcribed and typed on these pages.

"This method of identification has failed and has been proven as defaulted"

## MOTION TO QUASH DENIED/ OBJECTED TO, PRESERVING PETITIONER'S RIGHT TO APPELLATE REVIEW

### 3.

Not only has the State failed to properly identify the Petitioner as the same person convicted previously in Jefferson Parish, but has also supplied insufficient evidence of documentation, for the following reasons to wit:

1. Copy of bill of information is unsigned by the Petitioner, no fingerprints, no photograph, and no certified signature by the clerk of court, also contains the wrong drivers license number.

2. The extract of minutes, contains the wrong drivers license number, and is not signed by anyone at all, not even the minute clerk.

3. During the trial process, a motion to quash and to suppress evidence was denied without a hearing, defense counsel objected, preserving Petitioner's

6

right to appellate review. In this motion Petitioner denies the boykinazation process is incorrect, in alleged predicate offenses, and the state has failed to prove otherwise.

Only, providing a waiver of constitutional rights form, where none of the rights allegedly waived, have initials next to them from the Petitioner, as required, or fingerprints with a certified signature.

## TESTIMONY BY PROBATION OFFICER (AARON MORAN) FOR IDENTITY PURPOSES

3.

Mr. Moran's whole testimony was objected to by defense counsel on the grounds that there was no proper foundation laid or presented to affiliate Mr. Moran, and Petitioner in 2002, when this alleged predicate conviction was committed. Predicate #1 Jefferson Parish.

As far Aaron Moran's testimony, Petitioner met Mr. Moran 1/26/12 at a revocation hearing in Washington Parish court house, for the first time ever, so Mr. Moran can't testify to some-ones identity (10) ten years prior to meeting the individual, that is absurd.

Also, there was a post-conviction relief that was filed on the Petitioner's third offense D.W.I. challenging the Identity of predicate #1 in Jefferson Parish, and it is now before the Honorable Louisiana Supreme Court in docket no. 2014-KH-111 filed on 1/14/2014.

Due to the Petitioner filing this post-conviction, attacking the identity issues also, Mr. Moran's testimony is irrelevant at this point.

Also see: State versus Hart, when accepting testimony of a previously executed plea agreement.

## PROSECUTORIAL MISCONDUCT

Here, the prosecutorial misconduct was committed when Probation officer Aaron Moran Committed perjury, by lying to the jury that the two docket numbers matched when in fact they did not, while physically looking at both sets of numbers. He knew this was a lie and still chose to lie.

## CONCLUSION

RELIEF DESIRED, either remand back to the District Court to be sentenced to a lesser an included offense, due to the lack of evidence to support conviction or alternatively to remand back for a new trial on the jury issue.

*Gerald Dahlem*

GERALD W. DAHLEM # 384259

A.V.C. 1630 PRISON ROAD C-3 D-2

COTTONPORT LOUISIANA 71327

---

**STATE OF LOUISIANA VERSUS CURT E. JOHNSON**
**COURT OF APPEAL OF LOUISIANA, THIRD CIRCUIT**
**52 So. 3d 273; 2010 La. App. LEXIS 1604**
**10-196**
**November 24, 2010, Decided**

---

**Editorial Information: Prior History**

APPEAL FROM THE SIXTEENTH JUDICIAL DISTRICT COURT, PARISH OF ST. MARTIN, NO. 07-233953. HONORABLE PAUL JOSEPH DEMAHY PRESIDING.

**Disposition:**
CONVICTION VACATED, REMANDED FOR NEW TRIAL.

**Counsel**           Jeffery J. Trosclair, Assistant District Attorney, St. Mary Parish Courthouse, Franklin, LA, Attorney For the State of Louisiana.
Frank Sloan, Louisiana Appellate Project, Mandeville, LA, Attorney For Defendant Curt E. Johnson.

