# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GERALD W. DAHLEM**                                      **CIVIL ACTION**

**VERSUS**                                                      **NO. 16-11835**

**TROY PORET**                                         **SECTION: "G"(1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Gerald W. Dahlem, is a state prisoner incarcerated at the Raymond Laborde Correctional Center in Cottonport, Louisiana.  On May 1, 2012, he was convicted of Fourth Offense Driving While Intoxicated under Louisiana law.[1]  On September 24, 2012, he was sentenced to a term of twenty-five years imprisonment with the first three years to be served without benefit of probation, parole, or suspension of sentence.[2]  On October 29, 2012, he pleaded

---

[1] State Rec., Vol. 1 of 3, trial transcript, p. 174; State Rec., Vol. 1 of 3, minute entry dated May 1, 2012; State Rec., Vol. 1 of 3, jury verdict form.

[2] State Rec., Vol. 1 of 3, transcript of September 24, 2012; State Rec., Vol. 1 of 3, minute entry dated September 24, 2012.

guilty to being a third offender and was resentenced as such to a term of twenty-five years imprisonment without benefit of probation or suspension of sentence.[3]  On June 18, 2014, the Louisiana First Circuit Court of Appeal affirmed his conviction, habitual offender adjudication, and sentence.[4]  On March 27, 2015, the Louisiana Supreme Court granted his related writ application in a limited manner to consider only one of the claims presented;[5] however, on March 15, 2016, the Louisiana Supreme Court then ultimately affirmed his conviction and sentence.[6]

While those proceedings were ongoing, petitioner also filed with the state district court a motion to correct an illegal sentence which was denied on January 15, 2014.[7]  His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on June 2, 2014,[8] and by the Louisiana Supreme Court on April 2, 2015.[9]

On May 24, 2016, petitioner filed the instant federal application seeking habeas corpus relief,[10] and he subsequently amended that application.[11]  The state filed a response in opposition to the application,[12] and petitioner filed replies to the state's response.[13]

---

[3] State Rec., Vol. 1 of 3, transcript of October 29, 2012; State Rec., Vol. 1 of 3, minute entry dated October 29, 2012; State Rec., Vol. 1 of 3, Reasons for Judgment.

[4] State v. Dahlem, 148 So.3d 591 (La. App. 1st Cir. 2014); State Rec., Vol. 1 of 3.  Petitioner's application for rehearing was then denied on July 22, 2014.  State Rec., Vol. 1 of 3.

[5] State v. Dahlem, 161 So.3d 646 (La. 2015).

[6] State v. Dahlem, 197 So.3d 676 (La. 2016); State Rec., Vol. 2 of 3.  Petitioner's application for rehearing was likewise also on May 2, 2016.  State Rec., Vol. 2 of 3.

[7] State Rec., Vol. 3 of 3.

[8] State v. Dahlem, No. 2014 KW 0329 (La. App. 1st Cir. June 2, 2014); State Rec., Vol. 3 of 3.

[9] State ex rel. Dahlem v. State, 163 So.3d 789 (La. 2015); State Rec., Vol. 3 of 3.

[10] Rec. Doc. 1.

[11] Rec. Doc. 19.

[12] Rec. Doc. 14.  In its response, the state conceded that petitioner's application is timely.  The state also conceded that petitioner had exhausted his remedies in the state courts except for a few minor arguments he makes for the first time in this proceeding; however, even with respect to those unexhausted arguments, the state takes the position that they have no merit and therefore should simply be denied on that basis.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

[13] Rec. Docs. 16 and 17.

**Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell,

535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## Facts

The Louisiana Supreme Court summarized the facts of this case as follows:

> Defendant was arrested in Bogalusa, Louisiana, on November 10, 2011, for DWI, fourth offense, after a Louisiana state trooper witnessed a pickup truck driven by the defendant cross the centerline to the left, veer back to the right, and then run off of the road. When the trooper initiated a traffic stop, he observed that defendant swayed as he stood, had an odor of alcohol on his breath, his speech was slurred, and his eyes were glassy and bloodshot. Defendant's blood alcohol level registered 0.180.[14]

## Petitioner's Claims[15]

## Mode of Trial

Petitioner first makes several interrelated arguments premised on an allegation that the wrong mode of trial was employed this case. Specifically, he notes that he was tried by a *six*-person jury, but he argues that state law required that he be tried by a *twelve*-person jury. He further argues that the Louisiana Supreme Court wrongly failed to correct that error. For the following reasons, these various arguments fail because his underlying premise (i.e. that a six-person jury was improper) is wrong.

When he raised this claim on direct appeal, the Louisiana First Circuit Court of Appeal found that petitioner had waived the claim by failing to contemporaneously object.[16] However, Judge Kuhn filed a concurrence based on a different line of reasoning, and it was his view that was subsequently adopted by the Louisiana Supreme Court.[17] Judge Kuhn wrote:

> [The] trial of the defendant by a six-person jury was dictated by law in this case. The district attorney, in the exercise of his discretion, elected to charge the defendant pursuant to La. R.S. 14:98 with a fourth-offense DWI. Under La. R.S.

---

[14] State v. Dahlem, 197 So.3d 676, 677 (La. 2016); State Rec., Vol. 2 of 3.

[15] In this opinion, the undersigned is addressing petitioner's claims in a more logical sequence than they were presented in his federal application. However, all claims will be addressed.

[16] State v. Dahlem, 148 So.3d 591, 596-97 (La App. 1st Cir. 2014); State Rec., Vol. 1 of 3.

[17] See State v. Dahlem, 197 So.3d 676, 685 n.12 (La. 2016); State Rec., Vol. 2 of 3.

14:98(E)(1)(a), the punishment for fourth-offense DWI is imprisonment with or without hard labor for not less than ten years and not more than thirty years and a $5,000.00 fine. In accordance with La. Const. art. I, sec. 17(A), such a case "shall be tried before a jury or six persons, all of whom must concur to render a verdict." See also La.C.Cr.P. art. 782(A).