**Judges:** Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

## Opinion

**Opinion by:**      SYLVIA R. COOKS

## Opinion

{52 So. 3d 274} [Pg 1] **COOKS, Judge.**

### FACTS AND PROCEDURAL HISTORY

Curt E. Johnson (Defendant) was convicted by a jury of six persons of driving while intoxicated, fourth offense, a violation of La.R.S. 14:98. Defendant was sentenced to serve twenty years at hard labor, without benefit of probation, parole, or suspension of sentence. He appeals his conviction and sentence, alleging his conviction is null because he was tried by an insufficient number of jurors and, alternatively, if his conviction is valid, his sentence is excessive. In accordance with the provisions of La.Code Crim. P. art. 920, we review all criminal appeals for errors patent on the record. We find there is an error patent on this record which requires reversal of Defendant's conviction. For reasons stated below, we reverse Defendant's conviction, vacate his sentence, and remand the case for a new trial before a jury of twelve persons.

### LEGAL ANALYSIS

Defendant was charged by bill of information with driving while intoxicated, fourth offense. He previously pled guilty to other third and fourth offense DWI charges in 2004. On the prior conviction of third offense DWI, Defendant was sentenced to fifteen years at hard labor, with all but thirty days suspended, and placed on probation for three years. Defendant was also sentenced for the previous fourth offense DWI to fifteen years at hard labor, with all but sixty days suspended, and placed on

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

probation for five years. These sentences were to be served consecutively. Defendant was on probation for these offenses when he was arrested and charged with the current fourth offense DWI. As part of each of the previous sentences, Defendant was required to undergo an evaluation to determine the nature and extent of his substance abuse disorder. His sentences in 2004 both [Pg 2] required four to six weeks of inpatient treatment for his substance abuse disorder and home incarceration for the suspended portions of his sentences. The record contains the transcript of his prior guilty pleas and sentencing establishing these facts.

Under the provisions of La.R.S. 14:98(E)(4)(a), Defendant was subject to a mandatory prison sentence at hard labor for a minimum of ten years and a maximum of thirty years for the current offense. The statute provides:

> If the offender has previously been required to participate [Pg 3] in substance abuse treatment and home incarceration pursuant to Subsection D of this Section, the offender shall not be sentenced to substance abuse treatment and home incarceration {52 So.3d 275} for a fourth or subsequent offense, but *shall be imprisoned at hard labor for not less than ten nor more than thirty years* and at least three years of the sentence shall be imposed without benefit of suspension of sentence, probation, or parole.La.R.S. 14:98(E)(4)(a) (emphasis added)

The Louisiana Constitution Article I, Section 17 (emphasis added), provides:

> [A] case in which the punishment is necessarily confinement at hard labor *shall be tried before a jury of twelve persons*, ten of whom must concur to render a verdict.

The State admits in brief the law requires this Defendant be tried before a jury of twelve persons and it was error to try him before a jury of only six persons. In *State v. Nedds*, 364 So.2d 588 (La.1978), the Louisiana State Supreme Court held that a jury verdict rendered by either more or less than the correct number of jurors is null. Although the Louisiana Supreme Court partially abrogated the decision in *Nedds* in its more recent decision *State v. Jones*, 05-226 (La. 2/22/06), 922 So.2d 508, upholding a conviction by a unanimous verdict of twelve in a case requiring only six jurors, the law has not changed regarding the impropriety of trying a criminal defendant before a jury of six when a jury of twelve is required. Because Defendant, charged with fourth offense DWI, was previously required to participate in substance abuse treatment and was placed on home incarceration the law mandates he be tried before a jury of twelve persons. As Defendant was tried before a jury of only six persons, contrary to the provisions of our State Constitution requiring trial by twelve jurors for his offense, his conviction is null and is hereby set aside; his sentence is vacated; and the matter is remanded for a new trial. Defendant's assignment of error asserting his sentence is excessive is moot.

**CONVICTION VACATED, REMANDED FOR NEW TRIAL**

lacases                                    2

© 2013 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*"Original"*

A0 240 (EDLA Rev. 8/02)

# UNITED STATES DISTRICT COURT
### Eastern District of Louisiana

_Gerald W. Dahlem_
Plaintiff

**APPLICATION TO PROCEED
WITHOUT PREPAYMENT OF
FEEES AND AFFIDAVIT**

V.