In reliance on these constitutional and statutory provisions, the State, the defense, and the trial court worked together to select a six-person jury to try this case. Although, the State later presented evidence at trial in connection with predicate # 3 which, *if accepted*, allowed for a sentence at hard labor under La. R.S. 14:98(E)(4)(a), *sentencing of the defendant under this sentencing enhancement provision was only a possibility, but never a certainty*. Thus, as a practical matter, this case was required to be tried in a six-person jury forum since there was only a *possibility* that the defendant could receive a sentence at hard labor. In Louisiana, a twelve-person jury is required *only* when the potential sentence is *necessarily* confinement at hard labor. La. Const. art. I, sec. 17(A); La.C.Cr.P. art. 782(A). *Thus, the defendant's trial was conducted in accordance with the jury composition rules applicable to La. R.S. 14:98(E)(1)(a), wherein the actual conduct prescribed is a fourth-offense DWI, and the sentence to be imposed may be with or without hard labor.*[18]

The Louisiana Supreme Court thereafter granted writs to consider "the issue of the numerical composition of the jury."[19] However, the court ultimately decided the case on much narrower grounds, noting that that it was "declin[ing] to reach the broader jury composition issue in this case."[20] That said, the Louisiana Supreme Court nevertheless resolved some facets of that issue, including the facet which is of critical importance here.

Specifically, the Louisiana Supreme Court held that the bill of information governs the mode of trial, and a trial court has no duty to look beyond that document to determine the number of jurors required. Where the crime charged in the bill of information is not punishable at hard labor in *all* circumstances and the bill of information does not expressly allege a *particular* circumstance present in the case that would *require* punishment at hard labor upon conviction,

---

[18] Dahlem, 148 So.3d at 600-01 (footnotes omitted; emphasis added); State Rec., Vol. 1 of 3.
[19] State v. Dahlem, 161 So.3d 646 (La. 2015).
[20] State v. Dahlem, 197 So.3d 676, 677 (La. 2016); State Rec., Vol. 2 of 3.

then the charge is to be tried by six jurors.  The court found that to be the case here, and, as a result,

the court found that petitioner was properly tried by six jurors.[21]  This interpretation can be gleaned

from the following passage of the court's opinion:

> The bill of information in this case … charged defendant in Count 1 with Driving While Intoxicated, fourth offense.  Specifically, the charging instrument states, in pertinent part:

> > COUNT I
> > R.S. 14:98 DRIVING WHILE INTOXICATED, by operating a motor vehicle while under the influence of alcohol or any scheduled controlled dangerous substance or while under the influence of alcohol and one or more drugs which is not a scheduled controlled dangerous substance.
> > And now the District Attorney informs this Honorable Court that this is a FOURTH offense, the defendant having previously been convicted of operating a motor vehicle while under the influence of alcoholic beverages on May 15, 2002, in docket number F1360-18 in the Parish of Jefferson, State of Louisiana.
> > And further having been convicted of operating a motor vehicle while under the influence of alcoholic beverages on February 19, 2004, in docket number 03-CR-89114, in the Parish of Washington, State of Louisiana.
> > And further having been convicted of operating a motor vehicle while under the influence of alcoholic beverages on July 9, 2010, in docket number 10-CR1-108537, in the Parish of Washington, State of Louisiana.

> *It is imperative to note that the bill of information sets the parameters and dictates the mode of trial.  Based solely upon the information on the face of the bill of information, the defendant in this case was properly tried before a six person jury, as the sentencing range for a fourth offense DWI, as listed in this particular bill of information, is not mandatory hard labor.*  Specifically, La. R.S. 14:98(E)(1)(a), in effect at the time of defendant's offense, provided that operating a vehicle while intoxicated, fourth offense, carried the following penalty range **with or without** hard labor:

---

[21] This interpretation of the holding majority is bolstered by the opening sentence of Justice Knoll's concurrence, in which she states: "Although I agree with *the majority's conclusion that the District Court did not err when it tried defendant by a jury of six persons,* I write separately because I believe the majority's analysis is overly complex."  Id. at 685 (Knoll, J. concurring).

... on a conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction, the offender **shall be imprisoned with or without hard labor** for not less than ten years nor more than thirty years and shall be fined five thousand dollars.  Two years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. (emphasis added)

*Given that the enhanced sentence to which the evidence made defendant subject was not apparent on the face of the bill of information, we specifically decline to create a duty requiring a trial judge to look beyond the face of the bill of information or the indictment, and the Title 14 penalty range.  Nor is it the responsibility of a trial judge to interrogate the district attorney or independently investigate as to what evidence might be introduced that would require a different jury composition at the outset of a case.*  Doing so would be inappropriate and contrary to the efficient administration of criminal justice, and effectively result in bad policy.[22]

To the extent that petitioner is asking this federal court to hold that the Louisiana Supreme Court was wrong in its interpretation of state law, the Court cannot oblige.  The state courts are the final arbiters of state law.  See Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co., 706 F.3d 622, 629 (5th Cir. 2013) ("The principle that state courts are the final arbiters of state law is well-settled."); Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding.  We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)); see Charles v. Thaler, 629 F.3d 494, 500-01 (5th Cir. 2011) ("A federal court lacks authority to rule that a state court incorrectly interpreted its own law.  When, as here, a state court's legal conclusions are affirmed by the highest

---

[22] State v. Dahlem, 197 So.3d 676, 682-83 (La. 2016) (footnotes omitted; emphasis is italics added; emphasis in bold in original); State Rec., Vol. 2 of 3.  The broader issue the court then declined to answer is this:  *If* a defendant is *improperly* tried by six jurors when twelve are required, then is that a "non-waivable structural defect which requires that a defendant's conviction be reversed and his sentence vacated"? Id. at 677.  The court ultimately determined that it was not required to resolve that issue in this case because, as noted, petitioner was *properly* tried by six jurors.

court in that state, those conclusions *are* state law.").  In summary, modes of trial are matters of *state* law, and "[w]hether the state followed its own procedure is not the concern of a federal habeas court."  Manning v. Warden, Louisiana State Pentientiary, 786 F.2d 710, 712 (5th Cir. 1986). Rather:

> The simple fact is that habeas corpus is available only for the vindication of rights existing under federal law; not rights existing solely under the rules of state procedure.  When there has been a violation of state procedure, the proper inquiry is to determine whether there has been a constitutional infraction of defendant's due process rights which would render the trial as a whole fundamentally unfair.