_Troy Poret (acting Warden)_
Defendant

CASE NUMBER:

I, _Gerald W. Dahlem #389259_, declare that I am the (check appropriate box)

☑ petitioner/plaintiff/movant          ☐ other

In the above-entitled proceeding; that in support of my request to proceed without prepayment of fees or costs under 28 USC § 1915 I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief sought in the complaint/petition/motion.

In support of this application, I answer the following question under penalty of perjury:

1.  Are you concurrently incarcerated ? ☑ Yes     ☐ No     (If "No," go to Part 2)

    If "Yes," state the place of your incarceration _Avoyelles Correctional Center_

    Are you employed at the institution ? _NO_  Do you receive any payment from the institution ? _NO_

    Have the institution certify the Statement of Account portion of this affidavit or attach a certified ledger sheet from the institution(s) of your incarceration showing at least the past six months' transactions.

2.  Are you concurrently employed ? ☐ Yes     ☑ No

    a.  If the answer is "Yes," state the amount of your take-home salary or wages and pay period and give the name and address of your employer.

    b.  If the answer is "No," state the date of your last employment, the amount of your take-home salary or wages and pay period and the name and address of your last employer.  _N/A_  _Self-employed Mechanic $1,600 mo$ 1,600_

3.  In the past 12 twelve months have you received any money from any of the following sources ?

    a.  Business, profession or other self-employment     ☐ Yes     ☑ No
    b.  Rent payments, interest or dividends                ☐ Yes     ☑ No
    c.  Pensions, annuities or life insurance payments      ☐ Yes     ☑ No
    d.  Disability or workers compensation payments         ☐ Yes     ☑ No
    e.  Gifts or inheritances                              ☐ Yes     ☑ No
    f.  Any other sources                                  ☑ Yes     ☐ No

If the answer to any of the above is "Yes", describe each source of money and state the amount received and what you expect you will continue to receive. _Auto Insurance refund $1,765. end of payment._

AO 240 (EDLA Rev. 8/02)

4.  Do you have any cash or checking or saving accounts ?        ☐ Yes          ☑ No

    If "Yes," state the total amount. _____

5.  Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or any other thing of

    value ?          ☐ Yes          ☑ No

    If "Yes," describe the property and state its value.

6.  List the persons who are dependent on you for support, state your relationship to each person and indicate how much

    you contribute to their support.

    Name                          Relationship                    Amount Contributed for Support

    N/A

I declare under penalty of perjury that the above information is true and correct.

_____5-24-16_____                        _____Gerald W. Dahlem_____

        Date                                          Signature of Applicant

-------------------------------------------------------------------------------------------------

**STATEMENT OF ACCOUNT**
(Certified Institutional Equivalent)
(To be completed by the institution of incarceration)

        I hereby certify that this inmate, _____, has a present inmate

account balance of $ _____ at the _____ institution, I further

certify that the average monthly deposits for the proceeding six months is $ _____

*(The average monthly deposits are to be determined by adding the deposits made during a given month and dividing the total
by the number of months made during that month. This is repeated for each of the six months. The average from each of the
six months are to be added together and the total is divided by six).*

I further certify that the average monthly balance for the prior six month is $ _____

*(The average monthly deposits are to be determined by adding the deposits made during a given month and dividing the total
by the number of months made during that month. This is repeated for each of the six months. The average from each of the
six months are to be added together and the total is divided by six).*

_____                    _____
Date Certified                                   Authorized Officer of Institution



**PRIORITY® MAIL**
UNITED STATES POSTAL SERVICE

Visit us at usps.com

Label 107R, January 2008

Gerald W. Dalton #384259
Avoyelles Correctional Center
1630 Prison Road C-3 D-2
Cottonport, La. 71327

United States District Court
Eastern District of Louisiana
500 Poydras Street Room C-151
New Orleans, La. 70130




UNITED STATES
POSTAL SERVICE
USPS TRACKING #

9114 9014 9645 0434 6658 2