Id. at 711-12 (citations and quotation marks omitted).

Further, to the extent that petitioner is claiming that his trial was in fact rendered fundamentally unfair under federal law by the fact that a six-person jury was used, that argument is obviously meritless.  The United States Supreme Court has expressly rejected the contention that twelve-person juries are required as a matter of federal constitutional law or that trials tried to twelve jurors are necessarily fairer than those tried to six:

> The purpose of the jury trial … is to prevent oppression by the Government. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge.  Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence. *The performance of this role is not a function of the particular number of the body that makes up the jury.*  To be sure, the number should probably be large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representatives cross-section of the community. *But we find little reason to think that these goals are in any meaningful sense less likely to be achieved when the jury numbers six, than when it numbers 12 – particularly if the requirement of unanimity is retained.  And, certainly the reliability of the jury as a factfinder hardly seems likely to be a function of its size.*
> It might be suggested that the 12-man jury gives a defendant a greater advantage since he has more 'chances' of finding a juror who will insist on acquittal and thus prevent conviction.  But the advantage might just as easily belong to the

State, which also needs only one juror out of twelve insisting on guilt to prevent acquittal. What few experiments have occurred – usually in the civil area – indicate that there is no discernible difference between the results reached by the two different-sized juries. In short, neither currently available evidence nor theory suggests that the 12-man jury is necessarily more advantageous to the defendant than a jury composed of fewer members.

Similarly, while in theory the number of viewpoints represented on a randomly selected jury ought to increase as the size of the jury increases, in practice the difference between the 12-man and the six-man jury in terms of the cross-section of the community represented seems likely to be negligible. Even the 12-man jury cannot insure representation of every distinct voice in the community, particularly given the use of the peremptory challenge. As long as arbitrary exclusions of a particular class from the jury rolls are forbidden, the concern that the cross-section will be significantly diminished if the jury is decreased in size from 12 to six seems an unrealistic one.

Williams v. Florida, 399 U.S. 78, 100-02 (1970) (citations, footnotes, and quotation marks omitted; emphasis added).

For all of these reasons, petitioner's claims challenging his conviction on the grounds that the wrong mode of trial was used should be denied.[23]

### **Denial of Due Process and Equal Protection**

In denying relief, the Louisiana Supreme Court also held that, in light of the fact that petitioner was subsequently adjudicated and sentenced as a multiple offender, any error concerning

---

[23] In his discussion of this claim, petitioner also alleges in passing that he "was not read his rights to a judge or jury trial, at arraignment." Rec. Doc. 1, p. 7; see also Rec. Doc. 1, p. 28. Petitioner's intent in making this allegation is unclear.

At first blush, one might assume that petitioner is arguing that he was not aware that he had a right to a bench trial rather than a jury trial. However, that interpretation seems inaccurate, in that petitioner has never indicated that he in fact wanted or would have elected a bench trial. In any event, if that is petitioner's contention, it is meritless. There is no federal constitutional right to a bench trial. Singer v. United States, 380 U.S. 24 (1965); accord United States v. Clark, 943 F.2d 775, 784 (7th Cir. 1991); United States v. Clausell, 389 F.2d 34, 35 (2nd Cir. 1968). There likewise is no such right under Louisiana law. State v. Bazile, 144 So.3d 719, 729 (La. 2013) ("[T]here is no explicit or implicit federal or state constitutional right to demand trial before a judge sitting alone."). Therefore, necessarily, petitioner's rights could not be violated by a failure to advise him of a nonexistent right.

It appears that petitioner may instead be trying to argue that he was not given a full range of choices regarding the mode of trial, i.e. a bench trial, a jury trial before six jurors, or a jury trial before twelve jurors, with his focus in fact being on the final two choices. However, as explained herein, *petitioner had no right to a jury trial before twelve jurors* in this case. Therefore, obviously, the court had no duty to advise petitioner of a nonexistent option concerning the mode of trial.

his original sentence was rendered moot.  Petitioner claims that the Louisiana Supreme Court's analysis violated his right to be treated fairly and equally.  Although his argument is a bit convoluted, he appears be contending that the court's decision to employ such an analysis effectively deprived him of his right to review of claims concerning errors which occurred in the proceedings prior to the habitual offender adjudication.[24]  For the following reasons, that contention is meritless.

The premise of petitioner's contention is that the analysis employed by the Louisiana Supreme Court deprived him of resolution of his claim concerning whether he was properly tried by a six-person (rather than a twelve-person) jury.  However, as noted above, that is simply untrue: *the Louisiana Supreme Court expressly held that petitioner was properly tried by a six-person jury.*  Therefore, the question he posed concerning the mode of trial *was* in fact answered, albeit not in the manner he desired.

It is true that the Louisiana Supreme Court then declined to answer the separate and distinct question of whether petitioner's *original sentence* was proper.  Specifically, the Louisiana Supreme Court concluded that *if* petitioner was sentenced pursuant to La. Rev. Stat. Ann. § 14:98(E)(4)(a), then his sentence may have been improper – because sentencing pursuant to that provision required trial by twelve jurors.  However, the Supreme Court noted that it was unclear whether or not petitioner had in fact been sentenced pursuant to § 14:98(E)(4)(a):

> The defendant in this case was initially sentenced to twenty-five years at hard labor, with three years without the benefit of parole, probation, or suspension of sentence. During trial, documentary evidence (State's Exhibit # 11) was introduced that established that after his DWI, third offense, the defendant was sentenced to substance abuse treatment and home incarceration, which, under then-La. R.S. 14:98(E)(4)(a), required an enhanced **mandatory** hard labor sentence:

---

[24] Rec. Doc. 1, pp. 40-41.

> If the offender has previously been required to participate in substance abuse treatment and home incarceration pursuant to Subsection D of this Section, the offender shall not be sentenced to substance abuse treatment and home incarceration for a fourth or subsequent offense, but **shall be imprisoned at hard labor** for not less than ten nor more than thirty years, and at least three years of the sentence shall be imposed without benefit of suspension of sentence, probation, or parole. (emphasis added)

Thus, the trial court's original sentence, which included three years without the benefit of parole, probation, or suspension of sentence, is consistent with the enhanced mandatory language in La. R.S. 14:98(E)(4)(a). A sentence such as the trial court's original one should only have been imposed if the trial court considered the aforementioned documentary evidence that established that defendant had, indeed, been sentenced to home incarceration and substance abuse treatment. Stated differently, the trial court's original sentence (including three years without the possibility of probation, parole or suspension), was necessarily dictated by consideration of the documentary evidence establishing defendant was sentenced to home incarceration and substance abuse treatment following his third offense DWI. However, because the trial judge did not specifically outline his consideration of this evidence, it is not clear from the record before us whether the trial court absolutely did, in fact, consider this evidence related to defendant's predicate third offense DWI, as the jury did not make a finding related to this fact, and the trial judge did not explicitly make such a finding during the defendant's sentencing proceedings. Moreover, the record reflects no argument from either the prosecution or the defense about whether or not the trial court should consider the evidence related to predicate # 3, which would have led to an enhanced sentence. As a result, given the uncertainty of which provision the defendant was sentenced under, *this court cannot rule out the possibility that the defendant's original sentence was improper*. In other words, **if** the trial court sentenced the defendant under the unenhanced provision (with optional hard labor), the defendant was correctly tried by a six-person jury. **If** the trial court sentenced the defendant under the enhanced version, then the trial court was in error, and *the sentence imposed may have been inappropriate*.[25]

Therefore, the Louisiana Supreme Court found that the mode of trial was proper, but, because of the mode of trial used, *the resulting sentence* originally imposed *may have been improper*. It was *that* question (i.e. the propriety of the original sentence) which the Louisiana

---

[25] Id. at 683-84 (emphasis in italics added; emphasis in bold in original).

Supreme Court ultimately declined to answer, finding that it was unnecessary to do so because the original sentence (whether proper or improper) was subsequently vacated:

> The State's Multiple Offender Bill of Information alleged that defendant was a third felony offender, with previous convictions in 1997 and 2007 for distribution of marijuana and theft between $300 and $500, respectively. After a hearing, the defendant admitted the allegations, and the trial court vacated its original sentence and resentenced him under La. R.S. 15:529.1 to 25 years at hard labor, without benefit of probation or suspension of sentence. *In other words, the multiple offender bill in this instance resulted in an enhanced recidivist sentence that displaced the original sentence, placing the defendant in the same position he would have been in, even without consideration of the provisions set forth in La. R.S. 14:98(E)(4)(a) (which, under the Louisiana Constitution, require a twelve person jury). In sum, we find this to be an issue of an improper sentence which has been rendered moot by the defendant's multiple offender status. As a result, we decline to find any error that warrants reversal of the defendant's conviction or sentence in this particular instance.*[26]

In summary, at the time the Louisiana Supreme Court issued its opinion, the arguably problematic original sentence *no longer existed*. It had already been vacated and replaced with a proper sentence under the state's habitual offender law.[27]

To the extent that petitioner is claiming that his rights were violated by the court's failure to resolve an issue rendered moot by subsequent events in the case, he is incorrect. Even if the original sentence was erroneous, there were no lingering effects of that erroneous original sentence which caused him harm. Although his curiosity concerning the legality of the original vacated sentence remains unsatisfied, that is not an injury cognizable in a federal habeas corpus proceeding. The only question properly before this Court is whether petitioner's current incarceration is

---

[26] Id. at 684-85 (footnote omitted; emphasis added).

[27] Id. at 682 ("Here, after the defendant's original sentence was imposed, he was billed as a habitual offender, and adjudicated as such. Consequently, the trial court vacated its original sentence (at hard labor) and defendant received an enhanced recidivist sentence as a multiple offender (at hard labor). In sum, the defendant ultimately received the same at hard labor sentence, despite the original sentence given by the trial court.").

founded on a constitutional conviction and sentence.[28]  Because he is no longer incarcerated based on the vacated sentence, the propriety of that sentence (and the Louisiana Supreme Court's refusal to resolve the question) is not properly before this Court.

### Right to "Remain Silent"

Petitioner also argues that his right to "remain silent" was violated because his failure to object to a six-person jury was interpreted as implied acquiescence to the use of that mode of trial.[29]  This argument warrants little consideration for two reasons.

First, it is true that the Louisiana First Circuit Court of Appeal declined to consider petitioner's challenge to the mode of trial on direct appeal based on the fact that he did not object. That court stated:

> In the instant case, the defendant acquiesced in the error of trying a twelve-person jury offense in a six-person jury forum.  He raised no objection at voir dire when the trial court announced, "[t]he purpose of this process is for us to select six people who can fairly and impartially hear the evidence in this case and decide the case."  Thereafter, he participated in the selection of the six-person jury. Additionally, he failed to file a motion in arrest of judgment. Accordingly, the wrong jury forum error was waived.[30]

However, as noted, the Louisiana Supreme Court then decided this claim on the merits, *not* on that procedural basis.  Therefore, contrary to his implication, petitioner was not ultimately penalized for his failure to object.

Second, in any event, there is no merit to petitioner's underlying contention that a requirement that a defendant voice objections at trial violates his right to "remain silent."  In fact,

---

[28] See 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*." (emphasis added)).

[29] Rec. Doc. 1, pp. 38-39.

[30] State v. Dahlem, 148 So.3d 591, 597 (La. App. 1st Cir. 2014); State Rec., Vol. 1 of 3.

there is no right to "remain silent" in the broadest sense.  Rather, the right in question is based on

the Fifth Amendment's guarantee that "[n]o person … shall be compelled in any criminal case to

be a witness against himself."  U.S. Const. amend. V.  Therefore, the amendment does not

guarantee a criminal defendant a right not to *speak*; rather, it guarantees him only the right not to

be compelled to *incriminate himself*.

It is true, of course, that the scope of the constitutional protection is nevertheless wide.  For

example, the United States Supreme Court has observed:

> This Court has always broadly construed its protection to assure that an individual
> is not compelled to produce evidence which later may be used against him as an
> accused in a criminal action.  The protection does not merely encompass evidence
> which may lead to criminal conviction, but includes information which would
> furnish a link in the chain of evidence that could lead to prosecution, as well as
> evidence which an individual reasonably believes could be used against him in a
> criminal prosecution.

Maness v. Meyers, 419 U.S. 449, 461 (1975).  Nevertheless, the constitutional protection is not as

all-encompassing as petitioner suggests.  Rather, the Supreme Court has expressly held that the

right "protects a person only against being incriminated by his own compelled *testimonial*

*communications*."  Doe v. United States, 487 U.S. 201, 207 (1988).  Moreover, "in order to be

testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual

assertion or disclose information.  Only then is a person compelled to be a 'witness' against

himself."  Id. at 210.  The Court continued:

> This understanding is perhaps most clearly revealed in those cases in which
> the Court has held that certain acts, though incriminating, are not within the
> privilege.  Thus, a suspect may be compelled to furnish a blood sample, Schmerber
> v. California, 384 U.S., at 765, 86 S.Ct., at 1832; to provide a handwriting
> exemplar, Gilbert v. California, 388 U.S., at 266-267, 87 S.Ct., at 1953 or a voice
> exemplar, United States v. Dionisio, 410 U.S. 1, 7, 93 S.Ct. 764, 768, 35 L.Ed.2d
> 67 (1973); to stand in a lineup, United States v. Wade, 388 U.S., at 221-222, 87
> S.Ct., at 1929; and to wear particular clothing, Holt v. United States, 218 U.S. 245,

> 252-253, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910). These decisions are grounded on the proposition that "the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." Schmerber, 384 U.S., at 761, 86 S.Ct., at 1830. The Court accordingly held that the privilege was not implicated in each of those cases, because the suspect was not required "to disclose any knowledge he might have," or "to speak his guilt," Wade, 388 U.S., at 222-223, 87 S.Ct., at 1929-1930. See Dionisio, 410 U.S., at 7, 93 S.Ct., at 768; Gilbert, 388 U.S., at 266-267, 87 S.Ct., at 1953. It is the "extortion of information from the accused," Couch v. United States, 409 U.S., at 328, 93 S.Ct., at 616; the attempt to force him "to disclose the contents of his own mind," Curcio v. United States, 354 U.S. 118, 128, 77 S.Ct. 1145, 1151, 1 L.Ed.2d 1225 (1957), that implicates the Self-Incrimination Clause.

Doe, 487 U.S. at 210-11.

A contemporaneous objection at trial is a purely neutral procedural device not indicative of either guilt or innocence, and, therefore, it simply is not a "testimonial communication." The fact that a criminal defendant generally must lodge a contemporaneous objection to preserve his rights at trial in no way compels him to be a "witness" against himself.

## **Motion to Suppress**

Petitioner next argues that his rights were violated because the trial court never ruled on his motion to suppress.[31] He concedes that this claim is unexhausted; however, as the state notes in its response, the claim is easily denied on the merits in any event because such a claim does not warrant federal relief. The state is correct. If a criminal defendant effectively abandons a pretrial motion and proceeds to trial without insisting on a ruling, he cannot later complain if he is unhappy with the trial's result. See United States v. Taglia, 922 F.2d 413, 416 (7th Cir. 1991) ("If a motion is not acted upon, a litigant had better renew it. He may not lull the judge into thinking that it has

---

[31] Rec. Doc. 1, pp. 34-35.

been abandoned and then, after he has lost, pull a rabbit out of his pocket in the form of the forgotten motion.").  Therefore, this claim should be denied.

### **Brady Violation**

Citing <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), petitioner next argues that his rights were violated because the prosecutor failed to provide the defense with "additional file material" which was "cumulative to Petitioner's guilt and punishment" until the day of trial.  Although this claim is likewise unexhausted and somewhat unclear, the gist of it seems to be that petitioner is arguing that <u>Brady</u> required the prosecutor to provide the defense with "the complete record of Petitioner's (3rd) third offense DWI" which he contends constituted "cumulative exculpatory evidence."[32]  As far as the undersigned can glean, petitioner is suggesting that the prosecutor had an obligation to provide the defense with the record of petitioner's prior conviction because, had counsel been aware of the facts relating to that conviction, he would have known that petitioner was entitled to trial before a twelve-person jury.

Regarding <u>Brady</u> claims, the United States Supreme Court has explained:

> The right to a fair trial, guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment, imposes on States certain duties consistent with their sovereign obligation to ensure that justice shall be done in all criminal prosecutions.  In <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), we held that when a State *suppresses* evidence favorable to an accused that is material to guilt or to punishment, the State violates the defendant's right to due process, irrespective of the good faith or bad faith of the prosecution.

<u>Cone v. Bell</u>, 556 U.S. 449, 451 (2009) (emphasis added; citations and quotation marks omitted).

Petitioner's claim fails because the records concerning his prior conviction were not "suppressed."  He was obviously aware of the existence of his own prior conviction, and the court

---

[32] Rec. Doc. 1, p. 36.

records relating to that conviction are public records fully accessible by defense counsel.  As the United States Second Circuit Court of Appeals has explained:

> [E]vidence is not considered to have been suppressed within the meaning of the Brady doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence. … Documents that are part of public records are not deemed suppressed if defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation.

United States v. Payne, 63 F.3d 1200, 1208 (2nd Cir. 1995) (internal quotation marks and brackets omitted); accord Kutzner v. Cockrell, 303 F.3d 333, 336 (5th Cir. 2002) ("When evidence is equally available to both the defense and the prosecution, the defendant must bear the responsibility of failing to conduct a diligent investigation."); United States v. Dean, 722 F.2d 92, 95 (5th Cir. 1983) ("Brady rights are not denied where the information was fully available to the defendant and his reason for not obtaining and presenting such information was his lack of reasonable diligence.").

Moreover, even if the prosecution's action amounted to a discovery violation under state law, any such violation would not support a federal habeas claim.  A claim that a prosecutor violated state discovery rules simply is not cognizable on federal habeas review.  Weatherford v. Bursey, 429 U.S. 545, 559 (1977); Lorraine v. Coyle, 291 F.3d 416, 441 (6th Cir. 2002); Brooks v. Cain, Civ. Action No. 06-1869, 2009 WL 3088323, at *10 (E.D. La. Sept. 21, 2009); Burns v. Lafler, 328 F. Supp. 2d 711, 723 (E.D. Mich. 2004).

For all of these reasons, petitioner's claim should be denied.

## Insufficient Evidence of Predicate Conviction

Petitioner next claims that the prosecution failed to properly prove the existence of his predicate conviction.[33]  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [T]he defendant argues the State presented insufficient evidence concerning identification in regard to predicate DWI offense # 1.
>
> In Louisiana, proof that a person of the same name has been previously convicted does not constitute prima facie evidence that the two persons are the same.  The state must additionally offer proof that the accused is the same person as the defendant previously convicted.  Various methods may be used to prove that the defendant on trial is the same person whose name is shown as the defendant in the evidence of a prior conviction, such as by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver's license number, sex, race and date of birth.  The mere fact that the defendant on trial and the person previously convicted have the same name does not constitute sufficient evidence of identity.  See State v. Westbrook, 392 So.2d 1043, 1045 (La. 1980) (on rehearing); State v. Pitre, 532 So.2d 424, 426 (La.App. 1st Cir. 1988), writ denied, 538 So.2d 590 (La.1989).
>
> The bill of information charging the instant offense identified the defendant as "Gerald W. Dahlem," "DOB: 05/04/1971[,]" and listed his address as 11231 Hwy 21S, Bogalusa, Louisiana, 70427.  The defendant did not challenge the accuracy of the identifying information on the bill.
>
> At trial, the State presented testimony from Louisiana Department of Probation and Parole Officer Aaron Moran.  Officer Moran identified the defendant in court and testified he supervised the defendant during his probation in connection with DWI Predicate # 3.  Officer Moran indicated the first predicate offense for DWI predicate # 3 was DWI predicate # 1.
>
> Thereafter, in connection with DWI predicate # 1, the State introduced into evidence State Exhibit # 9, certified true copies of:  the bill of information charging "DAHLEM, GERALD W.," white male, date of birth May 4, 1971, driver's license # 5515517, address 11231 Highway 21, Bogalusa, Louisiana, with DWI committed on December 24, 2000; extracts of minutes indicating "DAHLEM, GERALD W.," date of birth May 4, 1971, driver's license # 5515517, on May 15, 2002 pled guilty as charged "under Art. 894," and a waiver of constitutional rights form for DWI, executed by Gerald Dahlem, date of birth May 4, 1971, on May 15, 2002, with benefit of counsel.  The defense objected that the defendant had not been identified

---

[33] Rec. Doc. 1, pp. 42-45.

as the person that was the subject of the paperwork.  The trial court overruled the objection, and the defense objected to the court's ruling.

There was no abuse of discretion.  The State sufficiently established the defendant was the same person convicted in predicate # 1.

This assignment of error is without merit.[34]

On habeas review, the sufficiency of the state's evidence is governed by the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  Specifically, Jackson requires the court to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the petitioner's guilt was proven beyond a reasonable doubt.  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

---

[34] State v. Dahlem, 148 So.3d 591, 597-98 (La. App. 1st Cir. 2014); State Rec., Vol. 1 of 3.

As noted by the state court, petitioner argues that the state failed to meet its burden because it failed to prove that he was the same person convicted of the predicate offense in Jefferson Parish. That is simply untrue. As one Louisiana appellate court has explained:

> In Louisiana, proof that a person of the same name has been previously convicted does not constitute prima facie evidence that the two persons are the same. The state must additionally offer proof that the accused is the same person as the defendant previously convicted. City of Monroe v. French, 345 So.2d 23 (La. 1977). Various methods may be used to prove that the defendant on trial is the same person whose name is shown as the defendant in the evidence of a prior conviction, such as: testimony of witnesses, expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, photographs contained in a duly authenticated record, or evidence of identical driver's license number, sex, race, and date of birth. State v. Westbrook, 392 So.2d 1043 (La. 1980); State v. Curtis, 338 So.2d 662 (La. 1976); State v. Hight, 35,621 (La.App. 2 Cir. 3/1/02), 810 So.2d 1250, writ denied, 02-1181 (La. 11/22/02), 829 So.2d 1036.

State v. Watson, 911 So. 396, 401 (La. App. 2nd Cir. 2005). Here, proof of identity was not established *only* by an identical name, but also by Moran's testimony and matching address and date of birth. When that evidence in this case is viewed *in the light most favorable to the prosecution*, it simply cannot be said that the state court's conclusion that identity was proven was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.[35]

---

[35] To the extent that petitioner is complaining that the records from the predicate conviction do not comply with the requirements of La. Code Crim. P. art. 871, his complaint is misplaced. Petitioner has failed to show that noncompliance with article 871 in any way renders the predicate conviction invalid or suspect. Rather, the certification requirement concerns the affixing of fingerprints on a criminal judgment in a manner that can later be used to establish identity based on matching fingerprint evidence when the individual faces an enhanced penalty for a future offense. See La. Code Crim. P. art. 871(C) ("The certificate required by Paragraph B of this Article shall be admissible in evidence in the courts of this state as prima facie evidence that the fingerprints appearing thereon are the fingerprints of the defendant against whom the judgment of guilty of a felony or one of the enumerated misdemeanors was

In connection with this claim, petitioner also argues that prosecution improperly allowed Moran to present false testimony regarding the predicate conviction from Jefferson Parish. Obviously, due process may be violated if a prosecutor knowingly uses false testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996). However, a petitioner is entitled to relief on such a claim only if he shows that (1) the testimony in question was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material. Duncan v. Cockrell, 70 Fed. App'x 741, 744 (5th Cir. 2003). Here, petitioner's claim fails because he has not shown that the testimony in question was in fact false for the following reasons.

First, petitioner argues that Moran's testimony was false because he testified regarding a Jefferson Parish case bearing the docket number of F13560-18, whereas the bill of information in the instant case gave the docket number of that case as F1360-18. However, as the Louisiana First Circuit Court of Appeal noted, this was obviously a "typographical error" in the bill of information.[36] It is in no way indicative of perjury by Moran.

Second, petitioner argues that Moran's testimony identifying petitioner as the defendant in the Jefferson Parish case was obviously false because Moran did not even know petitioner at the time of that prior offense. However, that argument misconstrues Moran's testimony. He testified that he was the probation officer for petitioner's *third offense* and that, *according to the records*, that third offense conviction was based in part on the fact that petitioner had previously been

---

rendered."). However, in this case, petitioner's identity was *not* established based on *fingerprint evidence*, and so the absence of the certification would appear to be of no consequence.

[36] State v. Dahlem, 148 So.3d 591, 599 (La. App. 1st Cir. 2014); State Rec., Vol. 1 of 3.

convicted of the offense in Jefferson Parish.[37]  Petitioner has presented no evidence that Moran's testimony was in any way incorrect or false in that respect.

## **Invalid Predicate Conviction**

Petitioner next contends that one of the predicate convictions used to support his multiple offender adjudication was invalid.[38]  He does not explain the basis for that claim; rather, he only references his Louisiana Supreme Court writ application.  A review of that writ application reveals that this claim concerns his attempt to challenge on direct appeal the validity of a predicate theft conviction used to enhance his sentence in the multiple offender adjudication.[39]  The Louisiana First Circuit Court of Appeal refused to consider that claim because it had not been preserved for review, holding:

> [T]he defendant argues habitual offender predicate # 1 was unavailable for use as a predicate to enhance his sentencing exposure because it was a third-offense conviction for theft, and his first-offense conviction for theft occurred when he was a juvenile.
>
> In order to challenge the validity of a predicate offense listed in a habitual offender bill of information, the defendant must file a written response to the habitual offender bill, setting forth his claim, and the factual basis therefor, with particularity.  The defendant has the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response.  Any challenge to a previous conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.  See La. R.S. 15:529.1(D)(1)(b).
>
> In the instant case, the defendant failed to file a written response to the habitual offender bill.   At the habitual offender hearing, defense counsel "preserve[d]" his previously filed motions for appeal and to reconsider sentence.  Thereafter, he specifically admitted that "those two prior convictions are, in fact, [the defendant's]," but preserved his right to challenge whether or not a fourth-offense DWI was subject to enhancement under the habitual offender law.
>
> The instant claim was not preserved for review.   See La. R.S. 15:529.1(D)(1)(b); La.Code Crim. P. art. 841(A); [State v.] Trahan, 637 So.2d [694,] 704 [(La. App. 1st Cir. 1994)].

---

[37] State Rec., Vol. 1 of 3, trial transcript, p. 144.
[38] Rec. Doc. 1, p. 45.
[39] A copy of that writ application is located in Volume 2 of the state court record.

This assignment of error is without merit.[40]

The Louisiana Supreme Court then declined to review this claim.[41]  For the following reasons, this

claim is barred from federal review.

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody
> may not be reviewed by a federal court if the last state court to consider that claim
> expressly relied on a state ground for denial of relief that is both independent of the
> merits of the federal claim and an adequate basis for the court's decision.  To satisfy
> the "independent" and "adequate" requirements, the dismissal must "clearly and
> expressly" indicate that it rests on state grounds which bar relief, and the bar must
> be strictly or regularly followed by state courts, and applied to the majority of
> similar claims.  This rule applies to state court judgments on both substantive and
> procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

Here, the state courts clearly rejected petitioner's claim on the procedural ground that

petitioner did not comply with La. Rev. Stat. Ann. § 15:529.1(D)(1)(b), which provides in pertinent

part:

> The presumption of regularity of judgment shall be sufficient to meet the original
> burden of proof.  If the person claims that any conviction alleged is invalid, he shall
> file a written response to the information.  A copy of the response shall be served
> upon the prosecutor.  A person claiming that a conviction alleged in the information
> was obtained in violation of the constitutions of Louisiana or of the United States
> shall set forth his claim, and the factual basis therefor, with particularity in his
> response to the information.  The person shall have the burden of proof, by a
> preponderance of the evidence, on any issue of fact raised by the response.  Any
> challenge to a previous conviction which is not made before sentence is imposed
> may not thereafter be raised to attack the sentence.

---

[40] State v. Dahlem, 148 So.3d 591, 599 (La. App. 1st Cir. 2014); State Rec., Vol. 1 of 3.
[41] State v. Dahlem, 161 So.3d 646 (La. 2015) ("The parties are instructed that the grant of this writ application is limited to the issue of the numerical composition of the jury.").

That procedural rule is obviously "independent" of the merits of petitioner's federal claim. Therefore, the Court needs only to determine whether the rule was "adequate" to support a procedural bar.

"The [procedural bar] doctrine presumes that a state procedural ground is adequate ... and, ordinarily, the burden is on the habeas petitioner to demonstrate otherwise." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule. Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997). Here, however, petitioner has made no attempt whatsoever to establish that the rule was not strictly or regularly followed. Therefore, the presumption of adequacy applies.

Where, as in the instant case, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992). Here, petitioner has not argued, much less established, cause for this procedural default. "Absent a

showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

When a petitioner has failed to meet the "cause and prejudice" test, a federal court should normally consider his claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice." That exception is a limited one which exists only if a petitioner makes a colorable showing that he is "actually innocent." See Bagwell v. Dretke, 372 F.3d 748, 757 (5th Cir. 2004); Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998). However, the Court notes that it is unclear whether the exception even applies at all to cases, such as this one, in which the defaulted claim relates merely to a matter concerning a noncapital sentence.

In Haley v. Cockrell, 306 F.3d 257 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals, after noting that a split exists among the circuits on that issue, held that the "actual innocence" exception is available to petitioners in noncapital proceedings who claim they were erroneously sentenced. Id. at 265-66. The Haley court further held that, when barred claims dealt with such alleged sentencing errors, the "actual innocence" requirement is met only when the petitioner shows that "he would have not been legally eligible for the sentence he received." Id. at 264. However, the Supreme Court subsequently vacated the Haley decision on other grounds and remanded the case to the Fifth Circuit. Dretke v. Haley, 541 U.S. 386 (2004). In so doing, the Supreme Court expressly declined to answer the question of whether the "actual innocence" exception applies to noncapital sentencing errors. Id. at 393-94.

This Court does not attempt to answer the question left open by the Supreme Court. Nevertheless, even if the "actual innocence" exception is applicable to defaulted claims regarding such matters, petitioner has not alleged, much less shown, that he was *legally ineligible* for the

27

sentence imposed, i.e. a term of twenty-five years imprisonment without benefit of probation or suspension of sentence as a third offender.

Accordingly, for all of the foregoing reasons, the undersigned finds that this claim is procedurally barred from federal review.

## **Excessive Sentence**

Lastly, petitioner argues that his sentence is excessive. In the last reasoned state court judgment addressing this claim, the Louisiana First Circuit Court of Appeal denied relief, holding:

> In his sole counseled assignment of error, the defendant argues the trial court imposed a constitutionally excessive sentence in this matter because his "criminal history has demonstrated that he has a severe problem with alcohol."
>
> The Louisiana Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La. Code Crim. P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Hurst, 99-2868 (La.App. 1st Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 2000-3053 (La. 10/5/01), 798 So.2d 962. Remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown. State v. Harper, 2007-0299 (La.App. 1st Cir. 9/5/07), 970 So.2d 592, 602, writ denied, 2007-1921 (La. 2/15/08), 976 So.2d 173.
>
> Louisiana Constitution Article I, Section 20 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. Hurst, 797 So.2d at 83.
>
> Pursuant to La. R.S. 14:98, the defendant's sentencing exposure was imprisonment at hard labor for not less than ten nor more than thirty years, with at least three years of the sentence without benefit of suspension of sentence, probation, or parole. See La. R.S. 14:98(E)(4)(a). As a third-felony habitual offender, his sentencing exposure increased to imprisonment at hard labor for not

less than twenty nor more than sixty years, with at least three years of the sentence without benefit of suspension of sentence, probation, or parole. See La. R.S. 15:529.1(A)(3)(a); State v. Bruins, 407 So.2d 685, 687 (La. 1981) ("It is not a crime to be an habitual offender.  The statute increases the sentence for a recidivist.  The penalty increase is computed by reference to the sentencing provisions of the underlying offense.  Similarly, the conditions imposed on the sentence are those called for in the reference statute.").  The defendant was sentenced as a third-felony habitual offender to twenty-five years at hard labor, without benefit of probation or suspension of sentence.

At the habitual offender hearing, the trial court stated, under La. Code Crim. P. art. 894.1, it had considered the aggravating and mitigating factors and found that during the period of a suspended sentence, there was an undue risk the defendant would commit another crime.  The court also found the defendant was in need of correctional treatment or a custodial environment and any lesser sentence would deprecate the seriousness of his crime.

A thorough review of the record reveals the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing the sentence herein.  See La. Code Crim. P. art. 894.1(A)(1), (A)(2) & (A)(3).  Additionally, the sentence imposed was not grossly disproportionate to the severity of the offense, and thus, was not unconstitutionally excessive.

This assignment of error is without merit. [42]

To the extent that petitioner is claiming that his sentence is excessive or otherwise inappropriate under *Louisiana* law, his claim is not cognizable in this federal proceeding.  Again, federal habeas corpus relief is available only to correct violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law.  Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).  Accordingly, a federal habeas court will not review the legality of a petitioner's sentence under state law.  See, e.g., Nyberg v. Cain, Civ. Action No. 15-98, 2015 WL 1540423, at *12 (E.D. La. Apr. 7, 2015); Phillips v. Cain, Civ. Action No. 13-5868, 2014 WL 4425751, at *10 (E.D. La. Sept. 8, 2014), adopted, 2014 WL 5080246 (E.D. La. Sept. 26, 2014); Brunet v. Goodwin, Civ. Action No. 12-1974, 2013 WL 623505, at *12 (E.D. La. Jan. 22, 2013), adopted, 2013 WL 619278 (E.D. La. Feb. 19, 2013).

---

[42] State v. Dahlem, 148 So.3d 591, 595-96 (La. App. 1st Cir. 2014); State Rec., Vol. 1 of 3.

On the other hand, to the extent that petitioner is claiming that his sentence is excessive under *federal* law, that claim obviously is cognizable; however, it is also meritless. Even considering petitioner's argument that his sentence is harsh in light of his circumstances, the mere fact that a sentence is harsh does not mean that it is unconstitutionally excessive. For the following reasons, petitioner's sentence does not cross that impermissible line.

In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Gonzales, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." Id. (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992). Moreover, when, as here, evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses." Id.

The Fifth Circuit has noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." Gonzales, 121 F.3d at 943. In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

Here, petitioner was convicted of fourth offense driving while intoxicated, and he pleaded guilty to being a third felony offender based on the fact that he had prior felony convictions for theft and distribution of marijuana.[43] As noted by the Louisiana First Circuit Court of Appeal, his enhanced habitual offender sentence fell well within the range provided by law. Moreover, this Court notes that petitioner's instant crime, recidivist driving while intoxicated, is a particularly grave offense which poses an obvious and serious threat to public safety. In light of those

---

[43] State Rec., Vol. 1 of 3, transcript of October 29, 2012; State Rec., Vol. 1 of 3, Multiple Offender Bill of Information.

considerations, as well as the finding in <u>Rummel</u> that a life sentence was not excessive for the relatively minor offenses involved in that case, this Court cannot conclude that petitioner's sentence for his much graver offense is grossly disproportionate under federal law.  Because the sentences are not grossly disproportionate, this Court's "inquiry is finished."  <u>Gonzales</u>, 121 F.3d at 942.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Gerald W. Dahlem be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[44]

New Orleans, Louisiana, this twenty-fourth day of January, 2017.


_____

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[44] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.